# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE EVERGREEN ULTRA SHORT OPPORTUNITIES FUND SECURITIES LITIGATION | ) ) ) ) ) ) | No. 1:08-CV-11064-NMG <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS EVERGREEN FIXED INCOME TRUST, CHARLES A. AUSTIN III, SHIRLEY L. FULTON, K. DUN GIFFORD, LEROY KEITH, JR., GERALD M. MCDONNELL, PATRICIA B. NORRIS, WILLIAM WALT PETTIT, DAVID M. RICHARDSON, RUSSELL A. SALTON III, MICHAEL S. SCOFIELD, <u>RICHARD J. SHIMA, and RICHARD K. WAGONER</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.    All Counts Should be Dismissed Because Plaintiffs Point to No Misleading
      Statements .............................................................................................................. 2

      A.    Plaintiffs' Alleged Misstatements With Respect to the Fund's Objectives
            Are Not Actionable .................................................................................... 3

      B.    There Was Nothing Misleading in Comparing the Fund's Results to the
            Lehman 6-Month Treasury Bill Index or the Lehman Brothers
            Government/Credit 0-2.5 Year Index ......................................................... 6

      C.    Plaintiffs Do Not Allege Facts Indicating that Any Statement Regarding
            Liquidity Is Misleading ............................................................................. 7

      D.    Plaintiffs' Allegations that the Statements Concerning the Fund's
            Investment in Mortgage-Backed Securities Were Misleading Should be
            Dismissed Because Such Statements Were Not Misleading On Their Face
            and "Bespoke Caution" .............................................................................. 7

II.   All Counts Should Be Dismissed Because Plaintiffs Cannot Establish Loss
      Causation ............................................................................................................... 9

III.  Count II of Plaintiffs' Complaint Should be Dismissed Because The Trustee
      Defendants Are Not "Sellers" Under Section 12(a)(2) of the 1933 Securities
      Act ....................................................................................................................... 14

IV.   Count III of Plaintiffs' Complaint Should be Dismissed Because Plaintiffs Fail
      to Properly Allege that the Trustees Exercised Control Under Section 15 of the
      1933 Securities Act .............................................................................................. 17

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aldridge v. A.T. Cross Corp.*,
    284 F.3d 72 (1st Cir. 2002) ............................................................... 18

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).................................................................2, 14, 16, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................... 2, 5

*Cooperman v. Individual, Inc.*,
    171 F.3d 43 (1st Cir. 1999) .............................................................. 2

*Crowell v. Ionics, Inc.*,
    343 F.Supp.2d 1 (D. Mass 2004)................................................... 11, 13

*Dennis v. Gen. Imaging Inc.*,
    918 F.2d 496 (5th Cir. 1990) .......................................................... 3, 17

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................... 10

*Giragosian v. Ryan*,
    547 F.3d 59 (1st Cir. 2008) ............................................................ 5

*Hunt v. Alliance North Am. Gov't Income Trust*,
    159 F.3d 723 (2d Cir. 1998)......................................................3, 6, 8, 9

*In re AIG Advisor Group Sec Litig.*,
    2007 WL 2750676 (E.D.N.Y. 2007) ................................................ 13

*In re Atl. Fin. Mgmt., Inc.*,
    784 F.2d 29 (1st Cir. 1986) ............................................................ 18

*In re Charles Schwab Corp. Sec. Litig.*,
    2009 WL 262456 (N.D. Cal. 2009). ............................................... 13, 16

*In re Credit Suisse-AOL Sec. Litig.*,
    464 F.Supp.2d 34 (D. Mass. 2006)................................................. 10

*In re Infonet Serv. Corp. Sec. Litig.*,
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) .......................................... 16

*In re Lernout & Hauspie Sec. Litig.*,
    286 B.R. 33 (D. Mass. 2002) ............................................................................. 18

*In re Mut. Funds Inv. Litig.*,
    384 F.Supp.2d 845 (D. Md. 2005) ..................................................................... 12

*In re New York Cmty. Bancorp, Inc., Sec. Litig.*,
    448 F.Supp.2d 466 (E.D.N.Y. 2006) ................................................................. 8

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F.Supp.2d 579 (S.D.N.Y.2006) ................................................................. 10

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) .................................................................... 16

*In re TCW/DW North Am. Gov't Income Trust Sec. Litig.*,
    941 F. Supp. 326 (S.D.N.Y. 1996) ............................................................... 4, 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    No. MDL 02-1335-B, 2004 WL 2348315 (D. N.H. Oct. 14, 2004) ..................... 18

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F.Supp.2d 1173 (D. Cal. 2004) ................................................................... 10

*Lentell v. Merrill Lynch Co.*,
    396 F.3d 161 (2nd Cir. 2005) ........................................................................... 10

*Mabon, Nugent & Co. v. Borey*,
    127 B.R. 727 (S.D.N.Y. 1991) ........................................................................... 16

*Miller v. New Am. High Income Fund*,
    755 F.Supp. 1099 (D. Mass. 1991) .................................................................... 15

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ........................................................................... 5

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ....................................................................... 14, 15, 16, 17

*Ray v. Citigroup Global Markets, Inc.*,
    482 F.3d 991 (7th Cir. 2007) ............................................................................. 11

*San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Co.*,
    75 F.3d 801 (2d Cir. 1996) .................................................................................. 4

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ..................................................................... passim

