UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE EVERGREEN ULTRA SHORT OPPORTUNITIES FUND SECURITIES LITIGATION | )   No. 1:08-CV-11064-NMG <br> ) <br> )   CLASS ACTION <br> ) <br> ) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ....................................................................1

II.    STATEMENT OF FACTS .........................................................................3

    A.     The Fund and Its Investment Strategy ................................................3

    B.     Defendants' Offering Materials Were False and Misleading ...............5

    C.     Defendants Are Forced to Liquidate the Fund.....................................6

III.   ARGUMENT............................................................................................6

    A.     Standards on a Motion to Dismiss ......................................................6

    B.     Pleading Standards Under Section 11 and Section 12(a)(2)................7

        1.     The Elements of a Section 11 Claim.........................................7

        2.     The Elements of a Section 12(a)(2) Claim ...............................7

        3.     The Offering Materials Contained False and Misleading Statements of Material Fact Regarding the Fund's Investments ...................................8

            a.     Defendants' Misstatements About the Fund's Strategy and Objectives are Actionable ...........................................10

            b.     Defendants' Statements Comparing the Fund's Results to Other Indices are Actionable ......................................13

            c.     Defendants' Statements About the Fund's Liquidity are Actionable ..................................................................14

            d.     Defendants Mischaracterize Plaintiffs' Allegations Concerning the Fund's Risky MBS Investments ...........................................15

        4.     The Offering Materials Omitted Material Facts Which Were Required to Be Stated Therein..................................................................16

        5.     Defendants Are Not Protected by the "Bespeaks Caution" Doctrine ......18

    C.     Plaintiffs Have No Duty to Plead Loss Causation ..............................19

    D.     Plaintiffs Have Adequately Alleged Claims Against the Trustee Defendants ....22

      1.      Defendants Are Section 12(a)(2) Sellers ..................................................22

      2.      Plaintiffs Have Adequately Alleged Control Persons Liability...............22

IV.    CONCLUSION.................................................................................................23

# TABLE OF CONTENTS

## CASES

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................7, 10

*Brumbaugh v. Wave Sys. Corp.*,
  416 F. Supp. 2d 239 (D. Mass. 2006) .........................................................9, 16

*Camden Asset Mgmt., L.P. v. Sunbeam Corp.*,
  No. 99-8275-CIV-MIDDLEBROOKS, 2001 U.S. Dist. LEXIS 11022 (S.D.
  Fla. July 3, 2001) ......................................................................................................14

*Crowell v. Ionics, Inc.*,
  343 F. Supp. 2d 1 (D. Mass. 2004) ................................................................21

*Degulis v. LXR Biotechnology, Inc.*,
  No. 95CIV4204 (RWS), 1997 WL 20832 (S.D.N.Y. Jan. 21, 1997) ...............................22

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ("*Dura*") ..................................................................19, 20

*Fantini v. Salem State College*,
  557 F.3d 22 (1st Cir. 2009)...............................................................................6

*Feiner v. SS&C Techs., Inc.*,
  11 F. Supp. 2d 204 (D. Conn. 1998).............................................................18

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983).............................................................................................7

*Hunt v. Alliance N. Am. Gov't Income Trust*,
  159 F.3d 723 (2d Cir. 1998)......................................................................14, 18

*In re Brooks Automation, Inc. Sec. Litig.*,
  No. 06-11068-RWZ, 2007 WL 4754051 (D. Mass. Nov. 6, 2007) ...........................20, 23

*In re Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D. 534 (N.D. Cal. Feb. 4, 2009) ("*Schwab*") ............................... *passim*

*In re Credit Suisse-AOL Sec. Litig.*,
  465 F. Supp. 2d 34 (D. Mass. 2006) ..............................................................21

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00Civ9475 SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)....................................22

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    ---F. Supp. 2d ---, 2009 WL 2432373 (S.D.N.Y. Aug. 7, 2009) ...................................8, 20

*In re Learnout & Hauspie Sec. Litig.*,
    286 B.R. 33 (D. Mass. 2002) .........................................................................................23

*In re Marsh & McLennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006).............................................................................12

*In re Paracelsus Corp.*,
    6 F. Supp. 2d 626 (S.D. Tex. 1998) ...............................................................................22

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    566 F. Supp. 2d 363 (M.D. Pa. 2008) ...........................................................................10

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. 2006).............................................................................19

*In re Sonus Networks, Inc. Sec. Litig.*,
    No. Civ.A.04-10294-DPW, 2006 WL 1308165 (D. Mass. May 10, 2006).......................7

*In re Stone & Webster, Inc., Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2005)..........................................................................................18

*In re Surebeam Corp. Sec. Litig.*,
    No. 03CV1721 JM(FOR), 2004 U.S. Dist. LEXIS 26951 (S.D. Cal. Jan. 3, 2005).........17

*In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*,
    941 F. Supp. 326 (S.D.N.Y. 1996).................................................................................15

*In re Time Warner Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) .............................................................................................12

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) .........................................................................19

*Levine v. AtriCure, Inc.*,
    594 F. Supp. 2d 471 (S.D.N.Y. 2009).............................................................................19

*Lewis v. Straka*,
    No. 05-C-1008, 2006 WL 2927658 (E.D. Wis. Oct. 12, 2006)........................................22

*Lucia v. Prospect St. High Income Portfolio*,
    36 F.3d 170 (1st Cir. 1994)............................................................................................16

*Milman v. Box Hill Sys.*,
    72 F. Supp. 2d 220 (S.D.N.Y 1999)................................................................18

*No. Nine Visual Tech. Corp. Sec. Litig.*,
    51 F. Supp. 2d 1 (D. Mass. 1999) .............................................................7, 18

*Oxford Asset Mgmt. v. Jaharis*,
    297 F.3d 1182 (11th Cir. 2002) ...................................................................12

*Ray v. Citigroup Global Mkts.*,
    482 F.3d 991 (7th Cir. 2007) ......................................................................20

*Rodney v. KPMG Peat Marwick*,
    143 F.3d 1140 (8th Cir. 1998) .....................................................................15

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)........................................................................19

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ........................................................................16

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1995)..........................................................................11

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996)..........................................................................7

*Steckman v. Hart Brewing, Inc.*,
    143 F. 3d 1293 (9th Cir. 1998) ....................................................................17

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
    No. 00Civ8058(NRB), 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ...........................22

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .....................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §77k(a) ......................................................................................7

15 U.S.C. §77k(e) ....................................................................................19

15 U.S.C. §78j(b) .....................................................................................19

**RULES**

Rule 12(b)(6)................................................................................2, 6, 7, 20

Rule 8 ............................................................................................. *passim*

Rule 9 .......................................................................................................11

Court-appointed Lead Plaintiffs, the Evergreen Investor Group and the Bricklayers Group[1] (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion to dismiss[2] filed by Defendants Evergreen Fixed Income Trust ("Evergreen") and Evergreen's individual trustees[3] (collectively "Defendants").

