### United States District Court
### District of Massachusetts

—————————————————————————— )
**IN RE EVERGREEN ULTRA SHORT**       )
**OPPORTUNITIES FUND SECURITIES**     )
**LITIGATION**                        )
—————————————————————————— )    **Civil Action No.**
                                      )    **08-11064-NMG**

### MEMORANDUM & ORDER

**GORTON, J.**

In this securities class action, defendants Evergreen Fixed Income Trust and nine of its individual Trustees have moved to dismiss the claims against them for failure to state a cause of action.

## II.  Background

### A.   Factual Background

This is a private securities class action brought by persons or entities ("the plaintiffs") who purchased or otherwise acquired shares of a mutual fund called Evergreen Ultra Short Opportunities Fund ("the Fund") between October 28, 2005, and June 23, 2008 ("the Class Period").

The plaintiffs have sued the companies that market, manage and advise the Fund ("the Corporate Defendants") as well as some of the officers, directors and trustees of those companies ("the Individual Defendants").  The Corporate Defendants include 1) Evergreen Fixed Income Trust ("Evergreen Trust"), the issuer of

-1-

the Fund's shares, 2) Evergreen Investment Management Company, LLC ("Evergreen Investment"), the Fund's investment advisor, 3) Wachovia Corporation ("Wachovia"), Evergreen Investment's parent corporation, and 4) Evergreen Investment Services, the underwriter and distributor of the shares of the Fund sold by Evergreen Trust.  The Individual Defendants include Dennis Ferro ("Ferro"), the President and Chief Executive Officer of Evergreen Investment and the Principal Executive Officer of Evergreen Trust, Kasey Phillips ("Phillips"), the Principal Financial Officer of Evergreen Trust during the Class Period, and 12 members of the Evergreen Board of Trustees (collectively, "the Trustee Defendants").[1]

The plaintiffs allege that the defendants violated federal securities law by registering, marketing and selling the Fund as a safe, liquid and stable investment when, in fact, it was comprised of illiquid, risky and volatile securities. Specifically, they allege that the defendants' offering materials, including registration statements, prospectuses and certified shareholder reports, 1) contained materially false and misleading statements about the objective and features of the Fund and 2) omitted essential facts that either made the

---

[1] The Trustee Defendants are Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Schofield, Richard J. Shima and Richard K. Wagner.

statements misleading or were required in order to render the
statements non-misleading.

The plaintiffs allege that the defendants marketed the Fund
to investors as a higher-yielding alternative to money-market
funds, offering a combination of safety and liquidity.  The
offering materials stated, <u>inter</u> <u>alia</u>, that 1) the Fund's
objective was to "provide income consistent with preservation of
capital and low principal fluctuation", 2) the Fund intended to
"maintain an average portfolio duration of approximately one year
or less", and 3) the Fund would invest no more than 15% of its
net assets in illiquid securities.  In reality, however, the
Fund's average portfolio duration exceeded one year, its
investments were increasingly illiquid and it invested in
riskier-than-represented mortgage-backed securities ("MBSs"). The
plaintiffs also allege that the defendants artificially inflated
the Fund's net asset value ("NAV") and continued heavily
investing in risky MBSs, many of which were attached to sub-prime
mortgages, even as news accounts revealed troubles in the
mortgage and credit markets.

Throughout the Class Period, the Fund traded in a stable
range from $9-$10 per share, allegedly due, at least in part, to
the defendants' artificial inflation of its NAV. Eventually,
however, the true risks presented by the Fund's assets (which
were apparently unknown to the investing public during the Class

-3-

Period), materialized, resulting in the re-pricing of the Fund's assets, the Fund's closure and significant losses to the Fund's investors.  On June 19, 2008, when Evergreen Trust announced that the Fund would be liquidated, shareholders of record received a cash distribution based on a $7.48 per share NAV, significantly lower than the average value of the Fund's shares during the Class Period.  At the time of the Fund's liquidation, its assets were worth only $403 million (over $300 million less than the NAV it reported nine months earlier).  The plaintiffs allege that they lost approximately 25% of their investments due to the defendants' misrepresentations.

The plaintiffs have brought three counts against the various defendants: 1) violations of Section 11 of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77k, against Evergreen Trust, Evergreen Services and the Individual Defendants (Count I), 2) violations of Section 12(A)(2) of the Securities Act, 15 U.S.C. § 77l, against all defendants (Count II) and 3) violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, against Wachovia, Evergreen Investments and the Individual Defendants (Count III).

