UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE EVERGREEN ULTRA SHORT OPPORTUNITIES FUND SECURITIES LITIGATION | ) ) ) ) ) | No. 1:08-CV-11064-NMG<br><br>CLASS ACTION |

**LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
INCORPORATED MEMORANDUM OF LAW**

Lead Plaintiffs International Brotherhood of Electrical Workers Local 98 ("Local 98"),

NECA Electrical Workers Joint Apprenticeship Training Trust Fund ("NECA"), First Agency

Account LP ("First Agency"), Bricklayers and Allied Craftworkers Local 1 of PA/DE Health

("Local 1"), and Welfare Fund and the Bricklayers Local 54 of Pennsylvania Supplemental

Welfare Fund ("Local 54") (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 23 ("Rule

23"), respectfully move this Court for an Order appointing them as class representatives and

appointing Lead Counsel as Class Counsel.  Plaintiffs also seek certification of this action as a

class action on behalf of a class consisting of all persons or entities who purchased or acquired

shares of the Evergreen Ultra Short Opportunities Fund (the "Fund") between October 28, 2005

and June 18, 2008, inclusive, and who were damaged thereby (the "Class").[1]  The class claims,

issues, and/or defenses concern whether Defendants violated Sections 11, 12(a)(2), and 15 of the

Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77l, and 77o.

## MEMORANDUM OF LAW

## I.  PRELIMINARY STATEMENT

This case centers around the false and misleading statements contained in the Fund's

registration statements and prospectuses.  The Fund billed itself as an "ultra short" bond fund and

was marketed by Defendants to investors as a higher-yielding alternative to money-market funds.

---

[1]    Excluded from the Class are Defendants Evergreen Fixed Income Trust ("Evergreen") and Evergreen's individual trustees, Evergreen Investment Management Company, LLC ("Evergreen Investment"), Wachovia Corporation ("Wachovia"), Evergreen Investment Services, Inc. ("Evergreen Services"), Dennis H. Ferro ("Ferro"), and Kasey Phillips ("Phillips").  The "Trustee Defendants" are: Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner.  The Trustee Defendants, Evergreen, Evergreen Investment, Wachovia, Evergreen Services, Ferro and Phillips are referred to collectively as "Defendants."  Also excluded from the Class are any entity in which Defendants or any excluded person has or had a controlling interest, the officers and directors of the corporate defendants, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

Consistent with those marketing efforts, the Fund registration statements and prospectuses compared the Fund to the Lehman 6-month Treasury Bill Index and the Lehman Bros. Gov't./Credit 0-2.5 Year Index, which according to Defendants was "intended to provide [investors] with some indication of the risks involved of investing in the Fund." As it turned out for plaintiffs and the Class, nothing could be further from the truth.

Instead of investing in short-term, liquid securities with an average portfolio duration of one year or less as represented, Defendants actually invested in illiquid, risky, speculative, and volatile securities.[2] To mislead investors further, once the riskiness of the Fund's investments began to materialize, Defendants concealed the deterioration in the value of the Fund's portfolio by mispricing the Fund's assets, thereby artificially inflating its Net Asset Value ("NAV").

For these reasons, Defendants' public statements during the Class Period,[3] including the Fund's investment strategy and stated NAV, were false and misleading. When the truth about the overstated NAV came to light and the risks from the Fund's true investment strategy materialized, the Fund was forced to close and liquidate at a significant loss to investors. Plaintiffs, who are among those investors, are pursuing remedies under the Securities Act for their losses and those of the proposed Class.

As set forth below, this federal securities action should be certified under Rule 23(a) and (b)(3) because it satisfies all of Rule 23's requisites and is eminently suitable for class treatment. Indeed, courts in the First Circuit routinely certify securities class actions, finding them to be "particularly appropriate in the context of securities litigation." *In re Bos. Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 280 (D. Mass. 2009). With five Lead Plaintiffs eager to serve as

---

[2] Based on the discovery conducted thus far, it appears that there were internal disputes over how to appropriately measure the average duration of the Fund's portfolio.