*Siemers v. Wells Fargo & Co.*,
    2007 WL 760750 (ND. Cal. 2007) (Alsup, J.) ............................................................. 13

*Suna v. Bailey*,
    107 F.3d 64 (1st Cir. 1997) ...................................................................................... 18

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) .................................................................................................. 2

## STATUTES

15 U.S.C. §§ 77k ............................................................................................... passim

15 U.S.C. §77l .................................................................................................... passim

15 U.S.C. § 77k(e)(3) ............................................................................................ 11

15 U.S.C. § 77l(b) .................................................................................................. 11

15 U.S.C. § 80a-2(a)(41) ........................................................................................ 11

15 U.S.C. § 77o (2000) ................................................................................ 1, 3, 17, 18

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
    § 105, 109 Stat. 737, 757 (1995) ............................................................................ 15

## OTHER AUTHORITIES

17 C.F.R. § 240.12b-2 ............................................................................................ 18

17 C.F.R. §§ 270.2a-4, 270.22c-1 (2009) ................................................................. 11

David M. Geffen, *A Shaky Future for Securities Act Claims Against Mutual Funds*,
    37 SEC. REG. L.J. 20, 23-27 (2009) ................................................................... 11-12

Fed R. Civ. P 12(b)(6) ............................................................................................. 1

## INTRODUCTION

Defendants Evergreen Fixed Income Trust (the "Trust") and the individual Trustees of the Trust (collectively the "Trustees") move to dismiss all claims against them in this action. Plaintiffs' First Amended Class Action Complaint (the "Complaint") alleges violations of sections 11, 12 and 15 of the 1933 Securities Act on the grounds that certain Offering Materials filed with the Securities and Exchange Commission between 2005 and 2008 (the "Offering Materials") included misleading statements about the Fund. Plaintiffs' Complaint fails to state a claim upon which relief can be granted with respect to any of the alleged claims.

Plaintiffs seek to recover for losses incurred in the Evergreen Ultra Short Opportunities Fund (the "Fund"). However, Plaintiffs cannot tie the Funds' losses to actionable violations under the Act. Plaintiffs' §§ 11 and 12 claims fail because the Complaint fails to competently allege any material misrepresentation in the Fund's Offering Materials. Additionally, Plaintiffs' §§ 11 and 12 claims fail because even if Plaintiffs could competently allege any material misrepresentation, Plaintiffs cannot satisfy the requirement contained in both § 11 and § 12 that the alleged material misrepresentation caused Plaintiffs' losses. Plaintiffs § 12 claim fails independently because the Trust and the Trustees are not statutory sellers for purposes of that section. Finally, Plaintiffs' § 15 claim is also deficient as a matter of law because there can be no violation of § 15 without an underlying violation of either § 11 or § 12 and even assuming, *arguendo*, an underlying violation, the Complaint does not allege sufficiently that the Trustees were control persons.

## ARGUMENT

It is well established that "[i]n deciding a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded facts as true, but it need not credit a complaint's 'bald assertions' or legal conclusions." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996)

(dismissing a complaint alleging violations of §§ 11 and 12 of the 1933 Securities Act).  The Supreme Court has recently clarified the plaintiff's burden in alleging facts sufficient to survive a motion to dismiss.  In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss a plaintiff must make factual allegations that possess enough heft to "sho[w] that the pleader is entitled to relief."  Similarly, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), the Supreme Court held that in evaluating a motion to dismiss, federal courts must be cognizant of the fact that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Rather, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not state a plausible claim to relief.  *Id.*  Plaintiffs' complaint in this case falls well short of this standard, as it is replete with naked, conclusory allegations that are unsupported by specific factual allegations stating a plausible claim for relief.  Accordingly, it should be dismissed.

## I.     All Counts Should be Dismissed Because Plaintiffs Point to No Misleading Statements

Plaintiffs' Complaint fails to competently allege that the Defendants' Offering Materials contained or included "an untrue statement of a material fact," § 11, 15 U.S.C. §77k; § 12, 15 U.S.C. §77l.  A material misrepresentation has been made when there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also Cooperman v. Individual, Inc.*, 171 F.3d 43, 49 (1st Cir. 1999).

The Complaint cites four types of purported misstatements: statements about the Fund's objectives; statements comparing the Fund to certain indices; statements about the Fund's holdings of illiquid assets; and statements about the Fund's holdings in mortgage-backed securities.  However, Plaintiffs do not give plausible reasons why any of the statements in the Offering Materials are untrue or misleading.  Several of the alleged misstatements are plainly not misleading on their face.  Other purportedly misleading statements are clearly not misleading when considered in context.  *See Hunt v. Alliance North Am. Gov't Income Trust*, 159 F.3d 723, 730-31 (2d Cir. 1998) (statements must be considered in full context).  Finally, with respect to some of the allegedly untrue or misleading statements, the Offering Materials overall "bespeak caution," such that a reasonable investor would be aware of the risks inherent in investing in the Fund.  *See Shaw*, 82 F.3d at 1213 (holding that if a statement in a registration statement or prospectus is "couched in or accompanied by prominent cautionary language that clearly disclaims or discounts the drawing of a particular inference, any claim that the statement was materially misleading because it gave rise to that very inference may fail as a matter of law.") Defendants' motion to dismiss should be granted because none of the alleged misstatements are actionable under §§ 11 and 12 as detailed below, and because of that Plaintiffs' § 15 claim fails as well.  *Dennis v. Gen. Imaging Inc.*, 918 F.2d 496, 509 (5th Cir. 1990).