## I.    PRELIMINARY STATEMENT

Without acknowledging the $40 million settlement with the Securities & Exchange Commission ("SEC")[4] and the Massachusetts Securities Division over the same conduct at issue here, Defendants argue that this case should be dismissed because Plaintiffs' First Amended Class Action Complaint ("Complaint") fails to state any cause of action.[5]  In so doing, Defendants seek to dramatically alter the pleading requirements under Rule 8(a), re-write the standards for establishing a *prima facie* case under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and all but ignore the indistinguishable case of *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D.

---

[1]    The Evergreen Investor Group is comprised of International Brotherhood of Electrical Workers Local 98, NECA Electrical Workers Joint Apprenticeship Training Trust Fund and First Agency Account LP.  The Bricklayers Group is comprised of the Bricklayers and Allied Graftworkers Local 1 of PA/DE Health and Welfare Fund and the Bricklayers Local 54 of Pennsylvania Supplemental Welfare Fund.

[2]    Defendants filed their memorandum of law in support of their motion to dismiss on July 15, 2009 [Dkt. No. 38]. Defendants' memorandum is referred to herein as "Def. Mem."

[3]    The trustee defendants, referred to collectively herein as the "Trustee Defendants," are: Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner.

[4]    In its June 8, 2009 Cease-and-Desist Order, the SEC found that the value of Evergreen's Ultra Short Opportunities Fund, which was consistently ranked as a high performer in its class in 2007 and 2008, was inflated by as much as 17 percent due to Evergreen's improper valuation practices. Had Evergreen properly valued the Fund, it would have ranked near the bottom of its category during this time, the SEC found.  The SEC's order also found that Evergreen overstated the Fund's value by failing to properly take into account readily available information about certain mortgage-backed securities in the valuation process, thus resulting in a false and misleading net asset value. *See* http://www.sec.gov/litigation/admin/2009/34-60059.pdf (last visited Aug. 28, 2009).

[5]    Tellingly, the remaining defendants in this action – Evergreen Investment Management Company, LLC, Evergreen Investment Services, Inc., Wachovia Corporation, Dennis H. Ferro and Kasey Phillips – filed an Answer and Affirmative Defenses on July 15, 2009 [Dkt. No. 36].

534 (N.D. Cal. Feb. 4, 2009) ("*Schwab*").  Defendants' spurious arguments aside, Plaintiffs' Complaint more than adequately states claims under the Securities Act.

To be sure, the Complaint alleges that Defendants operated the Evergreen Ultra Short Opportunities Fund (the "Fund"), which was marketed and sold as a stable, "ultrashort"[6] bond fund that provides "current income consistent with preservation of capital and low principal fluctuation." In reality, the Fund was not an ultrashort bond fund, let alone one that preserved capital and maintained low principal fluctuation, because it was comprised of assets that were illiquid, not short-term in nature and otherwise riskier than represented.  In addition, Defendants inaccurately priced the Fund's holdings, thus obscuring their true value and causing a dramatically overstated Net Asset Value ("NAV").  Eventually, the true risks presented by the Fund's assets – which were unknown to the investing public throughout the Class Period[7] – materialized, resulting in the re-pricing of the Fund's assets, the Fund's closure, and staggering losses to the Fund's investors.

In moving to dismiss Plaintiffs' claims, Defendants raise three primary arguments:  (1) Defendants made no materially false and misleading statements; (2) Plaintiffs cannot demonstrate "loss causation"; and (3) Plaintiffs have not adequately pled that the Trustee Defendants were "sellers" or control persons.  As in *Schwab*, where the court rejected the same arguments made by Defendants here in sustaining virtually identical factual allegations, Defendants' arguments have no merit.  For example, in challenging the alleged falsity of their statements, Defendants grossly

---

[6]    Ultrashort bond funds are mutual funds that generally invest in fixed income securities with extremely short maturities, or time periods in which they become due for payment.  *See http://www.sec.gov/investor/pubs/ultra-short_bond_funds.htm* (last visited Aug. 25, 2009).

[7]    The Class Period is October 28, 2005 through June 18, 2008.

mischaracterize Plaintiffs' allegations and ignore large portions of the Complaint. Defendants' disagreement with Plaintiffs' well-pled factual allegations is not appropriate under Rule 12(b)(6).

Next, despite conceding that loss causation is an affirmative defense under the Securities Act, Defendants nevertheless assert that Plaintiffs had a duty to plead loss causation as an element of their Securities Act claims. Based on this faulty premise, Defendants then argue that the rapid decline in the price of Fund shares was not related to Defendants' false and misleading statements, including, amazingly, their incorrect valuation of the Fund's underlying assets. Not only is Defendants' fact-intensive argument premature on a motion to dismiss, it is contrary to the pleading requirements under the Securities Act, and defies both established case law and common sense.

Finally, Plaintiffs adequately plead that Defendants were "sellers" and control persons in accordance with the requirements of Rule 8.

Notwithstanding Defendants' efforts to mischaracterize the Complaint and inject factual issues into the mix, Plaintiffs have more than sufficiently met the requirements under Rule 8 for their Securities Act claims. Accordingly, Defendants' motion to dismiss should be denied in its entirety.

## II.    STATEMENT OF FACTS

### A.    The Fund and Its Investment Strategy

The Fund, which Defendants started on July 14, 2003, boasted four classes of shares that traded on NASDAQ. ¶¶49-50.[8] The Fund was an open-ended mutual fund with its shares offered on a continuous basis to the public pursuant to a series of registration statements and prospectuses filed with the SEC.[9] ¶50. The reported price for each class of shares reflected the Fund's NAV. *Id.*

---

[8]    References herein to "¶___" are to the corresponding paragraphs in the Complaint.

[9]    The Registration Statements, Prospectuses and supplements to the SEC filings, and other incorporated

Throughout the Class Period, Defendants actively marketed the Fund to investors as a higher-yielding alternative to money-market funds, offering a combination of safety and liquidity – "to provide current income consistent with preservation of capital and low principal fluctuation." ¶¶2-3. As described in the Offering Materials, the Fund's basic strategy was "to seek the highest total return by maximizing income and minimizing price fluctuations." ¶52. The Offering Materials touted the Fund's ultra short duration strategy as "maintain[ing] an average portfolio duration of approximately one year or less," thus keeping price volatility low. Consistent with these goals, and its relatively stable NAV, investors poured significant sums into the Fund, which grew from $41 million in net assets as of June 30, 2003 to $731 million in net assets as of March 30, 2008. *Id*.