### B.  Procedural History

This action originated as three separate class actions alleging substantially similar violations of federal securities laws against Evergreen Trust and related entities.  Those actions

-4-

were consolidated into the present class action and, in an order dated May 7, 2009, the Court appointed Evergreen Investor Group and the Bricklayers Group as lead plaintiffs for the Class and the law firms of Coughlin Stoia Geller Rudman & Robbins, LLP, Page Perry LLC and Cohen, Placitella & Roth, P.C. to serve as co-lead counsel (Docket #33). [2]

The lead plaintiffs filed their First Amended Complaint on April 30, 2009. On July 15, 2009, individual defendants Phillips and Ferro and corporate defendants Wachovia, Evergreen Investment and Evergreen Investment Services filed an answer, raising various affirmative defenses including, inter alia, failure to state a claim, statute of limitations, res judicata, laches, business judgment rule, lack of privity, due diligence and failure to mitigate damages. On that same day, the remaining defendants, Evergreen Trust and the Trustee Defendants, moved to dismiss all the claims against them. In December, 2009, the Court referred the case to Magistrate Judge Marianne Bowler for a Report and Recommendation on the motion to dismiss. After convening a hearing on January 25, 2010, Judge Bowler took the

---

[2]  The Evergreen Investor Group is comprised of the International Brotherhood of Electrical Workers Local 98, NECA Electrical Workers Joint Apprenticeship Training Trust Fund and First Agency LP. The Bricklayers Group is comprised of the Bricklayers and Allied Craftsworkers Local of PA/DE Health and Welfare Fund and the Bricklayers Local 54 of the Pennsylvania Supplemental Welfare Fund.

defendants' motion under advisement and then referred it back to
this Court in early March, 2010.

II.  **Legal Analysis**

   A.   **Standard of Review**

      To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim to
relief that is plausible on its face." Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may look only to the facts alleged
in the pleadings, documents attached as exhibits or incorporated
by reference in the complaint and matters of which judicial
notice can be taken. Nollet v. Justices of the Trial Court of
Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d
1127 (1st Cir. 2000).  Furthermore, the Court must accept all
factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Langadinos v.
American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the
facts in the complaint are sufficient to state a cause of action,
a motion to dismiss the complaint must be denied.  See Nollet, 83
F. Supp. 2d at 208.

      Although a court must accept as true all of the factual
allegations contained in a complaint, that doctrine is not,
however, applicable to legal conclusions.  Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal

-6-

elements, supported by mere conclusory statements, do not suffice to state a cause of action.  Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  Id. at 1950.

**B.  Application**

Evergreen Trust and the Trustee Defendants (hereafter "the defendants") contend that all of the plaintiffs' claims against them should be dismissed because 1) the complaint fails to allege any actionable misrepresentations or omissions and 2) the plaintiffs cannot establish loss causation.  The Trustee Defendants also move to dismiss Counts II and III against them on the grounds that they are not "sellers" under Section 12(a)(2) of the Securities Act or "control persons" under Section 15.

**1.  Sections 11 and 12 of the Securities Act (Counts I and II)**

Sections 11 and 12 are enforcement mechanisms for the mandatory disclosure requirements of the Securities Act of 1933. Section 11 imposes liability on the issuer of a security, as well as any person who signed the registration statement and/or served as a director or performed similar functions, if the registration statement 1) contained an untrue statement of material fact, 2) omitted to state a material fact or 3) omitted a material fact necessary to make the statements therein not misleading.  15 U.S.C. § 77k(a); see Shaw v. Digital Equip. Corp., 82 F.3d 1194,

1201 (1st Cir. 1996).  Under Section 11, as long as the plaintiff can prove a material misstatement or omission, liability for the issuer of the security is "virtually absolute, even for innocent misstatements."  Herman v. Huddleston, 459 U.S. 375, 381-82 (1983).  Unlike Section 10(b) of the Securities Exchange Act of 1934, Section 11 has no scienter or reliance requirement.  To establish a prima facie violation of Section 11, a plaintiff need only show a material misstatement or omission.  In re Sonus Networks, Inc. Sec. Litig., No. 04-cv-10294-DPW, 2006 WL 1308165, at *11 (D. Mass. May 10, 2006).

Section 12(a)(2) of the Securities Act imposes liability on any person who "offers or sells" a security by means of a prospectus or oral communication that contains an untrue statement of material fact or a misleading omission.  15 U.S.C. § 77l(a)(2).