[3] The Class Period is October 28, 2005 through June 18, 2008, inclusive.

fiduciaries to the proposed Class and class representatives and dedicated Lead Counsel, this case should be no exception.

## II.    STATEMENT OF FACTS

### A.    The Fund and Its Investment Strategy

Started by Defendants on July 14, 2003, the Fund boasted four classes of shares that traded on NASDAQ.  ¶¶49-50.[4]  The Fund was an open-ended mutual fund with its shares offered on a continuous basis to the public pursuant to a series of registration statements and prospectuses filed with the Securities & Exchange Commission ("SEC").[5]  ¶50.  The reported price for each class of shares reflected the Fund's NAV.  *Id*.

Defendants actively marketed the Fund to investors as a higher-yielding alternative to money-market funds, offering a combination of safety, liquidity, and low volatility:  (i) "The Fund seeks to provide current income consistent with the preservation of capital and low principal fluctuations;" (ii) The "Fund intends to maintain an average portfolio duration of approximately one year or less;" (iii) The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations;" (iv) "The Fund seeks to provide investors with a high level of current income while reducing price volatility;" and (v) "The Fund may not invest more than 15% (10% for money market funds) of its net assets in securties that are illiquid."  ¶3.  Consistent with these goals, the Fund compared itself to the Lehman 6-month Treasury Bill Index and Lehman Bros. Gov't./Credit 0-2.5 Year Index.  *Id*.

---

[4]    References herein to "¶___" are to the corresponding paragraphs in the First Amended Class Action Complaint ("Amended Complaint"), filed on April 30, 2009.  Dkt. No. 32.

[5]    The Registration Statements, Prospectuses and supplements to the SEC filings, and other incorporated documents, are referred to, collectively, as the "Offering Materials."  The Registration Statements and Prospectuses are defined in ¶¶93-95 of the Amended Complaint.

Investors poured significant sums into the Fund, which grew from $41 million in net assets as of June 30, 2003 to $731 million in net assets as of March 30, 2008.  ¶52.

### B.  Defendants' Offering Materials Were False and Misleading

As this Court stated in its Order dated March 13, 2010("March 31st Order"):

> The plaintiffs allege that the Fund's offering materials made fundamental and misrepresentation to investors about its strategy and objectives those misrepresentations include, inter alia:
>
> 1)   "The Fund seeks to provide income consistent with preservation of capital and low principal fluctuation";
>
> 2)   The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations"; and
>
> 3)   "the Fund seeks to provide investors with a high level of current income while reducing price volatility".
>
> \*               \*               \*
>
> The plaintiffs allege that the defendants misled investors by claiming that the Fund "would not invest more than 15% of its net assets in illiquid securities" when, in fact the Fund invested a much greater portion of its assets in illiquid private placement securities …
>
> \*               \*               \*
>
> The next category of alleged misstatements involves a series of statements comparing the Fund to certain other indices (such as the Lehman 6-month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 year Index) which, according to the plaintiffs … [were false and misleading] … [as] the Lehman indices were "intended to provide [investors] with some indication of the risks of investing in the Fund."
>
> \*               \*               \*
>
> The plaintiffs also allege that the defendants artificially inflated the Fund's net asset value ("NAV") and continued heavily investing in risky MSBs, many of which were attached to sub-prime mortgages, even as news accounts revealed troubles in the mortgage and credit markets.

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 89, 92-94 (D. Mass. 2010).  At bottom, Defendants' core representations portrayed the Fund as a safe, liquid and stable investment suitable for conservative investors.  In reality, however, the Fund's investments were inconsistent with an ultra short bond fund, the Fund's average duration exceeded one year, the Fund was not comparable to similarly titled funds, the Fund's investments were increasingly illiquid, the Fund invested in riskier than represented MBSs, and the Fund's NAV was grossly overstated.  ¶¶101, 103, 105, 107, 109, 111, 113, 115.