A.    **Plaintiffs' Alleged Misstatements With Respect to the Fund's Objectives Are Not Actionable**

Plaintiffs point to four statements regarding the Fund's objectives that they allege to be misleading:  (1) "The Fund seeks to provide current income consistent with preservation of capital and low principal fluctuation"; (2) "The Fund's investment strategy is to seek the highest total return by maximizing income and minimizing price fluctuations"; (3) "The Fund seeks to provide investors with a high level of current income while reducing price volatility"; and (4)

"The Fund intends to maintain an average portfolio duration of approximately one year or less."
Compl. ¶ 3.[1]   Plaintiffs allege that the Fund's holdings and their performance were inconsistent
with the Fund's objectives.  However, statements of objectives are not promises they will be
achieved, and as such the mere failure to meet an objective does not give rise to a claim under
§§ 11 and 12.  *See San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris
Co.*, 75 F.3d 801, 811 (2d Cir. 1996) (finding that company's statements about its current
strategy "were not promises to maintain that policy in the future, and thus were not rendered
misleading by the company's subsequent consideration of an alternative plan").  Such statements
are also not actionable where, as here, they are "general and indefinite" in nature.  *In re
TCW/DW North Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 338 (S.D.N.Y. 1996)
(rejecting claim that a statement by a mutual fund holding mortgage-backed securities that its
"investment objective is to earn a high level of current income while maintaining relatively low
volatility of principal" was misleading).

Moreover, the statements about the Fund's objectives are not actionable because the
Offering Materials contained language that "bespoke caution" about the Fund's risks and made
plain that its objectives may not be met.  *See Shaw*, 82 F.3d at 1213 (stating that the "bespeaks
caution" doctrine applies to render statements about the future non-actionable where cautionary
language "adequately warn[s] of the possibility that actual results or events may turn out

---

[1] Plaintiffs allege that the Fund misstated its NAV, but never allege how this was material or at
all relevant to their claims, and in particular their claims against the Trustees or the Trust.  *See*
Compl. ¶ 3.  At most, Plaintiffs seem to suggest the misstated NAV's somehow compounded the
alleged deficiencies with the statements about Fund's investment strategies, as Plaintiffs allege
"[t]hroughout the Class Period until September 30, 2008, the purported value of the Fund's NAV
in the Offering Materials remained essentially unchanged and Defendants continued to make
representations that the Fund's actual investment strategies were consistent with its stated
investment strategy.  These representations were materially false or misleading because the true
value of the Fund's NAV had dropped substantially and a significant percentage of the Fund's
portfolio holdings were volatile, risky, and illiquid."  Compl. ¶ 120.

differently" than presumed).  For example, the Fund's 2005 Prospectus stated that the Fund was not guaranteed to meet its goals and that loss of investment was possible.  Transmittal Affidavit of Matthew P. Garvey ("Garvey Aff.") Ex. 1, at 2.[2]  The 2005 Annual Report made clear that return of principal was not guaranteed.  Garvey Aff. Ex. 2, at 5.  All these warnings put Plaintiffs on notice that the Fund's objectives might not be met, and as such the statements about those objectives are not actionable.

Finally, even if it were an actionable statement, Plaintiffs do not competently allege that the Fund's average portfolio duration exceeded its objective of approximately one year or less. Plaintiffs rely solely on an "expert analysis" that analyzed "about a quarter of the total Fund net asset value."  Compl. ¶ 54.  This analysis is dubious because of the small sample size.  *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1193 (11th Cir. 2002) (holding, in action alleging misstatements in pharmaceutical company's prospectus that, "Cherry-picking two studies that show average HDL improvement . . . does not tend to establish that the stated *range* [in the prospectus] is false.").  As in *Jaharis*, Plaintiffs here offer one possible conclusion based on an analysis of a small sample, but do nothing to establish it is the most plausible conclusion; alleging a mere possibility is not enough to state a claim upon which relief can be granted. *Twombly*, 550 U.S. at 557 (finding that a complaint which alleges conduct consistent with liability "without some further factual enhancement . . . stops short of the line between possibility and plausibility of 'entitle[ment] to relief'").

---

[2] All citations to exhibits are to materials attached to the Garvey Aff.  These materials are indicated by the convention "(Garvey Aff. Ex. __)."  All exhibits are documents that were incorporated by reference into Plaintiffs' Complaint, and are thus proper to consider in deciding this motion to dismiss.  *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008).

**B.    There Was Nothing Misleading in Comparing the Fund's Results to the Lehman 6-Month Treasury Bill Index or the Lehman Brothers Government/Credit 0-2.5 Year Index**

Plaintiffs allege that the Offering Materials inappropriately compared the Fund to the Lehman 6-Month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index, but never articulate how such a comparison was materially misleading.  Compl. ¶ 85. Plaintiffs seem to suggest that the comparisons created a misrepresentation of the Fund's risks, as Plaintiffs allege that "the Fund's portfolio had far greater interest rate, credit and liquidity risks than the bond funds appropriately compared to those indices."  Compl. ¶ 105.  However, the Offering Materials make clear that the comparison tables were not intended to provide an exhaustive description of the Fund's risks, but rather to provide some indication of the risks of investment by comparing the Fund's historic performance as compared with the two Lehman indices.[3]  Such comparisons of past performance are not misleading as a matter of law.  In a substantially similar case, the Second Circuit in *Hunt* rejected the plaintiffs' claim that a chart inappropriately compared a fund's performance to certain Lehman indices.  159 F.3d at 730.  In ruling that such a comparison was not misleading, the court emphasized that "[t]he chart purported only to compare the Fund's returns to those of the Lehman Brothers indexes.  No reasonable investor could have viewed this chart as an exhaustive description of the Fund's risks."  *Id.*  Similarly, here the Offering Materials did not make any misstatement in comparing the Fund's performance to the Lehman indices.