Contrary to these representations, throughout the Class Period the Fund invested in illiquid, risky, speculative and volatile securities. ¶53. As a result of Defendants' risky investments, which stood in stark contrast to the Fund's stated investment strategy, a substantial proportion of the Fund's investments was illiquid, and the actual valuation of the Fund's NAV was substantially below the Fund's stated valuation. *Id*.

Specifically, an expert analysis of the Fund's average portfolio duration indicates that throughout the Class Period actual average duration greatly exceeded one year, despite Defendants' representations to the contrary. ¶¶54-56. Likewise, the Fund's investments were more illiquid than represented as, from the beginning of the Class Period, a substantial percentage of the Fund's assets were invested in illiquid, highly speculative, and risky private placement securities. ¶¶58-65. In addition to longer durations and illiquid private placements, the Fund heavily invested in mortgage-backed securities ("MBSs") throughout the Class Period, even though there was a dramatic

---

documents, are referred to, collectively, as the "Offering Materials." The Registration Statements and Prospectuses are defined in ¶¶93-95 of the Complaint.

downturn in the housing and subprime mortgage markets at the same time.  ¶66.  As the housing and subprime crisis intensified, the value of MBSs plummeted and investors found the market for many MBSs nonexistent, rendering them essentially illiquid.  ¶¶66-90.

**B.      Defendants' Offering Materials Were False and Misleading**

Despite the foregoing, the Fund's Offering Materials made fundamental and core representations to investors that the Fund was safe and subject to minimal or nominal price fluctuations.  These misrepresentations included, *inter alia*:

- "The Fund seeks to provide current income consistent with preservation of capital and low principal fluctuation."

- The "Fund intends to maintain an average portfolio duration of approximately one year or less."

- The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations…"

- "The Fund seeks to provide investors with a high level of current income while reducing price volatility."

- Benchmarking the Fund's performance to the Lehman 6-Month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index.

- "The Fund may not invest more than 15% (10% for money market funds) of its net assets in securities that are illiquid."

- The valuation of the Fund's NAV.

¶¶100, 102, 104, 106, 108, 110, 112.  These core representations portrayed the Fund as a safe, liquid and stable investment suitable for conservative investors.  In reality, however, the Fund's investments were inconsistent with an ultrashort bond fund, the Fund's average duration exceeded one year, the Fund was not comparable to similarly titled funds, the Fund's investments were increasingly illiquid, the Fund invested in riskier than represented MBSs, and the Fund's NAV was grossly overstated.  ¶¶101, 103, 105, 107, 109, 111, 113, 115.

## C.      Defendants Are Forced to Liquidate the Fund

Throughout the Class Period, and propped up by Defendants' pubic statements and reported NAV, the Fund traded in a stable range from $9-$10 per share.  ¶116.  Then, on June 19, 2008, Defendants announced that the Fund would be liquidated with shareholders of record as of June 18, 2008 receiving a cash distribution based on a $7.48 per share NAV, calculated after the close of business on June 18, 2008.  ¶117.  The amount paid to shareholders of the Fund in the liquidation was significantly lower than the value of the Fund's shares during the Class Period.  Indeed, only seven business days earlier, on June 9, 2008, the Fund's shares were offered at $9.07 per share. ¶119.  As a result, Plaintiffs and the members of the Class have suffered considerable damages.  By the time Defendants liquidated the Fund and revealed the Fund's true investment strategy and NAV valuation, Plaintiffs had incurred hundreds of millions of dollars in losses.  To be sure, shareholders of the Fund lost more than 24% of their supposedly safe and liquid investments when the risks associated with Defendants' true trading strategy materialized.  ¶121.

## III.    ARGUMENT

### A.      Standards on a Motion to Dismiss

A court should only grant a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "if, and only if, accepting all well-pleaded facts as a true and drawing all reasonable inferences in favor of [the plaintiff], the complaint 'fails to state a claim upon which relief can be granted.'"  *Fantini v. Salem State College*, 557 F.3d 22, 26 (1st Cir. 2009).[10]  Thus, in order to defeat a motion to dismiss under Rule 12(b)(6), a complaint simply must contain "enough

---

[10]      Internal citations, footnotes, and quotations are omitted, and emphasis is added, unless otherwise stated.

facts to raise a reasonable expectation that discovery will reveal evidence supporting the claims." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)).

### B.    Pleading Standards Under Section 11 and Section 12(a)(2)

#### 1.    The Elements of a Section 11 Claim

Section 11 imposes liability on, *inter alia*, the issuer of a security, as well as any person who signed the registration statement and/or served as a director of the issuer or performed similar functions, if (1) the registration statement, as of its effective date, contained an untrue statement of a material fact; (2) omitted to state a required material fact; or (3) omitted to state a material fact necessary to make the statements therein not misleading. *See* 15 U.S.C. §77k(a); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1204 (1st Cir. 1996). Under Section 11, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements," while "[o]ther defendants bear the burden of demonstrating due diligence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-382 (1983). Pleading a Section 11 claim is not difficult: "The default rule is that a plaintiff who purchased a security issued pursuant to a registration statement . . . need only show a material misstatement or omission to establish his prima facie case." *In re Sonus Networks, Inc. Sec. Litig.*, No. Civ.A.04-10294-DPW, 2006 WL 1308165, at *11 (D. Mass. May 10, 2006).

Importantly, and as Defendants do not contest, a Section 11 claim is subject only to the notice pleading standards of Rule 8(a); a short and plain statement of the claim will suffice. *See In re No. Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 13 (D. Mass. 1999); *see also Shaw*, 82 F.3d at 1223.