### a.   False Statements of Material Fact

The First Amended Complaint points to several categories of statements about the Fund that are alleged to be false or misleading, including: 1) statements about the Fund's objectives, 2) statements about the Fund's holding of illiquid assets and 3) statements comparing the Fund to other indices such as the Lehman 6-month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index.  The Court considers each of those categories of alleged misrepresentations in turn.

-8-

###### i.    Statements About the Fund's Objectives

The plaintiffs allege that the Fund's offering materials made fundamental and core misrepresentations to investors about its strategy and objectives.  Those alleged misrepresentations include, <u>inter alia</u>:

1)   "The Fund seeks to provide income consistent with preservation of capital and low principal fluctuation";

2)   The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price flucutations"; and

3)   "The Fund seeks to provide investors with a high level of current income while reducing price volatility".

The defendants contend that those statements are not actionable because they are merely aspirational and do not promise that specific results will be achieved.  In support of that argument, the defendants rely on a case from the Southern District of New York which held that "general and indefinite" statements of objective are not actionable under securities law. <u>See</u>, <u>e.g.</u>, <u>TCW/DW North Am. Gov't Income Trust Sec. Litig.</u>, 941 F. Supp. 326, 338 (S.D.N.Y. 1996) (rejecting claim that a mutual fund's statement that its "investment objective [was] to earn a high level of current income while maintaining relatively low volatility of principal" was misleading because statement was forward-looking and expressed no guarantee.)

The defendants' characterization of the statements in the offering materials as "general and indefinite" is misleading.  As

-9-

the plaintiffs assert, the statements in the Fund's prospectuses
were more than mere aspirations or avowals of the Fund's goals.
Rather, they were key guidelines that established the Trust's
investment strategy and laid down the basic ground rules it would
follow.  <u>Contra</u> <u>San Leandro Emergency Medical Group Profit</u>
<u>Sharing Plan</u> v. <u>Philip Morris Co., Inc.</u>, 75 F.3d 801, 811 (2nd
Cir. 1996) (vague statements that company "should deliver income
growth consistent with its historically superior performance" and
was "optimistic about 1993" were non-actionable puffery
statements).

     Moreover, to the extent that the prospectus did contain
general statements regarding the Fund's goals, the meaning of
those statements was clarified by the context in which they
appeared.  For example, the basic claim that the Fund sought to
"provide income consistent with preservation of capital and low
principal fluctuation," which could be considered "general and
indefinite" when read alone, was surrounded by other more
specific statements regarding the Fund's objectives, including 1)
that it intended to maintain an average portfolio duration of one
year or less, 2) that it would not invest more than 15% of its
net assets in illiquid securities and 3) that its returns would
likely be comparable to those in the Lehman indices.  <u>See</u> <u>Hunt</u> v.
<u>Alliance North Am. Gov't Income Trust</u>, 159 F.3d 723, 728-29 (2nd
Cir. 1998) ("the prospectus must be read as a whole ... the

-10-

central issue is .... whether defendants' representations, taken together and in context, would have misled a reasonable investor about the nature of the securities") (internal citation omitted).

When considered together, the statements in the offering materials made distinct claims about the posture of the Fund, its investment strategies and the rules under which it would operate. Such statements were not so "general and indefinite" as to be devoid of any meaning, but were, in all likelihood, of utmost importance to potential investors.  See In re Charles Schwab Corp. Sec. Litig., 257 F.R.D. 534, 543-546 (N.D. Cal. 2009) (finding actionable similar statements about a fund's portfolio duration, liquidity risk and comparisons to other short-term funds).

Finally, the defendants assert that the statements about the Fund's objectives are not actionable because the offering materials contained language that "bespoke caution" about the Fund's risks.  The "bespeaks caution doctrine" renders forward-looking statements non-actionable where cautionary language "adequately warn[s] of the possibility that actual results or events may turn out differently" than presumed.  Shaw, 82 F.3d at 1213.

The bespeaks caution doctrine is of no avail to the defendants in this case.  As an initial matter, the doctrine applies only to "soft," future-looking statements such as

-11-

"forecasts, estimates, opinions, or projections" and not to statements of present fact.  <u>Shaw</u>, 82 F.3d at 1213.  The statements in the 2005-2007 prospectuses laying out the ground rules for the Fund (e.g., that it would not invest more than 15% of its assets in illiquid securities) are not "soft statements" or future projections and, as such, are not entitled to the doctrine's protections.