### C.    The Fund's Liquidation and Aftermath

Propped up by Defendants' pubic statements and reported NAV, the Fund traded in a stable range from $9-$10 per share throughout the Class Period.  ¶116.  Then, on June 19, 2008, Defendants announced that the Fund would be liquidated with shareholders of record as of June 18, 2008 receiving a cash distribution based on a $7.48 per share NAV, calculated after the close of business on June 18, 2008.  ¶¶117, 119.  The amount paid to shareholders of the Fund in the liquidation was significantly lower than the value of the Fund's shares during the Class Period. Only seven business days earlier, on June 9, 2008, the Fund's shares were offered at $9.07 per share.   ¶119.   By the time Defendants liquidated the Fund and revealed the Fund's true investment strategy and NAV valuation, Plaintiffs and members of the proposed Class had incurred hundreds of millions of dollars in losses as shareholders of the Fund lost more than 24% of their supposedly safe and liquid investments when the risks associated with Defendants' true trading strategy materialized.  ¶121.

The Fund's liquidation led to investigations by the SEC and the Massachusetts Securities Division, ultimately resulting in a $40 million settlement.  In its June 8, 2009 Cease-and-Desist Order, the SEC found that the value of the Fund, which was consistently ranked as a high

performer in its class in 2007 and 2008, was inflated by as much as 17 percent due to Defendants' improper valuation practices.[6]   The SEC found that had the Fund been properly valued it would have ranked near the bottom of its category during this time.   The SEC's order also found the Fund's value to be overstated because of a failure to properly take into account readily available information about certain mortgage-backed securities in the valuation process, thus resulting in a false and misleading NAV.

## III.   PROCEDURAL HISTORY

The original complaint in this action was filed on June 23, 2008 [Dkt. No. 1].   Thereafter, on January 15, 2009, the Court consolidated three related actions into this consolidated action. On February 27, 2009, Plaintiffs Local 98, NECA, First Agency, Local 1, and Local 54 filed a stipulation with the Court to be named Lead Plaintiffs and to have their counsel selected as Lead and Liaison Counsel   [Dkt. No. 30].   The Court approved the stipulation, thus appointing Plaintiffs as Lead Plaintiffs, on May 8, 2009 [Dkt. No. 33].   At the same time, the Court approved the selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), Cohen Placitella & Roth, P.C. ("CPR"), and Evangelista & Associates, LLC ("Evangelista") as Lead Counsel and Pyle Rome Ehrenberg, P.C. as Liasion Counsel.   *Id*.   Plaintiffs filed their Amended Complaint on April 30, 2009.

On July 15, 2009, Defendants Wachovia, Evergreen Investment, Evergreen Services, Ferro, and Phillips filed their Answer to the Amended Complaint [Dkt. No. 36].   On the same day, Evergreen and the Trustee Defendants moved to dismiss the Amended Complaint [Dkt. No. 37].   Plaintiffs filed their opposition to the motion to dismiss on August 31, 2009 [Dkt. No. 42]. On January 25, 2010, Magistrate Judge Bowler heard oral argument on the motion to dismiss.

---

[6]     *See* http://www.sec.gov/litigation/admin/2009/34-60059.pdf (last visited Feb. 3, 2011).

On March 31, 2010, the Court denied the motion to dismiss in large part [Dkt. No. 46].  *See In re Evergreen*, 705 F. Supp. 2d 86.

As a result of the March 31st Order, the automatic discovery stay imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") was lifted and the case has proceeded to discovery.  To that end, Plaintiffs served their First Requests for Production of Documents on July 15, 2010.  In response, Defendants have produced over 1.1 million documents.  The parties have also started taking fact depositions, with the fact discovery period set to close on February 28, 2011.