---

[3] The 2005 Prospectus states, in a table comparing the Fund to the indices: "This table is intended to provide you with some indication of the risks of investing in the Fund by comparing its performance with the Lehman 6-Month Treasury Bill Index (Lehman 6-Month T-Bill) and the Lehman Brothers Government/Credit 0-2.5 Year Index . . . ."  Garvey Aff. Ex. 1, at 11.  The 2006 and 2007 Prospectuses state, in a table comparing the Fund to the index: "This table is intended to provide you with some indication of the risks of investing in the Fund by comparing its performance with the Lehman Brothers Government/Credit 0-2.5 Year Index . . . ."  Garvey Aff. Ex. 3, at 11; Garvey Aff. Ex. 4, at 13.

**C.    Plaintiffs Do Not Allege Facts Indicating that Any Statement Regarding Liquidity Is Misleading**

Plaintiffs allege that the Fund misled investors by claiming that the Fund "would not invest more than 15% of its net assets in illiquid securities." Compl. ¶ 4.  Plaintiffs point to no facts, however, that indicate the Fund ever did invest more than 15% of its net assets in illiquid securities.  Plaintiffs suggest that investing in Rule 144A private placement securities was tantamount to investing in illiquid securities.  Compl. ¶ 58-65.  There is simply no basis for this assumption, and as such Plaintiff's bare-bones allegations are insufficient.

Moreover, the Fund was clear that it was investing in Rule 144A securities and it disclosed its process for defining whether certain Rule 144A securities are illiquid for the purpose of complying with the Fund's stated limit on illiquid securities.  Garvey Aff. Ex. 5; Garvey Aff. Ex. 6; Garvey Aff. Ex. 7.   Plaintiffs do not allege that any securities were illiquid as that term is specifically defined in the Fund's Offering Materials, and as such the statements Plaintiffs point to cannot be deemed misleading.  Moreover, the Fund's disclosures of its holdings made clear which holdings were private placements purchased under Rule 144A. *See*, *e.g.*, Garvey Aff. Ex. 2, at 17.  Accordingly, Plaintiffs do not allege any facts indicating that the Fund's statements on limiting illiquid holdings were untrue.

**D.    Plaintiffs' Allegations that the Statements Concerning the Fund's Investment in Mortgage-Backed Securities Were Misleading Should be Dismissed Because Such Statements Were Not Misleading On Their Face and "Bespoke Caution"**

Plaintiffs allege that "The Fund Invested In Riskier MBSs Than Represented."  Compl. ¶¶ 66–90.  The Complaint does not point to any specific misstatement of material fact, or to any statement about the Fund's investment in mortgage-backed securities at all.  Rather, paragraphs 66-87 the Complaint details the history of the decline in mortgage-backed securities generally, without any reference to the Fund's investments.  Plaintiffs do not claim that any misstatements

were made with respect to the Fund's investment in mortgage-backed securities. Rather, they point to such holdings as being inconsistent with the Fund's objectives to be "a safe, stable, 'ultrashort' bond fund that provided 'current income consistent with preservation of capital and low principal fluctuation.'" Compl. ¶ 90. However, courts have soundly rejected this post-hoc approach of using poor performance to render a statement on the fund's objective misleading, particularly where the fund disclosed the holdings that under-performed. In a case with similar allegations that a bank's statements about its objectives and outlook did not adequately warn of potential losses due to the magnitude of the bank's holdings in mortgage-backed securities, the court dismissed the investors' claims upon finding that "it is apparent from the [bank's] quarterly reports disclosed to the public that the company was heavily involved in investing in mortgage-backed securities" and that the risks of such investments were disclosed. *In re New York Cmty. Bancorp, Inc., Sec. Litig.*, 448 F.Supp.2d 466, 479 (E.D.N.Y. 2006); *See also Hunt,* 159 F.3d at 730.

To the extent Plaintiffs are alleging that any statements or omissions about mortgage – backed securities were themselves misleading, there is simply no factual allegation in support of that contention. The Fund gave quarterly reports of its holdings, and clearly labeled each specific type of security it held. These disclosures not only made clear which securities were backed by mortgages, but also disclosed what types of mortgages were underlying each security. For example, the Fund's June 30, 2005 Annual Report included a schedule of investments broken down by category such as fixed rate commercial mortgage-backed securities, floating rate commercial-backed securities, fixed rate whole loan subordinate collateralized mortgage obligations, and floating rate whole loan subordinate collateralized mortgage obligations. *See* Garvey Aff. Ex. 2, at 11-17. The value of the Fund attributable to each type of security was

presented in percentages, and the precise name, principal amount, and value of each security was given.  Plaintiffs offer no plausible explanation for how these plain and fulsome disclosures of the Fund's exact holdings were misleading.  In fact, the Fund's disclosures regarding its investments in mortgage-backed securities were even more fulsome than the disclosures related to mortgage-backed securities that the Second Circuit deemed sufficient not to mislead a reasonable investor in *Hunt*.  159 F.3d at 730-731 (rejecting claim that disclosures were misleading because they did not specify the type of mortgage-backed securities a mutual fund held).