#### 2.    The Elements of a Section 12(a)(2) Claim

Section 12(a)(2) holds any person liable "who offers or sells a security by means of a prospectus which includes an untrue statement of a material fact or omits to state a material fact

necessary in order to make the statements, in light of the circumstances under which they were made, not misleading." *In re Giant Interactive Group, Inc. Sec. Litig.*, ---F. Supp. 2d ---, 2009 WL 2432373, at *6 (S.D.N.Y. Aug. 7, 2009) (upholding claims under §§11 and 12(a)(2)).  As with claims under Section 11, claims under Section 12(a)(2) need only be pled in accordance with Rule 8(a).  *See id.*

### 3.    The Offering Materials Contained False and Misleading Statements of Material Fact Regarding the Fund's Investments

The Offering Materials provided, *inter alia*, that: (a) "The Fund seeks to provide current income consistent with preservation of capital and low principal fluctuation"; (b) the "Fund intends to maintain an average portfolio duration of approximately one year or less"; (c) the Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations…";  (d) "[t]he Fund seeks to provide investors with a high level of current income while reducing price volatility"; (e) the Fund's performance was benchmarked to the Lehman 6-Month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index; (f) "[t]he Fund may not invest more than 15% (10% for money market funds) of its net assets in securities that are illiquid"; and (g) the valuation of the Fund's NAV.  ¶¶100, 102, 104, 106, 108, 110, 112.  The Complaint adequately alleges that these statements were untrue statements of material fact because, throughout the Class Period, the Fund's investments were inconsistent with an ultrashort bond fund, the Fund's average duration exceeded one year, the Fund was not comparable to similarly titled funds, the Fund's investments were increasingly illiquid, the Fund invested in riskier than represented MBSs, and the Fund's NAV was grossly overstated.[11]  ¶¶101, 103, 105, 107, 109, 111,

---

[11]    Tellingly, Defendants do not include their overstated NAV, which resulted from the routine mispricing of assets, in their description of Plaintiff's "four types of purported misstatements."  *See* Def. Mem. at 3.  To be sure, the gravamen of Plaintiffs' Complaint is that Defendants mispriced the Fund's holdings, resulting in an artificially inflated

113.  These statements, which go to the core characteristics of the Fund, undoubtedly were material to investors.[12]

The Company's revelation on June 19, 2008 that it would be liquidating the Fund and that shareholders would receive a cash distribution based on a $7.48 per share NAV supports the falsity of Defendants' statements.  The amount paid to Fund shareholders in the liquidation was significantly lower than the value of the Fund's shares just one week earlier, and the dramatic price drop demonstrated the routine mispricing of the Fund's assets.

Moreover, after the close of the Class Period, and once Defendants correctly valued the Fund's NAV, all of the Fund's investments held as of March 31, 2008, were declared illiquid.  In contrast, as of March 31, 2008, the Offering Materials disclosed that the Fund held just $84.2 million of illiquid assets, or 11.5% of the NAV.  The magnitude of illiquid investments was in direct contradiction to Defendants' repeated statements that the Fund would "not invest more than 15% (10% for money market funds) of its net assets in securities that are illiquid."  In short, Defendants made representations that the Fund's actual investment strategies were consistent with its stated investment strategy.  These representations were materially false or misleading because the true but undisclosed value of the Fund's NAV had dropped substantially and a significant percentage of the Fund's portfolio holdings were volatile, risky, and illiquid.

Because the detail and specificity provided in the Complaint go far beyond what is required under Rule 8, the Complaint should be sustained in its entirety.

---

NAV.  When Defendants correctly valued their holdings, the NAV dropped precipitously, resulting in millions of dollars in investor losses and the closure of the Fund.  Defendants' failure to challenge the falsity of the stated NAV throughout the Class Period alone warrants sustaining the Complaint.

[12]    At a minimum, "the materiality of a given statement is generally regarded in [the First Circuit] as a question of fact that should be left to a jury rather than resolved by the court on a motion to dismiss."  *Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239, 258 (D. Mass. 2006).

### a. Defendants' Misstatements About the Fund's Strategy and Objectives are Actionable

Defendants first contend that statements about the Fund's objectives are not actionable because "the mere failure to meet an objective does not give rise to a claim" under the Securities Act. *See* Def. Mem. at 4. In so doing, Defendants purport to rely on *Twombly*,[13] but then divide and isolate the numerous, repeated misrepresentations identified in the Complaint, offering self-serving excuses to evade the clear misleading nature of each. "Nothing in *Twombly* . . . contemplates this 'dismemberment' approach to assessing the sufficiency of a complaint." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 373 (M.D. Pa. 2008).

While Defendants attempt to characterize their false statements as simply "objectives," these statements are not just avowals of a goal or aspiration. Rather, these statements made distinct claims about the current posture of the Fund and present methods being employed to carry out strategies and achieve results. *See, e.g.*, ¶¶100, 102, 104, 106, 112.

For example, in the 2006 and 2007 Prospectuses, Defendants stated that the Fund "seeks to provide current income consistent with preservation of capital and low principal fluctuation." ¶¶102, 104. These statements did not merely state that the Fund wants or hopes to preserve capital. Rather, they described an investment approach that would not sacrifice stability and security in the pursuit of higher returns. That meaning is confirmed by the context of the statements, which included:

- "The portfolio managers intend to maintain a minimum dollar-weighted average credit quality of Aa3, as defined by Moody's Investors Services, Inc."

- "Under normal market conditions, the Fund intends to maintain an average portfolio duration of approximately one year or less."

---

[13]    Importantly, *Twombly* did not overrule the principle that when evaluating a complaint, the Court "accept[s] as true all well-pleaded facts alleged, and draw[s] all possible inferences in [plaintiffs'] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

- "The Fund may not invest more than 15% (10% for money market funds) of its net assets in securities that are illiquid."

- The Prospectus compared the Fund's average annual total returns to the Lehman 6-Month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index.

¶¶102, 104.

These misrepresentations portrayed a "strategy" and operating rules for the Fund that were much more than mere "objectives." Rather, they import an approach and empirical standards for investment decisions, using terms that were undoubtedly calculated to appeal to managers of pension funds and other conservative investors. These statements are not so "general and indefinite" as to be devoid of any meaning that a reasonable investor could factor into investment decisions. As another example, Defendants knew that the characteristic of a short average duration, with the resulting price stability, was so material to investors that Defendants used this concept as the very name of the "Ultra Short Opportunities Fund." The concept was no mere objective, but an avowed inherent quality that was the centerpiece of Defendants' (false) portrayal of their investment product.

The Complaint lays out these misrepresentations in comprehensive detail. ¶¶98-117. These representations, in their full context, reinforced and supported Defendants' promotion of the Fund as a safe vehicle that would not expose the capital investments to risk of catastrophic decline in value. As set forth in the Complaint, Defendants did not simply describe their current strategy, they also gave assurances that the attributes of capital preservation and stability would continue.[14] Even as

---

[14]    Defendants cite case law for the proposition that representations about current strategy do not amount to a promise to continue that policy. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801 (2d Cir. 1995) (analyzing claims under Rule 9, which must be pled with particularity, and not Rule 8 as required here). However, in this case, Defendants' disclosures were never accurate – that is, at no point during the Class Period did Defendants, despite their public statements to the contrary, operate under the rules they espoused. Defendants do not point to a change in strategy, like Philip Morris' decision to lower prices in the face of declining demand. *See id*.