Moreover, the vague, boilerplate language in the prospectuses warning that the Fund is not guaranteed to meet its goals did not disclose the risky nature of the Fund's investments with sufficient clarity as to "bespeak caution" nor did it expressly warn of the particular risk that allegedly brought about the plaintiffs' loss.  <u>See</u> <u>Hunt</u>, 159 F.3d at 729 (cautionary language "must directly relate to that by which plaintiffs claim to have been misled").  Thus, the defendants' "bespeaks caution" defense is to no avail.

### ii.   Statements about the Fund's Limited Holding of Illiquid Assets

The plaintiffs allege that the defendants misled investors by claiming that the Fund "would not invest more than 15% of its net assets in illiquid securities" when, in fact, the Fund invested a much greater portion of its assets in illiquid private placement securities ("Rule 144A Securities").  The defendants contend that such statements were not misleading because there is no basis for finding that the Fund's investments in Rule 144A

-12-

Securities were tantamount to investments in illiquid securities. That argument, however, appears to overlook the plaintiffs' detailed allegations concerning the inherent illiquidity of the Rule 144A Securities and, to the extent that there is a factual dispute concerning whether the 144A securities were illiquid, that dispute is not subject to resolution at this stage in the proceedings.

### iii. Statements Comparing the Fund to Other Indices

The next category of alleged misrepresentations involves a series of statements comparing the Fund to certain other indices (such as the Lehman 6-month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index) which, according to the plaintiffs, had significantly longer average portfolio durations than the Fund.  The plaintiffs allege that the comparisons between the Fund and the Lehman indices were materially misleading because the Fund's longer portfolio duration made it far more susceptible to unanticipated changes in interest rates and therefore far riskier than the Lehman indices.

The defendants respond that the comparisons were not misleading because they were not intended to provide an exhaustive description of the Fund's risks but rather to provide some basis for comparison.  The defendants find support for that argument in <u>Hunt</u> v. <u>Alliance North Am. Gov't Income Trust</u>, in which the Second Circuit Court of Appeals rejected a claim that a

chart in the defendants' offering materials inappropriately compared a fund's performance to certain Lehman indices.

The defendant's reading of <u>Hunt</u> is, however, over-simplified.  In that case, the court found that the comparative chart was not misleading because "nothing in the chart or the report purported to contain information regarding the fund's risks."  159 F.3d at 730.  Here, on the other hand, the defendants expressly invited investors to use the charts to assess the Fund's risks, stating that the comparisons to the Lehman indices were "intended to provide [investors] with some indication of the risks of investing in the Fund."  Moreover, in <u>Schwab</u>, a case which involved virtually identical factual allegations, the court sustained similar statements comparing the fund to a Lehman Brothers index when the fund's profile was not in fact comparable to that index.  257 F.R.D. at 543.

Accordingly, the defendants' statements comparing the Fund's results to the Lehman indices, in conjunction with the other alleged misrepresentations, suffice to state a claim under Sections 11 and 12 of the Securities Act.

### b.   Loss causation

Sections 11 and 12(a) of the Securities Act require a causal link between the defendants' misstatements and the plaintiffs' economic loss.  15 U.S.C. §§ 77(k), 77(l); <u>Dura Pharmaceuticals</u> v. <u>Broudo</u>, 544 U.S. 336, 342 (2005).

The defendants maintain that the plaintiffs cannot establish loss causation and, as such, all counts against them should be dismissed.[3]  Loss causation is not, however, an element of a prima facie case under Sections 11 and 12 and, accordingly, the plaintiffs are under no obligation to plead it.  See 15 U.S.C. §§ 77k, 77l; Levine v. AtriCure, Inc., 594 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) ("pleading loss causation is not plaintiff's burden under the statute");  Freeland v. Iridium World Commc'ns, Ltd., 233 F.R.D. 40, 46 (D.D.C. 2006) ("The absence of loss causation is an affirmative defense under both Section 11 and 12 of the Securities Act rather than an element of Plaintiff's prima facie case.")  That said, occasionally courts have dismissed claims under Sections 11 and 12 on the pleadings when it was "apparent on the face of the complaint" that the plaintiffs would be unable to establish loss causation.  In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 253-54 (S.D.N.Y. 2003) (dismissing claims under Sections 11 and 12 based on the fact that the drop in stock price occured prior to the disclosure of negavtive information).