## IV.   ARGUMENT

### A.   Courts Favor Class Action Treatment of Securities Actions

Courts in this Circuit have repeatedly stressed that class actions are particularly appropriate in the context of securities litigation.  *See In re Bos. Scientific*, 604 F. Supp. 2d at 280;[7] *see also Priest v. Zayre Corp.*, 118 F.R.D. 552, 553-54 (D. Mass. 1988) ("Courts have expressed a general preference for class certification in securities fraud cases, based on a policy favoring enforcement of the federal securities laws, and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights."); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311 (D. Mass. 1987) ("In securities fraud cases, the class action device has been deemed especially appropriate and even 'indispensable' to protect the small claimants who would otherwise as a practical matter be denied relief.").

By providing a single forum in which to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources.  *See In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 253 (D. Mass. 2007) (finding class action in securities case to be

---

[7]   Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

"certainly superior to the litigation of individual claims brought by individual investors; that approach could lead to thousands of different cases brought throughout the nation on the same operative nucleus of facts."). Rule 23 of the Federal Rules of Civil Procedure, which governs class actions, is therefore broadly structured so as to facilitate the certification of class actions. *See In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006) (holding that "any doubts about the propriety of certification should be resolved in favor of certification.").

As the U.S. Supreme Court has held, class certification does not require a determination on the merits of the allegations asserted:

> [The court has no] authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.
>
> *     *     *
>
> In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974). In determining class certification, while a district court should "conduct a rigorous analysis of the prerequisites established by Rule 23," "[t]he First Circuit has cautioned, however, that a court must not turn the class-certification proceeding into an unwieldy trial on the merits." *In re Bos. Scientific*, 604 F. Supp. 2d at 280. Thus, "[t]he district court's inquiry into the merits at the class certification stage should only be conducted to the extent that the merits overlap the Rule 23 criteria." *Id*. at 281. (quoting *In re New Motor Vehicles Can. Export Antitrust Litig.*, 522 F.3d 6, 24 (1st Cir. 2008)). Consequently, the sole issue presented in this motion for class certification is whether Plaintiffs have fulfilled the requirements of Rule 23.

For a class to be certified pursuant to Rule 23, the four requirements of Rule 23(a) must be satisfied, as well as at least one of the conditions under Rule 23(b). As demonstrated below,

Plaintiffs have satisfied the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) for the proposed Class.  Therefore, class certification is proper.

### B. This Action Satisfies the Standards for Class Certification Under Fed. R. Civ. P. 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites to class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *In re Sonus Networks*, 247 F.R.D. at 247 (certifying class action).  Plaintiffs satisfy each of these prerequisites.

### 1. The Class is so Numerous that Joinder of All Members is Impracticable

"The numerosity requirement of Rule 23(a) is satisfied when the class is so numerous that joinder of all members is impractable."  *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250,  258 (D. Mass. 2005) (certifying securities class action).  Here, "joinder is especially impractable where the class is made up of many shareholders.  Thus, in a securities class action, a plaintiff can generally demonstrate numerosity on the basis of a large number of shares outstanding and traded."  *In re Sonus Networks*, 247 F.R.D. at 248.

The proposed Class easily satisfies the numerosity requirement.  During the Class Period, shares of the Fund were listed and actively traded on NASDAQ, an open and efficient market.  As of June 30, 2005, the Fund had over 64 million shares outstanding.[8]  As of June 30, 2006, the

---

[8]     *See* Form N-CSR, Certified Shareholder Report of Registered Management Investment Companies for the Evergreen Ultra Short Opportunities Fund, dated June 30, 2005, a true and accurate copy of the relevant portions of which are attached hereto as **Exhibit A**.  The Court can take judicial notice of the number of outstanding shares reported by Defendants in their SEC filings.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999).