Moreover, the Offering Materials contained a surfeit of cautionary language with respect to investments in mortgage-backed securities.  For instance, the Offering Materials stated that the "yields and values of [mortgage-backed and asset-backed] investments are extremely sensitive to changes in interest rates and in the rate of principal payments on the underlying assets." Garvey Aff. Ex. 1, at 2; Garvey Aff. Ex. 3, at 2; Garvey Aff. Ex. 4, at 2.  Also, "the market for IOs (interest portions) and POs (principal portions) [of mortgage-backed securities] may be volatile and limited, which may make them difficult for the Fund to buy or sell."  *Id*. at 2; Garvey Aff. Ex. 3, at 2; Garvey Aff. Ex. 4, at 2.  Further, the Fund made clear that its high concentration of mortgage-backed securities itself presented a risk by subjecting the Fund to general risk in the industry.  *See, e.g*., Garvey Aff. Ex. 1, at 2; Garvey Aff. Ex. 2, at 5; Garvey Aff. Ex. 7.  Plaintiffs have failed to state a cause of action based on inadequate disclosures related to the Fund's mortgage-backed securities holdings.

**II.**     **All Counts Should Be Dismissed Because Plaintiffs Cannot Establish Loss Causation**

Claims under Sections 11 and 12(a)(2) of the Securities Act must allege that the defendant's misstatements caused the plaintiff's economic loss.  15 U.S.C. §§ 77k, 77l.  This "loss causation" requirement consists of "a causal connection between the material

misrepresentation and the loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342

(2005).  While a lack of loss causation is generally an affirmative defense under Section 11, 15

U.S.C. § 77k(e), courts have dismissed Section 11 claims against mutual funds on the pleadings

where it is apparent, from the face of the complaint, that the plaintiffs could not establish loss

causation.  *See, e.g.*, *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F.Supp.2d 579

(S.D.N.Y.2006); *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F.Supp.2d 1173, 1188 (D. Cal.

2004).

　　　　To establish loss causation, plaintiffs must "prove proximate causation." *Dura*, 544 U.S.

at 344; *see also In re Credit Suisse-AOL Sec. Litig.*, 464 F.Supp.2d 34, 45 (D. Mass. 2006) ("the

*Dura* decision . . . confirmed that the touchstone of loss causation analysis is a proximate cause

inquiry.").  In the securities context, proximate cause requires "that the subject of the fraudulent

statement or omission was the cause of the actual loss suffered" and that "the misstatement or

omission concealed something from the market that, when disclosed, *negatively affected the*

*value of the security*."  *Lentell v. Merrill Lynch Co.*, 396 F.3d 161, 173 (2nd Cir. 2005)

(emphasis added); *see also In re Credit Suisse-AOL*, 464 F.Supp.2d at 46-47 (citing *Lentell*).

　　　　In other words, loss causation for securities requires not only that the underlying subject

of the misstatement or omission caused the loss, but also that the disclosure of the misstatement

or omission *itself* triggered the loss.  Moreover, that loss must constitute a depreciation in the

value of the security itself, not merely a loss to the investor.   The plain language of the statute

mandates these narrow interpretations of the loss causation requirement.  Section 11(e) of the

Securities Act explicitly limits liability only "*to depreciation in value of such security resulting*

*from such part of the registration statement* . . . *not being true or omitting to state a material fact*

*required to be stated therein or necessary to make the statements therein not misleading*."

Otherwise, "damages shall not be recoverable." 15 U.S.C. § 77k(e)(3) (emphasis added).

Likewise, Section 12(b) of the Act defines loss as "depreciation in value of the subject security."

15 U.S.C. § 77l(b).

As a result, it is not sufficient to assert that the misstatement caused the loss because the

investor would not have invested in the security had the misstatement or omission been disclosed

earlier. Such claims merely constitute transaction causation, not the loss causation required

under Sections 11(e) and 12(b). *See, e.g.*, *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991,

995 (7th Cir. 2007); *Crowell v. Ionics, Inc.*, 343 F.Supp.2d 1, 22 (D. Mass 2004) ("A securities

plaintiff must plead and ultimately prove two kinds of causation: transaction causation (what

induced the purchase) and loss causation (what caused the stock to decline in value and produce

a loss).").

Here, Plaintiffs' alleged losses are purely the depreciation in value that they suffered as a

result of the Fund's decline in NAV. Compl. ¶ ¶ 8-10. But there are no allegations that any of

the alleged misstatements affected the Fund's NAV, which was set in accordance with the

statutory formulas contained in Section 2(a)(41) of the Investment Company Act, 15 U.S.C.

§ 80a-2(a)(41), as elaborated by Rules 2a-4 and 22c-1, 17 C.F.R. §§ 270.2a-4, 270.22c-1 (2009).