11

Defendants exposed their customers' capital to increasing undue risk with exotic, concentrated, illiquid private placement instruments, they touted the same cautious investment strategy.[15]

With respect to the average duration of the portfolio, Defendants attack an expert analysis referenced in the Complaint. Such an attack is premature at the pleadings stage. *See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 466 (S.D.N.Y. 2006) ("The role of the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."). As explained in the Complaint, while Plaintiffs do not have the information necessary to analyze all of the Fund's holdings, the cited analysis shows a duration average that exceeded the one-year representation by 500% or more. ¶¶54-57. These allegations must be taken as true and Defendants cannot premise their motion to dismiss on an evidentiary argument. The case cited by Defendants, *Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002), is inapposite. There, the court did not scrutinize the reliability of the cited medical studies, but simply found that even taken at face value, they did not rebut representations in the prospectus about a range of efficacy for the defendants' new drug. Here, in contrast, Plaintiffs have stated facts that show Defendants' claims of one-year duration – which was absolutely vital to the "Ultra Short" label – were objectively false.

The *Schwab* case is directly on point. Like here, the plaintiffs in *Schwab* alleged that the defendants positioned Charles Schwab Corp.'s "Yield-Plus Fund" as an "ultra short term bond fund

---

at 811. Moreover, as shown in the Complaint, Defendants continued to misrepresent the Fund even as the underlying investments began to collapse; Defendants never changed their disclosures to warn investors that the previous representations were no longer in force. *See In re Time Warner Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993) (finding statements that a company was "pursuing a specific business goal as well as an intended approach for reaching it" to be actionable).

[15]     Although Defendants claim not to understand the Complaint's allegations regarding NAV disclosure, *see* Def. Mem. at 4, n.1, the Complaint makes perfectly clear, in the language Defendants quoted, that the NAV disclosures were not only directly related to the critical factor of liquidity, but were false and misleading in their own right.

which sought to keep its average portfolio duration below one year and to limit principal risk exposure" and to preserve capital. 257 F.R.D. at 542. In finding statements about portfolio duration, liquidity risk, the pricing of the fund's holdings, and comparisons to other short-term funds actionable, the court held that Rule 8 governs Section 11 claims and that the plaintiffs adequately alleged that, in reality, the fund was improperly categorized as "ultrashort bond fund," the fund's average portfolio duration exceeded one year, and that the fund "obscured the true nature of the securities in the fund's portfolio." *Id.* at 543-546. Likewise here, Plaintiffs adequately allege that Defendants' statements about the Fund's objectives were false when made and, to the extent they were ever accurate, were abandoned during the Class Period.

### b.   Defendants' Statements Comparing the Fund's Results to Other Indices are Actionable

Defendants next contend that their statements comparing the Fund to certain other indices were not misleading. *See* Def. Mem. at 6. However, the average duration of the Fund's portfolio for most of the Class Period was, at a minimum, in excess of two years, significantly longer than the duration of the Lehman 6-Month Treasury Bill Index or the Lehman Brothers Government/Credit 0-2.5 Year Index (the "Lehman Indices"). ¶¶4, 54-55.[16] The differential is critical because average portfolio duration is a measure of a fund's sensitivity to changes in interest rates. Longer portfolio duration gives rise to greater price volatility and, therefore, risk due to increased sensitivity to unanticipated interest rate fluctuations. ¶¶4, 54-57. The comparisons between the Fund and the Lehman Indices contained in the Offering Materials are materially misleading because the Fund's substantially longer portfolio duration made it far more susceptible to interest rate fluctuations, and

---

[16]   An analysis of the publicly traded securities, comprising approximately a quarter of the Fund's NAV, showed an average duration of more than 6 years as of March 31, 2005; 5.3 years as of March 31, 2006; 5.4 years as of March 31, 2007; and 5.3 years as of March 31, 2009. ¶54.

hence far riskier than the Lehman Indices.  *See Schwab*, 257 F.R.D. at 543 (finding actionable statements that compared the fund to "the 'Lehman Brothers U.S. Short Treasury: 9-12 months' when in fact the fund's profile was not comparable to that index.").[17]

### c.    Defendants' Statements About the Fund's Liquidity are Actionable

Despite Defendants' repeated representations that the Fund "may not invest more than 15% ... of its net assets in securities that are illiquid," ¶¶100, 102, 104, the Fund invested a substantial portion of its assets, far in excess of 15%, in illiquid private placement securities ("Rule 144A Securities") throughout the Class Period.  ¶¶63-64.[18]  As a consequence, while the Fund reported that only 11.5% of its NAV consisted of illiquid assets as of March 31, 2008, a mere six months later, on September 30, 2008, the Fund *admitted* that *all* of the investments held by the Fund on March 31, 2008 were illiquid.  ¶9.

---

[17]     While Defendants do not even mention *Schwab*, they purport to rely on *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 730 (2d Cir. 1998), to argue that comparisons of the past performance of the Fund and the Lehman Indices are not actionable because Defendants did not intend for them to be "exhaustive" descriptions of the Fund's risks. Def. Mem. at 6.  This simplistic reading of *Hunt*, however, grossly misstates the decision.  In *Hunt*, the Second Circuit found that a comparative chart in an annual report was not misleading because "nothing in the chart or the report purported to contain information regarding the Fund's risks."  *Id*. at 730.  Accordingly, the Court concluded that "[n]o reasonable investor could have viewed this chart as an exhaustive description of the Fund's risks."  *Id*.  In sharp contrast to *Hunt*, here, Defendants expressly stated that the comparisons to the Lehman Indices contained in the Offering Materials were "intended to provide [investors] with some indication of the risks of investing in the Fund."  *See* Garvey Aff. Exs. 1, at 11; 3, at 11; and 4, at 13. (quoted in Def. Mem. at 6, n.3).  Thus, Defendants themselves not only acknowledged that the comparisons were relevant to consideration of the Fund's risks, but actually invited investors to assess that risk based, in part, on the misleading comparisons.  Accordingly, *Hunt* is inapposite and, as in *Schwab*, the misleading comparisons in the Offering Materials are actionable.

[18]     Plaintiffs allege in great detail that such securities are illiquid because of "the lack of an established secondary market for these securities … with trades executed bilaterally between the investor and dealer bank.  As a result, for many product types, actual trade prices generally are not reported in [an] organized or centralized fashion …."  ¶60. *See Camden Asset Mgmt., L.P. v. Sunbeam Corp.*, No. 99-8275-CIV-MIDDLEBROOKS, 2001 U.S. Dist. LEXIS 11022, at *30-36 (S.D. Fla. July 3, 2001) (finding that the market for debentures sold pursuant to Rule 144A was not efficient because, *inter alia*, "the debentures were thinly traded," were not priced efficiently, and aftermarket pricing information could only be obtained by "calling around, rather than relying on a market where bids, asks, and transactions are quoted publicly and accurate transaction data and information is available.").