The defendants contend that the instant case presents such a circumstance because the alleged loss suffered by the plaintiffs (the depreciation in the value of their securities as a result of

---

[3]  Liability under Section 15 requires proof of an underlying violation of Sections 11 or 12, thereby incorporating the "loss causation" requirement imposed by those sections.  See 15 U.S.C. § 77(o).

the Fund's decline in NAV) was not caused by the defendants'

misstatements.  The defendants reason that:

1)   because the Fund is a mutual fund (as opposed to an individual security), the price of its shares is determined by the aggregate value of the underlying assets in the Fund's portfolio (i.e., its NAV), which is calculated in accordance with the statutory formulas contained in the Investment Company Act, 15 U.S.C. § 80a-2(a)(41); and

2)   because the NAV is bound, by statute, to the Fund's assets, its decline resulted from the depreciation and re-valuation of those assets, rather than from any misrepresentations or omissions made by the defendants; therefore,

3)   even if the Fund misrepresented its investment policies or risk profile, loss causation cannot be established.

The defendants' formulation of loss causation is too narrow.

In Schwab, the court rejected arguments similar to those made by

the defendants here, noting that such a narrow formulation of

loss causation

would effectively insulate mutual fund companies from claims for a wide range of material misrepresentations regarding fund policies, risks and investment decisions ... [and] would immunize a scheme that purported to invest in low-risk [securities] but in fact invested in legitimate but high risk [securities].

257 F.R.D. at 547.  The court further explained that loss

causation is "not limited to the common 'corrective-disclosure-

price drop' scenario," in which the alleged misrepresentation was

followed by a corrective disclosure that led directly to a drop

in share price.  Id.  A plaintiff may also establish loss

causation by alleging that

the subject of the fraudulent statement or omission was
the cause of the actual loss suffered [or] that [the]
defendants' misstatements and omissions concealed the
price-volatility risk ... that materialized and played
some part in diminishing the market value of the
security.

Id. (emphasis in original) (internal citations omitted); see also

Ray v. Citigroup Global Markets, 482 F.3d 991, 995 (7th Cir.

2007) (outlining three possible ways to demonstrate loss

causation, including the "materialization of the risk" standard

and the "fraud-on-the-market" scenario).

Here, the plaintiffs allege that the defendants made false

representations about the riskiness of the Fund's investments and

artificially inflated the NAV throughout the Class Period.  When

the defendants' alleged misstatements were ultimately revealed,

the NAV declined in value, resulting in losses to the Fund.

Those allegations are sufficient to demonstrate that there is a

colorable claim of loss causation which is all that is required

to survive a motion to dismiss.

> c.  **Trustee Defendants' Status as Section 12 Sellers**

As stated above, Section 12(a)(2) of the Securities Act

imposes liability on any person who "offers or sells" a security

by means of a prospectus or oral communication containing a

material misstatement or misleading omission.  15 U.S.C.

§ 77l(a)(2).  The Trustee Defendants assert that they are exempt

from Section 12(A) liability because they are not "sellers" within the meaning of Section 12(a)(2).

In <u>Pinter</u> v. <u>Dahl</u>, the Supreme Court held that the "offers or sells" provision in Section 12 includes not only traditional sellers (i.e., those who pass title to the plaintiff-purchasers) but also certain individuals who engage in the solicitation of securities sales for financial gain.  486 U.S. 622, 643-47 (1988).  The Court further specified that

> proof the defendant caused a plaintiff's purchase of a
> security is not enough to establish that the defendant
> 'solicited' the sale for Section 12 purposes.

<u>Id.</u> at 651.  The Court focused its analysis on the relationship between the defendant and plaintiff-purchaser, holding that to qualify as a Section 12 "seller," the defendant "must be directly involved in the actual solicitation of a securities purchase." <u>Id.</u>  A defendant's "remote" involvement in a sales transaction or his mere "participat[ion] in soliciting the purchase" will not subject him to Section 12 liability. <u>Id.</u> at 651, n. 27.

In <u>Shaw</u>, the First Circuit applied the framework established in <u>Pinter</u> to find that

> neither involvement in the selling of a registration or
> prospectus nor participation in 'activities' relating
> to the sale of securities, standing alone, demonstrates
> the kind of relationship between defendant and
> plaintiff that could establish statutory seller status.