Fund had over 68.9 million shares outstanding and as of June 30, 2007, the number of shares outstanding exceeded 78.4 million.[9]   In addition to the large number of shares outstanding, investors actively traded shares of the Fund.  In the year ended June 30, 2005, investors bought or sold over 60 million of the Fund's shares.  *See* Ex. A.  In the year ended June 30, 2006, the number of shares transacted grew to over 64.5 million, *see* Ex. B, and for the year ended June 30, 2007, investors bought or sold over 80.4 million shares of the Fund.  *See* Ex. C.  Accordingly, although the exact number of Class members is unknown at this time, there are at least hundreds, if not thousands, of individuals and entities located throughout the United States who purchased or otherwise acquired the Fund's shares at artificially inflated prices during the Class Period, and that these shareholders are geographically dispersed.

Courts routinely certify classes in actions where the size of the proposed class is far smaller than the one proposed here.  In the First Circuit, "forty individuals [are] generally found to establish numerosity."  *See In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003).  As here, in a securities case where there are millions of shares outstanding and millions of transactions throughout the Class Period, numerosity is established.  *See Swack*, 230 F.R.D. at 259 ("The reasonable inference to be drawn from this trading volume information is that the putative class comprises hundreds, if not thousands, of members.  Thus, one can reasonably infer that number of potential class members is too numerous to make joinder practicable."); *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989) ("Even if the number of persons who bought stock during the class period is unknown, numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large.").

---

[9]      *See* Forms N-CSR, Certified Shareholder Report of Registered Management Investment Companies for the Evergreen Ultra Short Opportunities Fund, dated June 30, 2006 and June 30, 2007, a true and accurate copy of the relevant portions of which are attached hereto, respectively, as **Exhibits B** and **C**.

### 2. There are Questions of Law and Fact Common to Each Member of the Proposed Class

The second requirement of Rule 23(a) is that class members share common questions of law or fact. Rule 23(a), however, does not require complete identity of a named plaintiff's claims with those of the Class – just that there be a "*single* common legal or factual issue." *See Swack*, 230 F.R.D. at 259 (emphasis in original); *In re Sonus Networks*, 247 F.R.D. at 248 ("Because a single common legal or factual issue can suffice to satisfy the Rule 23(a)(2) requirement, the commonality requirement ordinarily is easily met.").

In the context of securities litigation, the commonality requirement of Rule 23(a)(2) has been applied permissively. *See Swack*, 230 F.R.D. at 259 ("The Rule 23(a)(2) commonality test has been described as a low hurdle, and largely irrelevant, where, as here, certification of the proposed class depends on satisfaction of the more stringent requirement under Rule 23(b)(3) that common questions of law or fact predominate over individual ones."); *BearingPoint*, 232 F.R.D. at 539 (determining that the commonality requirement had been met and holding that "[m]embers of a proposed class in a securities case are especially likely to share common claims and defenses.").

Here, the claims arise out of the same alleged course of conduct – Defendants' issuance of materially false and misleading statements in the Fund's Offering Materials. Based on these common underlying facts, the Amended Complaint alleges numerous common questions of law and fact shared by the Class members, such as:

(a)     Whether the Securities Act was violated by Defendants' acts and omissions;

(b)     Whether the Offering Materials issued by Defendants to the investing public were negligently prepared, and as a result, contained untrue statements of material fact, omitted to state facts necessary to make the statements made therein not misleading and were not prepared in accordance with the rules and regulations governing their preparation; and

11

(c)     To what extent the members of the Class have sustained damages and the proper measure of damages.

*See* ¶46.

Proving the existence and nature of Defendants' material omissions and materially false and misleading statements during the Class Period – the most important issue in a securities case – will be common to all members of the Class in this action.  That is, Defendants' alleged false statements and omissions were made uniformly to members of the Class via their filings with the SEC, as set forth in the Amended Complaint.  Courts have repeatedly found that these common issues of law and fact satisfy Rule 23(a)(2)'s commonality requirement.  *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 43 (D. Mass. 2003) (certifying class);  *In re Sonus Networks*, 247 F.R.D. at 248;  *Swack*, 230 F.R.D. at 260;  *In re Bos. Scientific*, 604 F. Supp. 2d at 281.