Under this formula, sales of a mutual fund's shares and redemptions of those shares must occur

at a price equal to the then-current per-share NAV, which is calculated daily by first totaling the

values of the fund's entire assets, subtracting the fund's aggregate liabilities (such as fees

payable to service providers), and then dividing the result by the total number of shares

outstanding on the day the NAV is being calculated. The Fund's shares were not traded on any

secondary market. Compl. ¶ 62. Instead, the Fund, like other open-end mutual funds, offered its

shares continuously, and redeemed them when a shareholder so chose. *See, e.g.*, David M.

Geffen, *A Shaky Future for Securities Act Claims Against Mutual Funds*, 37 SEC. REG. L.J. 20,

23-27 (2009). In other words, the value of the Fund's shares was, by law, wholly dependent

upon the value of its underlying investments.

Plaintiffs do not allege that any statement in the Offering Materials influenced the value

of the Fund's NAV in any way, and as such Plaintiffs' claims should be dismissed for failure to

establish loss causation. Citing language in the prospectus outlining a conservative investment

strategy of minimizing price volatility, preserving capital, and short portfolio durations, Plaintiffs

allege that these "core representations" were "materially false or misleading" because the Fund

"continued investing in securities and assets that were at odds with the Fund's stated investment

strategies." Compl. ¶¶ 4, 120. But even assuming that these statements were actionable—which

they are not—there is no allegation that these statements caused the depreciation of the Fund's

NAV. The Fund's NAV was tied by statute to the Fund's underlying assets, and it was the

depreciation and re-valuation of those assets that caused the NAV to drop. Loss causation

requires that the loss "must be attributable to the misrepresentation and not depreciation resulting

from some other cause, such as a general downtrend in the market." *In re Mutual Funds Inv.*

*Litig.*, 384 F.Supp.2d 845, 866 (D. Md. 2005). Here there is no allegation that any statements by

the Fund had the direct causal relationship with the Fund's depreciation that loss causation

requires.

Plaintiffs make no explicit attempt to establish loss causation, even though it is a requisite

element of Section 11 and 12(a)(2) claims. Instead, Plaintiffs rely upon the theory that

Defendants misrepresented the Fund as a "safe" and conservative investment, repeatedly alleging

that "the Fund's NAV was overstated" and that its holdings were "routinely mispriced" until

Defendants "correctly valued the Fund's NAV" by September 30, 2008. Compl. ¶¶ 2, 3, 4, 84,

120.  The only theory resembling loss causation that can be inferred from the Complaint is that Plaintiffs would not have invested in the Fund had Defendants disclosed their more risky investment strategy.  However, this amounts to nothing more than transaction causation, which is not sufficient for liability under Sections 11 and 12(a)(2).  *Crowell v. Ionics, Inc.*, 343 F.Supp.2d at 22.  Loss causation is required under these statutes, and Plaintiffs fail to assert it here.

To be sure, one court has ruled that loss causation for mutual funds "is not limited to" the "corrective disclosure-price drop" scenario, where the disclosure of a misrepresentation or omission causes the deprecation of inflated securities.  According to this theory, loss causation can also encompass misrepresentations where "the subject of the fraudulent statements caused . . . losses."  *In re Charles Schwab Corp. Sec. Litig.*, 2009 WL 262456 *6-7 (N.D. Cal. 2009) (Alsup, J.).  Two courts have also invalidated a loss causation defense to a claim of undisclosed revenue-sharing payments between mutual fund managers and brokers (so-called "shelf-space" cases).  *Siemers v. Wells Fargo & Co.*, 2007 WL 760750 *14 (ND. Cal. 2007) (Alsup, J.); *In re AIG Advisor Group Securities Litigation*, 2007 WL 2750676 (E.D.N.Y. 2007).  But such holdings, to the extent they apply to Plaintiffs' claims that alleged losses were caused by a decline in NAV that was not proximately caused by the alleged misstatements, fail to recognize that loss causation is foreclosed by the statutory NAV formula *in combination* with the Securities Act.  The Act requires that misrepresentations or omissions in an offering statement cause a decline in the value of the security at issue, not an investor's loss, and here there is no allegation that the Trust's NAV was affected by the alleged misstatements or omissions.  *See* Geffen, *supra*, at 31-33 (criticizing *Siemers* and *AIG* holdings), 34-38 (rebutting arguments against loss causation defense for mutual funds).  Consequently, Plaintiffs' claims for damages fail to meet the loss causation element of Sections 11(e) and 12(b).

**III.    Count II of Plaintiffs' Complaint Should be Dismissed Because The Trustee Defendants Are Not "Sellers" Under Section 12(a)(2) of the 1933 Securities Act**

Count II of the Plaintiffs' Complaint alleges that all Defendants, including each of the Trustees, violated § 12(a)(2) of the 1933 Securities Act.  Compl. ¶¶ 134–142.  Plaintiffs' allegations are nothing more than conclusory statements spelling out the elements of a cause of action, and as such cannot survive a motion to dismiss.  *See Iqbal*, 129 S.Ct. at 1949.  With respect to the Trustees specifically, Plaintiffs merely allege that each of the Trustees was a member of the Board of Trustees, signed the Registration Statements, and participated in the drafting, preparation, and/or approval of the Offering Materials.  Compl. ¶¶ 26–40.  Such allegations are not enough to qualify the Trustees as "sellers" as that term is defined under § 12(a)(2).  Nor does Plaintiffs' naked allegation that the Trustees actively solicited the sale of the Fund's shares suffice to surmount a motion to dismiss.  *See Shaw*, 82 F.3d at 1216 (holding that "plaintiffs' bald and factually unsupported allegation that the issuer and individual officers of the issuer 'solicited' the plaintiffs' securities purchases is not, standing alone, sufficient").