In the face of their own admissions, Defendants weakly argue that Plaintiffs have failed to adequately allege that their statements on liquidity were misleading. *See* Def. Mem. at 7. Leaving aside that this assertion is contradicted by the fact that ***all*** of the investments held on March 31, 2008 were found by Defendants to be illiquid a mere six months later, even though Defendants expressly stated they would not invest more than 15% of their assets in illiquid securities, Defendants' argument ignores Plaintiffs' detailed allegations concerning the inherent illiquidity of Rule 144A Securities. *See* ¶¶58-60. It is both Defendants' investment of more than 15% of the Fund's assets in illiquid vehicles and its failure to disclose the truth about the illiquidity of the Rule 144A Securities (and the Fund's MBSs) that rendered the Offering Materials materially misleading.[19] *See In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 339 (S.D.N.Y. 1996) (sustaining allegation that failure to adequately disclose the inherent illiquidity of the CMO market in prospectus was actionable); *see also Rodney v. KPMG Peat Marwick*, 143 F.3d 1140, 1145 (8th Cir. 1998) (reversing grant of summary judgment to auditor because "[r]easonable investors reading the Fund's prospectuses and [auditor's] reports would conclude that, whatever risks they were accepting by investing in a mutual fund that traded in derivatives and engaged in forward commitments, they were not encountering the enhanced risks created by violations of the Fund's own basic investment policies" against investing in illiquid securities).

### d.     Defendants Mischaracterize Plaintiffs' Allegations Concerning the Fund's Risky MBS Investments

In arguing that their statements about MBSs are not actionable, Defendants grossly mischaracterize the Complaint. *See* Def. Mem. at 7-9. Plaintiffs do not allege that Defendants failed

---

[19]     The Offering Materials merely state that Rule 144A Securities may have "limited markets" and that the Fund's advisor would consider whether such securities should be considered illiquid. *See* Garvey Aff., Ex. 6. Importantly, the Offering Materials never disclosed that such investments are inherently illiquid or that more than 15% of the Fund was comprised of illiquid holdings.

to list their MBS assets. Rather, Plaintiffs allege that several of Defendants' Class Period statements were false and misleading because, in truth, the Fund was invested in riskier than represented MBSs that were speculative and increasingly illiquid. *See, e.g.*, ¶104 (2007 Prospectus: "The Fund seeks to provide current income consistent with preservation of capital and low principal fluctuation"). Moreover, while the Offering Materials did specify the names and certain related information about the MBSs, Defendants routinely mispriced these assets, resulting in an artificially inflated NAV. Finally, the Complaint details how the Fund's increased holdings in risky MBSs were inconsistent with Defendants' statements that the Fund would be "appropriate for investors who: seek income consistent with low volatility or capital growth; and seek a Fund which has a shorter duration compared to other bond funds." ¶¶100-105. *See Schwab*, 257 F.R.D. at 543 (upholding allegations where "Defendants also represented that the fund was similar to a money market fund with minimal changes in share price. Plaintiffs claim that these representations were false because the fund concentrated an increasing portion of its assets – eventually more than 45 percent – in risky mortgage[]-backed and asset-backed securities.").[20]

### 4. The Offering Materials Omitted Material Facts Which Were Required to Be Stated Therein

Defendants do not contest the violations of SEC rules set forth in the Complaint. ¶122. To be sure, Item 11(a) of Form S-3 requires an issuer to "disclose any and all material changes . . .

---

[20]    To the extent that Defendants argue they are shielded from liability because their statements about their MBS holdings were literally true, Defendants miss the mark. When Defendants undertook to discuss their holdings, they had a duty to speak fully and truthfully. That is, "a duty to speak the full truth arises when a defendant undertakes a duty to say anything." *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994). Statements that are literally true are not immune from liability under the federal securities laws because "[s]ome statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *Brumbaugh*, 416 F. Supp. 2d at 250 n.10; *see also Lucia v. Prospect St. High Income Portfolio*, 36 F.3d 170, 175 (1st Cir. 1994) ("when a corporation does make a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate."). Because Defendants created a misleading picture with respect to their risky investments in MBSs, their misstatements are actionable.

which have occurred since the end of the latest fiscal year . . . and which have not been described in a report" on Forms 10-Q, 10-QSB, or 8-K. *Id.* "The primary purpose of the 'material changes' disclosure requirement of Item 11(a), then, is to ensure that the prospectus provides investors with an update of the information required to be disclosed in the incorporated Exchange Act filings, including the information provided in those filings concerning 'known trends and uncertainties' with respect to 'net sales or revenues or income from continuing operations.'" *See id.* (citing Item 303(a)(3)(ii)); *see also Steckman v. Hart Brewing, Inc.*, 143 F. 3d 1293, 1296 (9th Cir. 1998) (holding that Section 11 imposes liability if a registrant "omits to state a material fact required to be stated" in the registration statement and that "any omission of facts required to be stated" under Item 303 will produce liability).

Under the guidelines promulgated by the SEC and the relevant case law, the Offering Materials should have disclosed that Defendants' investments were growing riskier and more illiquid and that these troubles would negatively impact the Fund's NAV. *See In re Surebeam Corp. Sec. Litig.*, No. 03CV1721 JM(FOR), 2004 U.S. Dist. LEXIS 26951, at *39-40 (S.D. Cal. Jan. 3, 2005) (sustaining Section 11 claim on omission of information required under Item 303 concerning joint venture and funding). To this, Defendants offer no response.

Second, the Offering Materials were required to furnish the information mandated by Item 503 of Regulation S-K. ¶122. Under Item 503(c) of Regulation S-K, an issuer is required to, *inter alia*, provide a "discussion of the most significant factors that make the offering risky or speculative." The increased troubles in the MBS market and the increasing illiquidity of the Fund's portfolio exposed the Fund to the heightened risk that its NAV would materially decrease, thus negatively impacting the Fund's share price. Thus, the existence of these serious problems was a

17

"significant factor" that made investing in the Fund "risky or speculative" and was required to be disclosed in the Offering Materials, which Defendants failed to do.