82 F.3d at 1215-16.  Other sessions in this Court have applied <u>Shaw</u> to come to similar conclusions, dismissing allegations

brought under Section 12 where the plaintiffs have alleged only that the defendants signed the offering materials or participated in the making of the registration statement.  <u>See</u>, <u>e.g.</u>, <u>In re Sonus Networks</u>, 2006 WL 1308165 at *10-11 (finding that allegations that individual officers signed and assisted in the preparation of offering materials was insufficient to establish "seller status").

Here, the plaintiffs allege only that the Trustee Defendants signed the registration statements and participated in the drafting, preparation and/or approval of the Offering Materials. The First Circuit's holding in <u>Shaw</u> makes it clear that such acts are insufficient to establish a statutory seller relationship with the plaintiffs.

The plaintiffs mount no serious opposition to the Trustee Defendants' arguments for dismissal under Section 12.  Rather than attempting to distinguish the holding in <u>Shaw</u>, they cite the <u>Schwab</u> case for the proposition that "the act of signing a registration statement ... is at least suggestive of solicitation activity."  <u>Schwab</u>, 257 F.R.D. at 549.  Although <u>Schwab</u> provides persuasive authority for several of the plaintiffs' other claims, its holding regarding statutory seller status is inconsistent with established First Circuit precedent and, as such, it will not save the plaintiffs' Section 12 claims against the Trustee

Defendants.  Accordingly, with respect to the Trustee Defendants, Count II will be dismissed.

### 2.   Section 15 of the Securities Act (Count III)

In Count III, the plaintiffs allege that defendants Wachovia, Evergreen Investments and the Individual Defendants, including each of the Trustee Defendants, were "control persons" of Evergreen Trust and, as such, are jointly and severally liable for the alleged violations of Sections 11 and 12 of the Securities Act.  The Trustee Defendants have moved to dismiss Count III on the grounds that it does not sufficiently allege that they exercised "control" of Evergreen Trust.

Section 15 of the Securities Act provides for joint and several liability for persons who control any person liable under Sections 11 or 12 of the Securities Act.  15 U.S.C. § 77o.  In order for "control person" liability under Section 15 to attach, the plaintiffs must allege 1) an underlying violation by the controlled person or entity and 2) that the defendants controlled the violator.  Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002).  To prove control, the plaintiffs must show that "the alleged controlling person ... not only [has] the general power to control the company, but must also actually exercise control over the company."  Id.

The plaintiffs assert here that the individual defendants were "culpable participants" in the violations of Sections 11 and

12 based on their having signed or authorized the signing of one or more of the registration statements and having otherwise participated in the process which allowed the offerings to be successfully completed.  The Trustee Defendants dispute that assertion, maintaining that mere status as a director or trustee is insufficient to demonstrate control under Section 15.  In support of their defense, the Trustee Defendants rely on In Re Lernout & Hauspie Securities Litigation, in which Judge Saris of this Court dismissed allegations against outside directors who signed SEC filings because the directors' duties "did not go beyond the 'run-of-the-mill' duties of a director of a large corporation".  286 B.R. 33, 39 (D. Mass. 2002).

The plaintiffs' complaint, however, alleges that the Trustee Defendants did more than just sign the Trust's SEC filings. Paragraphs 39 and 40 of the First Amended Complaint, for example, allege that each of the Individual Defendants, "participated in the drafting, preparation, and/or approval of various untrue and misleading statements" contained in the SEC filings and that they, by virtue of their Board memberships, "were responsible for ensuring the truth and accuracy" of those statements.  The Complaint also alleges that the Trustee Defendants had

> power and influence to direct the management and
> activities of [the] Fund and its employees [and,
> accordingly,] were able to, and did, control the
> contents of the Offering Materials.

The Court finds that the plaintiffs' allegations of control are sufficient to withstand the motion to dismiss their Section 15 claim.  Moreover, as the plaintiffs point out, whether a defendant is a "controlling person" is usually a question of fact that cannot be resolved at the pleading stage.  <u>See</u> <u>Schwab</u>, 257 F.R.D. at 550 ("Whether the defendant is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions") (internal citation omitted).  Because the plaintiffs have adequately alleged 1) an underlying violation of Sections 11 and 12 by the Trust and 2) that the Trustee Defendants controlled the Trust, Count III will not be dismissed.


**ORDER**

In accordance with the foregoing, Defendants' Motion to Dismiss (Docket No. 37) is, with respect to the claims against the Trustee Defendants in Count II, **ALLOWED**, but otherwise **DENIED**.


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge
Dated March 31 , 2010


-22-