Further, the same facts that give rise to Plaintiffs' claims also give rise to the claims of the members of the proposed Class.  Absent Class members necessarily would have to prove the identical facts and answer identical legal questions if they pursued their claims individually.  *See Odmark v. Mesa Ltd. P'ship*, 3:91-CV-2376-X, 1992 U.S. Dist. LEXIS 16789, at *10 (N.D. Tex. June 5, 1992), *aff'd*, 59 F.3d 1241 (5th Cir. 1995) ("If the class plaintiffs prove their case with respect to the alleged wrongful conduct, they will also have provided all the proof needed on the issue of misrepresentation for every other member of the class.").  Accordingly, Plaintiffs have demonstrated the existence and predominance of common questions of fact and law.

### 3.     Plaintiffs' Claims are Typical of Those of the Class

"The third prong of Rule 23(a) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  The typicality requirement is satisfied when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the

class are based on the same legal theory." *Swack*, 230 F.R.D. at 260. However, "[t]ypicality does not require a showing that the named plaintiff's claims are identical to those of the class members but simply that the claims arise from the same course of events." *In re Sonus Networks*, 247 F.R.D. at 248; *see also Swack*, 230 F.R.D. at 260 (noting that "it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification").

Here, Plaintiffs' claims are identical to those of the Class. Plaintiffs' claims arise out of the same course of conduct as the Class claims and are premised on the same legal theory. For example, Plaintiffs and other members of the proposed Class allege that Defendants' dissemination of materially false and misleading public information, which artificially inflated the Fund's NAV throughout the Class Period, caused harm once materialized. Moreover, Plaintiffs' claims, like the Class claims, are premised on the same legal theory – Defendants' violations of the Securities Act.

Thus, because the claims arise from the same course of conduct and share the same legal theory, Plaintiffs' claims are therefore typical of those of the proposed Class, and Rule 23(a)(3) is satisfied.

### 4. Plaintiffs Will Fairly and Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the First Circuit, this requirement is met where it appears that: (1) "the interests of the representative party will not conflict with the interests of the class members" and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Sonus*

*Networks*, 247 F.R.D. at 249 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Plaintiffs satisfy both prongs of the adequacy test of Rule 23(a)(4) for the proposed Class.   First, as established above, Plaintiffs' interests coincide with those of other Class members.   Plaintiffs, like all Class members, were injured as a result of Defendants' false and misleading public statements throughout the Class Period that artificially inflated the Fund's NAV until the truth of the false and misleading nature of the statements emerged and the risks attendant in the Fund's true investment strategy materialized.   Proof of Plaintiffs' claims will establish the same issues of law and fact as the claims of the Class as a whole.   As a result, Plaintiffs and the Class have precisely the same interest in achieving the maximum possible recovery.

Additionally, Plaintiffs and proposed Class Counsel, Robbins Geller, CPR, and Evangelista, will vigorously prosecute this action.   Plaintiffs are willing and able to represent the Class in this action and understand the commitments and fiduciary responsibilities attendant to serving as class representatives.

In addition to satisfying the adequacy prong of Rule 23(a)(4), Robbins Geller, CPR, and Evangelista also satisfy the considerations of Rule 23(g) and should be appointed as Class Counsel.   Rule 23(g)(4) requires the court to appoint counsel who will fairly and adequately represent the Class.   Additionally, in appointing class counsel, Rule 23(g)(1)(A) requires the court to consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class."

First, Robbins Geller, CPR, and Evangelista have worked vigorously to prosecute this action since the firms' appointment as Lead Counsel.  If appointed as Class Counsel, these firms will continue to work to prove the claims being prosecuted by Plaintiffs on behalf of themselves and the Class.   Second, proposed Class Counsel are highly experienced in class action litigation.[10]

As a result, proposed Class Counsel have vast knowledge of the applicable securities laws at issue here.  Moreover, Lead Counsel have demonstrated their willingness to commit substantial resources to representing the Class in this action through their efforts in prosecuting this action to date.  *See* Section III, above.