In *Pinter v. Dahl*, 486 U.S. 622 (1988), the Supreme Court ruled that the "offers or sells" language contained in § 12(a)(1) applies to two categories of defendants: (a) defendants who pass title to the securities in question, and (b) defendants who "engage[] in solicitation" of securities sales for financial gain, *id.* at 643, "motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner."  *Id.* at 647.  The Court further held that "proof the defendant caused a plaintiff's purchase of a security is not enough to establish that the defendant 'solicited' the sale for Section 12 purposes."  *Id.* at 651.  Rather, the defendant "must be directly involved in the actual solicitation of a securities purchase in order to qualify, on that basis, as a Section 12 'seller.'"  *Id.*  In *Pinter*, the Court held that § 12 "focuses on the defendant's *relationship* with the plaintiff-purchaser."  *Id.* (emphasis added).  The Court rejected

the substantial factor test, which holds defendants liable if their "participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." *Id.* at 649. Moreover, the *Pinter* Court held that because § 11(a) "explicitly enumerates the various categories of persons involved in the registration process who are subject to suit under that section, including many who are participants in the activities leading up to the sale [and because] . . . [t]here are no similar provisions in § 12 . . . we may conclude that Congress did not intend such persons to be defendants in § 12 actions." *Id.* at 650 n.26.

In *Shaw*, the First Circuit applied the Court's holding in *Pinter* to § 12(a)(2). 82 F.3d at 1214 ("Section 12(2) defines the person who may sue and be sued thereunder in language identical to the language used in Section 12(1)."). Therefore, "*Pinter*'s analysis of 'seller' for purposes of Section 12(1) applies with equal force to the interpretation of 'seller' under Section 12(2)." *Id.*[4] Plaintiffs in *Shaw* alleged that defendants solicited the sale of securities and were a substantial factor in plaintiffs' purchase thereof by virtue of defendants' involvement in the preparation of the registration statement and prospectus. *Id.* at 1216. The First Circuit, however, held that "[u]nder *Pinter* . . . neither involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status."[5] *Id.* The First Circuit also noted that while plaintiffs had alleged that

---

[4] Section 12(2) is the prior formulation of § 12(a)(2); the section was renumbered when the Private Securities Litigation Reform Act of 1995 added a new § 12(b). *See* Pub. L. No. 104-67, § 105, 109 Stat. 737, 757 (1995).

[5] The holding in *Miller v. New Am. High Income Fund*, 755 F.Supp. 1099 (D. Mass. 1991) is not contrary to the First Circuit's holding in *Shaw*. In *Miller*, a pre-*Shaw* case, the district court denied the directors' motion to dismiss because plaintiffs alleged that the directors had "direct meetings with potential investors." Direct meetings with potential investors is far closer to active solicitation than mere participation in the preparation of a registration statement or prospectus.

- 15 -

defendants had solicited the sale of the securities, it need not "credit [the plaintiffs'] bald assertions or legal conclusions." *Id.* (internal citations and quotation omitted). The court thus dismissed plaintiffs' § 12(a)(2) claim.

Other courts have reached conclusions similar to the First Circuit in *Shaw. See In re Infonet Serv. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1101 (C.D. Cal. 2003) (dismissing investors' § 12(a)(2) claim against directors: "simple involvement in the preparation of a registration statement is insufficient to establish the sort of relationship between a buyer and seller required to establish liability under § 12(a)(2)") (citations and quotations omitted); *see also In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1120 (D. Nev. 1998) ("[M]erely proving that Defendants signed the allegedly misleading registration statement or prospectus for a firm commitment offering is insufficient to prove that Defendants were sellers under section 12."); *Mabon, Nugent & Co. v. Borey*, 127 B.R. 727, 735 (S.D.N.Y. 1991) (holding that "director's act in authorizing the sale of a company's securities is not sufficient to constitute him a seller of those securities under § 12(2). On the contrary: such individuals are quintessentially collateral participants; and *Pinter* teaches that this will not do."). To the extent that courts have found otherwise, such holdings are inconsistent not only with the First Circuit's teachings in *Shaw*, but also with the Supreme Court's recent opinion in *Iqbal*, 129 S. Ct. 1937. *See, e.g., In re Charles Schwab Corp. Sec. Litig.*, 2009 WL 262456, at *16 (pre-*Iqbal* case denying independent trustees' motion to dismiss because "the complaint averred that they had signed the registration statements, documents inherently utilized for the solicitation of securities sales, and more generally that defendants 'actively solicited the sale of the fund's shares.'")

Under the First Circuit's holding in *Shaw*, it is clear that Plaintiffs' bare and conclusory allegations that the Trustees signed and participated in the making of the Offering Materials and

actively solicited the sale of the Fund's shares is insufficient to surmount a motion to dismiss. 82 F.3d at 1216. It is the relationship between Plaintiffs, as purchasers, and Defendants, as sellers, that determines whether the Trustees can be said to have sold securities. *Pinter*, 486 U.S. at 651. Plaintiffs have not, and indeed cannot, demonstrate such a relationship in their Complaint. *Shaw*, 82 F.3d at 1216 (holding that "plaintiffs' bald and factually unsupported allegation that the issuer and individual officers of the issuer 'solicited' the plaintiffs' securities purchases is not, standing alone, sufficient"). Thus, the claims against the Trustees with respect to Count II of the Complaint should be dismissed.