### 5. Defendants Are Not Protected by the "Bespeaks Caution" Doctrine

Defendants also invoke the bespeaks caution doctrine. *See* Def. Mem. at 3-5, 9. As an initial matter, the bespeaks caution doctrine only applies to those statements that are forward-looking, not those that are misstatements of historical fact. *See In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005) ("The mere fact that a statement contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement."); *In re No. Nine*, 51 F. Supp. 2d at 19 ("The 'bespeaks caution' defense is inapplicable where, as here, the plaintiffs challenge the truthfulness of a claim regarding **present facts** as opposed to forward-looking statements."). Here, Defendants' misstatements are clearly not forward-looking and, thus, not even arguably entitled to any protection. *See* ¶¶100, 102, 104, 106.[21]

While Defendants may have disclosed a "general and indefinite" possibility that the Fund's investments could lose value, they did not disclose the risk that Defendants would violate their

---

[21]     Even if Defendants' statements were forward-looking, which they are not, the "bespeaks caution" doctrine provides no defense when the accompanying cautionary language does not expressly warn of, or directly relate to, the risk that brought about a plaintiff's loss. *Hunt*, 159 F.3d at 728-29. At most, Defendants point to the type of boilerplate language that appears in every prospectus. That is, Defendants' purported "risk disclosures" did not adequately explain the actual risks the Fund was then-experiencing with respect to certain of its investments. *See* Def. Mem. at 9. Defendants' boilerplate risk disclosures were worded in the hypothetical, using phrases such as that the market "**may** be volatile and limited, which **may**" make certain securities difficult to sell, *see id.*, when, in truth, such liquidity issues were then-affecting the Fund. Simply, risk disclosures will not insulate an issuer from liability where the risk allegedly disclosed has already come to fruition. *See Feiner v. SS&C Techs., Inc.*, 11 F. Supp. 2d 204, 209 (D. Conn. 1998) (holding that a risk disclosure which warned that a delay could materially affect the "business, financial condition, and results of operations" failed to nullify a misleading omission as to the delay's impact on historical financial statements). Purported warnings about some "hypothetical" risk do not satisfy Defendants' disclosure obligations. *See Milman v. Box Hill Sys.*, 72 F. Supp. 2d 220, 230-31 (S.D.N.Y 1999) (holding that risk disclosures concerning risks that had already come to pass did not satisfy defendants' disclosure obligations under Item 303(a)).

professed strategic guidelines and criteria, thus exposing the Fund to the risk of catastrophic collapse

by concentrating in illiquid, long-term investments.  Because Defendants' statements were not

forward-looking, and cautionary words about future risk do not insulate Defendants for concealing

risks that have already transpired, Defendants' bespeaks caution defense fails.  *See Rombach v.*

*Chang*, 355 F.3d 164, 173 (2d Cir. 2004) ("Cautionary words about future risk cannot insulate from

liability the failure to disclose that the risk has transpired.").

### C.      Plaintiffs Have No Duty to Plead Loss Causation

Defendants first erroneously state that "[c]laims under Sections 11 and 12(a)(2) of the

Securities Act must allege that the defendants' misstatements caused the plaintiff's loss," *see* Def.

Mem. at 9, but then admit that 15 U.S.C. §77k(e) provides that loss causation is an ***affirmative***

***defense*** and not part of the *prima facie* case in a Section 11 or 12(a)(2) action.  *See* Def. Mem. at 10.

But even though loss causation is ***not*** an element of a Securities Act claim, Defendants still try to

impose the pleading requirements for loss causation set forth in *Dura Pharms., Inc. v. Broudo*, 544

U.S. 336 (2005) ("*Dura*"), on the Complaint.  *See* Def. Mem. at 9-13.  Of course, *Dura* involves the

pleading requirements for a claim under Section 10(b) of the Exchange Act, not Sections 11 or

12(a)(2) of the Securities Act.[22]  To be sure, a plaintiff is not required to plead loss causation when

alleging violations of Sections 11 or 12(a)(2).  *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 476

(S.D.N.Y. 2009) ("pleading loss causation is not plaintiff's burden under the statute."); *In re Giant*

---

[22]      Defendants cite *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1188 (N.D. Cal. 2004), for the
supposed proposition that "courts have dismissed Section 11 claims against mutual funds on the pleadings where it is
apparent, from the face of the complaint, that the plaintiffs could not establish loss causation."  *See* Def. Mem. at 10.
The *In re Wagoner* decision, however, has no such holding.  Rather, that court dismissed the plaintiff's claims under
Section 10(b) – not Section 11 – where loss causation is an element of a *prima facie* case.  *See id.* at 1188 (granting
auditor's motion to dismiss "Section 10(b) claim").  Likewise, Defendants' reliance on *In re Salomon Smith Barney Mut.*
*Fund Fees Litig.*, 441 F. Supp. 2d 579 (S.D.N.Y. 2006), suffers the same fatal flaw where the court also analyzed loss
causation requirements under Section 10(b) of the Exchange Act.

*Interactive*, 2009 WL 2432373, at *9 ("Because it is unnecessary to plead loss causation to maintain claims under Sections 11 and 12, the affirmative defense of negative causation is generally not properly raised on a Rule 12(b)(6) motion.").

Even though Plaintiffs are not required to plead loss causation, Defendants remarkably argue that, on the face of the Complaint, Plaintiffs will never be able to demonstrate loss causation. In so doing, Defendants impermissibly: (a) attempt to shift the burden of the affirmative defense of loss causation onto Plaintiffs; (b) ignore the Complaint's allegations;[23] and (c) inject an intensely factual issue, which typically involves expert testimony, into a motion to dismiss. *See In re Brooks Automation, Inc. Sec. Litig.*, No. 06-11068-RWZ, 2007 WL 4754051, at *15 n.17 (D. Mass. Nov. 6, 2007) ("Although defendants raise an issue regarding plaintiffs' ability to establish loss causation, this factual issue is hotly contested and is not amenable to disposition at this time.").

In any event, even if Plaintiffs were required to plead loss causation – which they are not – Defendants mischaracterize *Dura*. Although *Dura* requires a plaintiff alleging claims under 10(b) of the Exchange Act to provide the defendants with "some indication" of its loss causation theory, it does not mandate the manner in which loss causation must be pled. To that end, following *Dura*, courts – including those cited by Defendants – have recognized numerous ways in which loss causation may be established. *See Ray v. Citigroup Global Mkts.*, 482 F.3d 991, 995 (7th Cir. 2007) (outlining three methods for establishing loss causation).[24]

---

[23]    Incredibly, Defendants go so far as to state that "Plaintiffs make no explicit attempt to establish loss causation, even though it is a requisite element of Section 11 and 12(a)(2) claims." *See* Def. Mem. at 12. Defendants are wrong, both legally and factually. First, as set forth above, loss causation is ***not*** an element of either a *prima facie* Section 11 or 12(A)(2) claim. Second, and even though it is not a required element, the Complaint explains in detail – in a section entitled "Defendants' Misrepresentations and Omissions of Material Facts Cause Huge Losses" – exactly how Defendants' false statements relate to Plaintiffs' losses. ¶¶116-121.