Because there is no question about the competence of counsel to fairly and adequately represent the interests of the Class, the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and Plaintiffs' choice of counsel should be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

**C.      The Conditions of Rule 23(b)(3) are Satisfied by the Proposed Class**

In addition to meeting the requirements of Rule 23(a), this action also satisfies the requirements of Rule 23(b), that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. As set forth below, this case meets all the criteria set forth in Rule 23(b)(3).

---

[10]      Robbins Geller, CPR, and Evangelista are vigorous advocates for aggrieved shareholders and have demonstrated familiarity with securities litigation, both in this Circuit and nationwide. Robbins Geller's firm résumé is attached hereto as **Exhibit D**, CPR's firm résumé is attached hereto as **Exhibit E**, and Evangelista's firm résumé is attached hereto as **Exhibit F**.

### 1.    Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual members.  Here, the Amended Complaint alleges that Defendants violated §§11, 12(a)(2), and 15 of the Securities Act.  Section 11 imposes liability on, *inter alia*, the issuer of a security, as well as any person who signed the registration statement and/or served as a director of the issuer or performed similar functions, if (1) the registration statement, as of its effective date, contained an untrue statement of a material fact; (2) omitted to state a required material fact; or (3) omitted to state a material fact necessary to make the statements therein not misleading.  *See* 15 U.S.C. §77k(a); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1204 (1st Cir. 1996).  Under Section 11, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements," while "[o]ther defendants bear the burden of demonstrating due diligence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).

As this Court noted in its March 31st Order, unlike in securities fraud actions alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, reliance is not an element of any of Plaintiffs' claims here.  *In re Evergreen*, 705 F. Supp. 2d at 91 ("Section 11 has no scienter or reliance requirement. To establish a prima facie violation of Section 11, a plaintiff need only show a material misstatement or omission.").  Likewise, "Section 12(a)(2) of the Securities Act imposes liability on any person who 'offers or sells' a security by means of a prospectus or oral communication that contains an untrue statement of material fact or a misleading omission" and has no reliance or scienter components.  *Id*.  Because all members of the Class must establish the same facts to prove whether the Offering Materials contained an untrue statement of material fact, whether Defendants acted as sellers under Section

12(a)(2), and whether certain of the Defendants were "control persons" under Section 15, common questions of law and fact predominate in this case. *See In re Sonus Networks*, 247 F.R.D. at 252 ("The predominance requirement is easily met in this securities class action.").

Because common issues of law and fact predominate, Plaintiffs have satisfied the "predominance" requirement of Rule 23(b)(3).[11]

### 2.     A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

1.      the interest of members of the Class in individually controlling the prosecution of separate actions;

2.      the extent and nature of any litigation concerning the controversy already commenced by members of the Class;

3.      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4.      the difficulties likely to be encountered in the management of a class action.

*See* Fed. R. Civ. P. 23(b)(3)(A)-(D).   Each of these factors weighs strongly in favor of class certification here.   To be sure, "the piecemeal adjudication of numerous separate lawsuits covering the same or substantially similar issues -- *i.e.*, Defendants' allegedly illegal conduct and the impact thereof on the market price of [Fund shares] -- would be an infective allocation of limited court resources."   *See Swack*, 230 F.R.D. at 273.

---

[11]      While individual damages calculations may be required for members of the Class, such determinations do not negate a finding that common issues predominate over individual ones. *See In re Transkaryotic Therapies, Inc. Sec. Litig.*, No. Civ.A.03-10165-RWZ, 2005 WL 3178162, at *2 (D. Mass. Nov. 28, 2005) (certifying securities class and noting that "courts generally find the predominance requirement to be satisfied even if individual damages issues remain.").