**IV.    Count III of Plaintiffs' Complaint Should be Dismissed Because Plaintiffs Fail to Properly Allege that the Trustees Exercised Control Under Section 15 of the 1933 Securities Act**

In Count III, Plaintiffs allege that the individual Defendants, including each of the Trustees, were culpable participants in the alleged violations of §§ 11 and 12 of the Securities Act, and that they are each jointly and severally liable for those alleged violations pursuant to § 15 of the Securities Act, 15 U.S.C. § 77o (2000). Compl. ¶¶ 144, 147. With respect to the Trustees, Plaintiffs base this liability on an allegation that the Trustees "signed or authorized the signing of one or more of the Registration Statements." *Id.* ¶ 147. Plaintiffs then add a conclusory allegation that the Trustees "were able to, and did, control the contents of the Offering Materials." *Id.* ¶ 40. In the absence of a viable claim under either § 11 or § 12 of the Securities Act, there can be no valid claim under § 15. *Dennis v. Gen. Imaging Inc.*, 918 F.2d 496, 509 (5th Cir. 1990)(holding that because the "plaintiff can maintain no Section 12 . . . violation[] against either [of the defendants], none of the defendants can possibly be held liable under Section 15 since there are no actual violators of the securities laws to be held liable with"). Moreover, as with their § 12 claim, Plaintiffs' fail to state a claim upon which relief can be

granted because they have not specifically alleged what facts take the Trustees' activities outside the regular run-of-the-mill functions of any Trustee.

Section 15 of the Securities Act provides for joint and several liability for persons who "control" any person or entity liable under §§ 11 or 12 of the Act. 15 U.S.C. § 77o (2000). Section 15 of the Securities Act is interpreted in the same manner as § 20(a) of the Securities Exchange Act of 1934. *See In re Atl. Fin. Mgmt., Inc.*, 784 F.2d 29, 33 (1st Cir. 1986) ("Section 20(a) was modeled on section 15 of the 1933 Securities Act, and it has an identical purpose."). In order for control person liability under § 15 or § 20(a) to attach, Plaintiffs must allege and prove: "(1) an underlying violation by the controlled person or entity; [and] (2) [that] the defendants control the violator . . . ." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002); *see also Suna v. Bailey*, 107 F.3d 64, 72 (1st Cir. 1997) (dismissing plaintiffs' § 20(a) claim for failure to establish a primary violation). Control, in the securities context, "means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." 17 C.F.R. § 240.12b-2. To prove control, plaintiffs must show that "the alleged controlling person . . . not only [has] the general power to control the company, but must also actually exercise control over the company." *Aldridge*, 284 F.3d at 85.

Status as a director or trustee and signing an SEC filing is insufficient to demonstrate control. *In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33, 39 (D. Mass. 2002). In *Lernout*, the court held that plaintiffs' § 20(a) allegation against outside directors who signed SEC filings was insufficient to defeat a motion to dismiss. The court stated that plaintiffs' allegations failed because they did "not go beyond the run-of-the-mill duties of a director of a large corporation." *Id.* at 43; *see also In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL 02-1335-B, 2004 WL 2348315, at *17 (D. N.H. Oct. 14, 2004).

- 18 -

Only in the most conclusory terms have alleged that the Trustees did anything more than exercise the run-of the-mill duties of a member of a Board of Trustees.  Plaintiffs allege that the Trustees "were able to, and did, control the contents of the Offering Materials."  Compl. ¶ 40. Under well-established First Circuit case law these naked allegations do not pass muster.  *See Shaw*, 82 F.3d at 1216; *see also Iqbal*, 129 S. Ct. 1937 at 1949, 1951.

## CONCLUSION

Accordingly, for the reasons set forth in the foregoing memorandum of law, all claims against the Trust and the Trustees should be dismissed.

Respectfully submitted,

EVERGREEN FIXED INCOME TRUST,
CHARLES A. AUSTIN, SHIRLEY L. FULTON,
K. DUNN GIFFORD, LEROY KEITH, JR.,
GERALD M. MCDONNELL, PATRICIA B.
NORRIS, WILLIAM WALT PETTIT, DAVID M.
RICHARDSON, RUSSELL A. SALTON III,
MICHAEL S. SCOFIELD, RICHARD J. SHIMA,
and RICHARD K. WAGONER

By their attorneys,

   /s/ Robert G. Jones
Robert G. Jones (BBO #630767 )
Matthew P. Garvey (BBO #655419)
Abraham R. George (BBO #668949)
Ropes & Gray LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000
Robert.Jones@ropesgray.com

Dated:  July 15, 2009

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1.</u>

Pursuant to Local Rule 7.1, I, Matthew P. Garvey, hereby certify that the parties conferred on the foregoing motion and attempted in good faith to resolve or narrow the issues presented.

      /s/ Matthew P. Garvey

Matthew P. Garvey

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew P. Garvey, hereby certify that a true and accurate copy of the foregoing Defendants' Motion to Dismiss, Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, and Transmittal Affidavit of Matthew P. Garvey, electronically filed with the Court this 15th day of July, 2009, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  I have also mailed a copy to the plaintiffs by First Class Mail.


   /s/ Matthew P. Garvey

Matthew P. Garvey