[24]    The cases relied upon by Defendants involve alleged fraud-based violations of the securities laws under Section

The defendants in *Schwab* similarly argued that the plaintiffs failed to adequately allege loss causation.[25]  In rejecting identical arguments made by Defendants here, the *Schwab* court held:

> Defendants' narrow formulation of loss causation would effectively insulate mutual fund companies from claims for a wide range of material misrepresentations regarding fund policies, risks and investment decisions.  Defendants would immunize a scheme that purported to invest in low-risk government bonds but in fact invested in legitimate but high-risk treasure-hunting expeditions.  Loss causation, however, is not limited to the common 'corrective disclosure-price drop' scenario.

> As courts in other circuits have explained, a plaintiff may establish loss causation by alleging "that the ***subject*** of the fraudulent statement or omission was the cause of the actual loss suffered;" that defendants' "misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value of" the security.

> \*     \*     \*

> Here, plaintiffs certainly alleged that the ***subject*** of the fraudulent statements caused their losses – that defendants misrepresented or failed to disclose portfolio risks, the materialization of which caused (or exacerbated) the losses.  Similarly, if defendants misrepresented the scope of the fund's risks, and the undisclosed risks exacerbated the losses, then plaintiffs' resulting undervaluation of risks might be deemed to have caused some portion of their losses.

257 F.R.D. at 547 (emphasis in original).  The same reasoning applies here and, as a result, Plaintiffs have adequately demonstrated loss causation, even though they are not required to do so.

---

10(b), where as set forth above and unlike here, loss causation is an element of a *prima facie* claim.  These cases not only involve heightened pleading standards, but **support** Plaintiffs' Complaint.  *See, e.g.*, Def. Mem. at 11, 13, *citing Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 22 (D. Mass. 2004) (upholding loss causation allegations because "[t]here can be little doubt that [the plaintiff] meets this minimal standard.").

[25]    To the extent Defendants contend that Plaintiffs' losses were actually caused by external market conditions or other factors, Defendants' arguments in this regard are premature and inappropriate on a motion to dismiss.   At the motion to dismiss stage, a plaintiff is not required to rule out all the other factors that contributed to a security's lower price in order to plead loss causation.  *In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 55 (D. Mass. 2006) ("[I]solating the myriad causal factors that affect the stock price is a factual question that should be decided at trial, with the help of qualified experts.  It is not an issue appropriate for a motion to dismiss.").

### D.    Plaintiffs Have Adequately Alleged Claims Against the Trustee Defendants

#### 1.    Defendants Are Section 12(a)(2) Sellers

Defendants erroneously claim that they are exempt from §12(a)(2) liability because they were not "sellers" under the Securities Act. The Trustee Defendants solicited investors to purchase shares in the Fund through, among other things, preparing and signing the Registration Statements. ¶¶26-37, 138, 147. As such, the Trustee Defendants are "sellers" under §12(a)(2). *See Schwab*, 257 F.R.D. at 549 ("As many courts have found, the registration statement is itself a solicitation document" and "the act of signing a registration statement . . . is at least suggestive of solicitation activity.").[26]

#### 2.    Plaintiffs Have Adequately Alleged Control Persons Liability

The Trustee Defendants also dispute that they are "control persons" for purposes of §15 of the Securities Act. *See* Def. Mem. at 17-19. First, the Complaint adequately alleges that the Trustee Defendants all exercised control over the Fund and authorized the release of the Offering Materials. *See* ¶¶26-37, 39-40, 146-147. Moreover, Defendants' arguments are premature. *See Lewis v. Straka*, No. 05-C-1008, 2006 WL 2927658, at *9 (E.D. Wis. Oct. 12, 2006) (holding that "[w]hether a defendant is a controlling person is usually a question of fact which cannot be resolved at the pleading stage."); *Schwab*, 257 F.R.D. at 550 ("Whether the defendant is a controlling person is an

---

[26]    *See also Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00Civ8058(NRB), 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001); *In re Deutsche Telekom AG Sec. Litig.*, No. 00Civ9475 SHS, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002). At a minimum, "[t]he question of whether a defendant is a 'seller' under Section 12[(a)](2) is a question of fact" and thus cannot be decided on a motion to dismiss. *Degulis v. LXR Biotechnology, Inc.*, No. 95CIV4204 (RWS), 1997 WL 20832, at *5 (S.D.N.Y. Jan. 21, 1997); *In re Paracelsus Corp.*, 6 F. Supp. 2d 626, 632 (S.D. Tex. 1998) (observing that "[t]he determinations of a 'seller' under the leading cases that have interpreted Section 12 . . . have been rather fact intensive questions," and therefore should be considered "in an evidentiary context rather than on a bare pleading"); *see also Schwab*, 257 F.R.D. at 550 ("Whether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury; at this stage plaintiffs' need only satisfy Rule 8(a)'s lenient pleading standards.").

intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."). Accordingly, because Plaintiffs have adequately alleged a primary securities violation and that the Trustee Defendants were "control persons," the Section 15 claim should be sustained. *See In re Brooks*, 2007 WL 4754051, at *15.[27]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

---

[27]    Defendants cite *In re Learnout & Hauspie Sec. Litig.*, 286 B.R. 33, 39 (D. Mass. 2002), for the proposition that status as a director or trustee and signing an SEC filing is insufficient to demonstrate control. *See* Def. Mem. at 18. The court there actually held that while status as a director alone was insufficient, an allegation that outside director audit committee members had signed SEC filings was sufficient, among other allegations, to allege a control person violation. *Id.* at 41.

DATED:  August 31, 2009

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
PAUL J. GELLER
JACK REISE
DOUGLAS WILENS


*s/ Jack Reise*
JACK REISE

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

PAGE PERRY, LLC
J. BOYD PAGE
JAMES M. EVANGELISTA
DAVID J. WORLEY
1040 Crown Pointe Parkway, Suite 1050
Atlanta, GA  30338
Telephone:  770/673-0047
770/673-0120 (fax)

COHEN, PLACI TELLA & ROTH, P.C
STEWART L. COHEN
WILLIAM D. MARVIN
Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone:  215/567-3500
215/567-6019 (fax)

Co-Lead Counsel for Plaintiffs

PYLE, ROME, LICHTEN, EHRENBERG
   & LISS-RIORDAN, P.C.
BETSY EHRENBERG, BBO #554628
18 Tremont Street, Suite 500
Boston, MA  02108
Telephone:  617/367-7200
617/367-4820 (fax)

Liaison Counsel for Plaintiffs

24

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 31, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

counsel of record.

*s/ Jack Reise*
JACK REISE