Here, the interest of members of the Class in individually controlling the prosecution of separate actions is minimal. The costs and expenses of such individual actions would be prohibitive when weighed against the potential individual recoveries:

> Furthermore, and even more importantly, is the very real risk that potential class members with relatively small claims would not have the financial incentives or wherewithal to seek legal redress for their injuries. Bearing in mind that the core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation . . . . a class action lawsuit is superior to other methods for the fair and efficient resolution of this controversy.

*See Swack*, 230 F.R.D. at 273; *see also In re Bos. Scientific*, 604 F. Supp. 2d at 288 (finding superiority element satisfied in securities case because class action mechanism "will provide the opportunity for individual investors to vindicate potentially valid claims, even where those investors suffered relatively small damages and have insufficient resources to pursue litigation on their own.").

Moreover, the burden on the courts from adjudicating separate actions that arise out of the same facts would be significant. *See Swack*, 230 F.R.D. at 273. Thus, with respect to the first two factors, all relevant considerations weigh in favor of class certification.[12] *See* Fed. R. Civ. P. 23(b)(3)(A)-(B).

Courts have uniformly recognized that the class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient resolution of large-scale securities actions. The Supreme Court has recognized that "[c]lass actions . . . permit

---

[12]     As for Rule 23(b)(3)(C), the Evergreen Defendants' principal place of business is located in this District, and Defendants conducted substantial business here. ¶¶20-37. Much of the conduct complained of occurred in this District, and much of the evidence and many of the witnesses relevant to Plaintiffs' claims are located here. This forum, therefore, is the most desirable in which to prosecute this action. With respect to subparagraph (D), there is no reason to believe that Plaintiffs' attorneys, who have substantial experience in class action litigation in this and other districts, will encounter significant or unusual difficulties in the management of this litigation.

the plaintiffs to pool claims which would be uneconomical to litigate individually . . . .  [M]ost of the plaintiffs would have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  District courts within the First Circuit have similarly commended class actions as superior to other methods of adjudication of claims under the federal securities laws, and have found such claims particularly suitable to class treatment given the large number of potential plaintiffs and the likelihood that individual claims would often be too small to warrant individual suits.  *See Priest*, 118 F.R.D. at 556 ("Because of the size of the class, the extent of common questions, and the tendency toward certifying actions in securities cases, I find that a class action is the superior mechanism for litigation of the federal securities claim.");  *see also In re Bos. Scientific Corp.*, 604 F. Supp. 2d at 280;  *Kirby*, 116 F.R.D. at 311.

Consistent with the requirements of Rule 23(b)(3), the certification of this litigation as a class action would not only be "superior to other available methods for the fair and efficient adjudication of the controversy," but is the sole method for fairly and efficiently litigating the claims of all members of the proposed Class.  Accordingly, the prosecution of this action as a class action will "achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated."  *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 282 (S.D. Tex. 2004).

## V.     CONCLUSION

For the foregoing reasons, Lead Plaintiffs' Motion for Class Certification should be granted in its entirety.

DATED:  February 15, 2011

ROBBINS GELLER
  RUDMAN & DOWD LLP
JACK REISE (*pro hac vice*)
MICHAEL GREENWALD (*pro hac vice*)


                    s/ JACK REISE
_____
                    JACK REISE

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

EVANGELISTA & ASSOCIATES, LLC
JAMES M. EVANGELISTA
DAVID J. WORLEY
One Glenlake Parkway, Suite 700
Atlanta, GA  30328
Telephone:  404/478-7195
404/478-7139 (fax)

COHEN, PLACITELLA & ROTH, P.C
STEWART L. COHEN
MICHAEL COREN
STUART J. GUBER
Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: 215/567-3500
215/567-6019 (fax)

Co-Lead Counsel for Plaintiffs

PYLE ROME EHRENBERG, P.C.
BETSY EHRENBERG, BBO #554628
18 Tremont Street, Suite 500
Boston, MA  02108
Telephone: 617/367-7200
617/367-4820 (fax)

Liaison Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

s/ JACK REISE
JACK REISE
