United States District Court
District of Massachusetts

```
————————————————————————————————  )
IN RE EVERGREEN ULTRA SHORT       )    Civil Action No.
OPPORTUNITIES FUND SECURITIES     )    08-11064-NMG
LITIGATION                        )
————————————————————————————————  )
```

**MEMORANDUM & ORDER**

GORTON, J.

This is a private securities class action brought by persons or entities ("the plaintiffs") who purchased or otherwise acquired shares of a mutual fund called Evergreen Ultra Short Opportunities Fund ("the Fund") between October 28, 2005, and June 23, 2008 ("the Class Period"). Before the Court is the plaintiffs' motion for class certification.

## I.   Factual Background

The plaintiffs have sued the companies that market, manage and advise the Fund ("the Corporate Defendants") as well as some of the officers, directors and trustees of those companies ("the Individual Defendants"). The Corporate Defendants include 1) Evergreen Fixed Income Trust ("Evergreen Trust"), the issuer of the Fund's shares, 2) Evergreen Investment Management Company, LLC ("Evergreen Investment"), the Fund's investment advisor, 3) Wachovia Corporation ("Wachovia"), Evergreen Investment's corporate parent, and 4) Evergreen Investment Services, the underwriter and distributor of the shares of the Fund sold by

Evergreen Trust.  The Individual Defendants include Dennis Ferro ("Ferro"), the President and Chief Executive Officer of Evergreen Investment and the Principal Executive Officer of Evergreen Trust, Kasey Phillips ("Phillips"), the Principal Financial Officer of Evergreen Trust during the Class Period, and 12 members of the Evergreen Board of Trustees (collectively, "the Trustee Defendants").[1]

The plaintiffs allege that the defendants violated federal securities law by registering, marketing and selling the Fund as a safe, liquid and stable investment when, in fact, it was comprised of illiquid, risky and volatile securities. Specifically, they allege that the defendants' offering materials, including registration statements, prospectuses and certified shareholder reports, 1) contained materially false and misleading statements about the objective and features of the Fund and 2) omitted essential facts that either made the statements misleading or were required in order to render the statements non-misleading.

The plaintiffs allege that the defendants marketed the Fund to investors as a higher-yielding alternative to money-market funds, offering a combination of safety and liquidity.  The

---

[1] The Trustee Defendants are Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima and Richard K. Wagoner.

offering materials stated, _inter alia_, that 1) the Fund's objective was to "provide income consistent with preservation of capital and low principal fluctuation", 2) the Fund intended to "maintain an average portfolio duration of approximately one year or less", and 3) the Fund would invest no more than 15% of its net assets in illiquid securities. In reality, however, the Fund's average portfolio duration exceeded one year, its investments were increasingly illiquid and it invested in riskier-than-represented mortgage-backed securities ("MBSs"). The plaintiffs also allege that the defendants artificially inflated the Fund's net asset value ("NAV") and continued heavily investing in risky MBSs, many of which were attached to sub-prime mortgages, even as news accounts revealed troubles in the mortgage and credit markets.

Throughout the Class Period, the Fund traded in a stable range from $9-$10 per share, allegedly due, at least in part, to the defendants' artificial inflation of its NAV. Eventually, however, the true risks presented by the Fund's assets (which were allegedly unknown to the investing public during the Class Period), materialized, resulting in the re-pricing of the Fund's assets, the Fund's closure and significant losses to the Fund's investors. On June 19, 2008, when Evergreen Trust announced that the Fund would be liquidated, shareholders of record received a cash distribution based on a $7.48 per share NAV, significantly

-3-

lower than the average value of the Fund's shares during the
Class Period.  At the time of the Fund's liquidation, its assets
were worth only $403 million (over $300 million less than the NAV
it reported nine months earlier).  The plaintiffs allege that
they lost approximately 25% of their investments due to the
defendants' misrepresentations.

In June, 2009, plaintiffs received $1.065 million as a
result of a regulatory settlement between some defendants and the
Securities and Exchange Commission.  Plaintiffs maintain that the
damages suffered as a result of the alleged false statements at
issue in this action were not covered by the regulatory
settlements.  The regulatory settlements were allegedly limited
to damages resulting from the overstatement of the Fund's net
asset value ("NAV") during part of the proposed class period.
Here, plaintiffs allege that their claims are much broader
because they encompass false statements regarding the Fund's
investment strategy, objectives and risks over a longer period of
time.

Plaintiffs' complaint includes three counts against the
various defendants: 1) violations of Section 11 of the Securities
Act of 1933 ("the Securities Act"), 15 U.S.C. § 77k, against
Evergreen Trust, Evergreen Services and the Individual Defendants
(Count I), 2) violations of Section 12(A)(2) of the Securities
Act, 15 U.S.C. § 77l, against all defendants (Count II) and

3) violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, against Wachovia, Evergreen Investments and the Individual Defendants (Count III).

## II.  **Procedural History**

This action originated as three separate class actions alleging substantially similar violations of federal securities laws against Evergreen Trust and related entities.  Those actions were consolidated into the present class action and, by an order entered May 7, 2009, the Court appointed Evergreen Investor Group and the Bricklayers Group as lead plaintiffs for the Class and the law firms of Coughlin Stoia Geller Rudman & Robbins, LLP, Page Perry LLC and Cohen, Placitella & Roth, P.C. to serve as co-lead counsel. [2]

Lead plaintiffs filed their First Amended Complaint on April 30, 2009.  On July 15, 2009, individual defendants Phillips and Ferro and corporate defendants Wachovia, Evergreen Investment and Evergreen Investment Services filed an answer, raising various affirmative defenses including, <u>inter</u> <u>alia</u>, failure to state a claim, statute of limitations, res judicata, laches, business judgment rule, lack of privity, due diligence and failure to

---

[2]  The Evergreen Investor Group is comprised of the International Brotherhood of Electrical Workers Local 98, NECA Electrical Workers Joint Apprenticeship Training Trust Fund and First Agency LP.  The Bricklayers Group is comprised of the Bricklayers and Allied Craftsworkers Local of PA/DE Health and Welfare Fund and the Bricklayers Local 54 of the Pennsylvania Supplemental Welfare Fund.

mitigate damages.  On that same day, the remaining defendants, Evergreen Trust and the Trustee Defendants, moved to dismiss all the claims against them.  On March 31, 2010, the Court entered a Memorandum & Order allowing the motion to dismiss with respect to the Trustee Defendants in Count II only but otherwise denying it. A scheduling conference was thereafter held on June 24, 2010, in accordance with which, plaintiffs have filed their pending motion for class certification.

## III. **Class Certification**

Plaintiffs seek an order pursuant to Fed. R. Civ. P. 23 appointing them as class representatives, appointing Lead Counsel as Class Counsel and certifying this action as a class action on behalf of a class consisting of

> all persons or entities who purchased or acquired shares of the Evergreen Ultra Short Opportunities Fund ("the Fund") between October 28, 2005 and June 18, 2008, inclusive, and who were damaged thereby.

Defendants respond that plaintiffs do not meet the class certification requirements because 1) plaintiffs do not have standing and the proposed class is over-broad in that no lead plaintiff purchased any shares in the Fund before January, 2007, nearly 15 months after the beginning of the proposed class period, 2) the interests of lead plaintiffs are antagonistic to a significant number of the absent putative class members and 3) four of the five lead plaintiffs acquired their interest in the Fund as a result of a merger between the Fund and another

-6-

mutual fund, rendering their claims atypical.

**A.  Standing**

Defendants first argue that plaintiffs do not have standing and the proposed class is over-broad because no lead plaintiff purchased any shares in the Fund before January, 2007, nearly 15 months after the beginning of the proposed class period.

Plaintiffs respond that standing is not an issue at the class certification stage because it is a merits issue.  That argument is unavailing, however, because courts often decide standing at the class certification stage or earlier.  See, e.g., In re CitiGroup Inc. Bond Litig., 723 F. Supp. 2d 568, 583-85 (S.D.N.Y. 2010); In re Sonus Networks, Inc. Sec. Litig., 247 F.R.D. 244, 249-51 (D. Mass. 2007).

In any event, the Court concludes that lead plaintiffs have standing in this case despite not having purchased shares at the beginning of the class period because the offering materials in effect at the beginning of the class period are alleged to have been "part of a common, fraudulent scheme."  Crowell v. Ionics, Inc., 343 F. Supp. 2d 1, 14 (D. Mass. 2004).  Plaintiffs' position is supported by the holding in the Crowell case, in which another judge of this Court granted lead plaintiff standing to represent class members injured by statements that took place after his stock purchase because those misstatements were "part of a common, fraudulent scheme that began before the plaintiff's

transactions occurred." Id.

Similarly, in Priest v. Zayre Corp., 118 F.R.D. 552, 557 (D. Mass. 1988), another judge of this Court held that differing purchase dates did not preclude class certification on the grounds of inadequacy or atypicality as long as "all purchases occurred during the course of the same misrepresentation or constituted a common course of conduct."

Finally, in In re Countrywide Financial Corp. Securities Litigation, 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008), defendants argued that no lead plaintiff had standing to sue on certain securities because they had not purchased those particular securities. The court held that lead plaintiffs had standing to represent a class of investors so long as they identified and included named plaintiffs who had standing. Id.

Here, the fact that lead plaintiffs did not purchase stock in the Fund at the very beginning of the class period does not preclude them from suing on behalf of the class because their claims arise out of the same allegedly misleading course of conduct as the claims of class members who made earlier purchases.

**B.  Legal Requirements for Class Certification**

Under Fed. R. Civ. P. 23, a court may certify a class only if it finds that the proposed class satisfies all of requirements of Rule 23(a) and that class-wide adjudication is appropriate for

one of the reasons set forth in Rule 23(b).  See Smilow v. Sw.
Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).  Here,
Plaintiffs rely on Rule 23(b)(3) as the basis for maintaining a
class action.

According to the First Circuit Court of Appeals, "[a]
district court must conduct a rigorous analysis of the
prerequisites established by Rule 23 before certifying a class."
Id. (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161
(1982)).  Furthermore, when factual premises are disputed, a
court may "probe behind the pleadings [and] formulate some
prediction as to how specific issues will play out."  In re New
Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20
(1st Cir. 2008) (citations and internal quotation marks omitted).

Fed. R. Civ. P. 23(a) requires that a class meet the
following criteria: 1) "the class is so numerous that joinder of
all members is impracticable" (numerosity), 2) "there are
questions of law or fact common to the class" (commonality),
3) "the claims or defenses of the representative parties are
typical of the claims or defenses of the class" (typicality), and
4) "the representative parties will fairly and adequately protect
the interests of the class" (adequacy).  Fed. R. Civ. P.
23(a)(1)-(4).

Under subparagraph (b)(3) of the same Rule, litigation may
proceed as a class action if the four criteria of subparagraph

(a) are satisfied <u>and</u>

> the court finds that the questions of law or fact common
> to class members predominate over any questions affecting
> only individual members, and that a class action is
> superior to other available methods for fairly and
> efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

A district court's inquiry into the merits of a case at the class certification stage should be conducted only "to the extent that the merits overlap the Rule 23 criteria." <u>In re Boston Scientific Corp. Sec. Litig.</u>, 604 F. Supp. 2d 275, 280-81 (D. Mass. 2009) (quoting <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d at 24).

### C. Analysis: Fed. R. Civ. P. 23(a) Requirements

#### 1. Numerosity

In order to meet the numerosity requirement, plaintiffs must demonstrate that the putative class is "so numerous that joinder of all members is impracticable". Fed. R. Civ. P. 23(a)(1). Defendants do not dispute that this criterion is satisfied.

The Court finds that the large number of putative class members here makes joinder impracticable and, as such, the numerosity requirement is satisfied. <u>See In re Sonus Networks, Inc. Sec. Litig.</u>, 247 F.R.D. at 248; <u>Swack</u> v. <u>Credit Suisse First Boston</u>, 230 F.R.D. 250, 258 (D. Mass. 2005). According to plaintiffs, the Fund in this case had over 64 million shares outstanding in June, 2005, 68.9 million in June, 2006 and 78.4

million in June, 2007.  Although the number of class members is
still unknown, because there are millions of shares outstanding
and were millions of transactions during the class period, the
Court can reasonably infer that there are at least hundreds, if
not thousands of class members.  See Swack, 230 F.R.D. at 259;
Grace v. Perception Tech. Corp., 128 F.R.D. 165, 167 (D. Mass.
1989).  Moreover, courts in this district have found that
numerosity was established in cases with many fewer class
members.  See, e.g., In re Relafen Antitrust Litig., 218 F.R.D.
337, 342 (D. Mass. 2003) (certifying class of sixty members and
stating that forty class members generally establishes
numerosity).

### 2. Commonality

To meet the commonality requirement under Rule 23(a)
plaintiffs need show only a basic demonstration that there are
common questions of law or fact in the case.  Unlike the Rule
23(b)(3) requirement of common questions of law or fact, this
requirement is a "low hurdle".  Swack, 230 F.R.D. at 259.  It can
be met by even a single common legal or factual issue.  Id.
Defendants do not dispute that this criterion is satisfied.

The commonality requirement is also easily met in this case.
Common questions of law and fact include:

1) Whether the offering materials issued by
defendants to the public were negligently prepared
and contained untrue statements of material fact

or material omissions; and

2)    The extent of damages, if any, sustained by class
      members as a result of defendants' alleged
      misconduct.

Those common issues have repeatedly been held to satisfy the

commonality requirement.  See In re Boston Scientific Corp. Sec.

Litig., 604 F. Supp. 2d at 281; In re Sonus Networks, Inc. Sec.

Litig., 247 F.R.D. at 248; Swack, 230 F.R.D. at 260; In re Eaton

Vance Corp. Sec. Litig., 219 F.R.D. 38, 43 (D. Mass. 2003).

### 3.    Typicality

The typicality requirement is fulfilled when the plaintiffs'

claims arise from the same course of conduct and are based on the

same legal theory as the class claims.  Swack, 230 F.R.D. at 260.

Typicality requires that a

> class representative have the incentive to prove all the
> elements of the cause of action which would be presented
> by the individual members of the class were they
> initiating individualized actions.

Hicks v. Morgan Stanley & Co., No. 01 Civ. 10071, 2003 U.S. Dist.

LEXIS 11972, at *7, *11 (S.D.N.Y. July 16, 2003) (quoting In re

NASDAQ Market-Makers Antitrust Litig., 172 F.R.D. 119, 126

(S.D.N.Y. 1997)).

### a.    Circumstances of Acquisition

Plaintiffs argue that their claims are identical to those of

the class as a whole and are based on the same course of conduct

and legal theory as the claims of all other class members.

Defendants counter that plaintiffs' claims are not typical because different circumstances surround the putative class members' acquisitions of shares in the Fund.  Some acquired their interests pursuant to a merger between Evergreen Limited Duration Fund and the Fund.  Defendants rely on In re HealthSouth Corp. Securities Litigation, 213 F.R.D. 447, 459-60 (N.D. Ala. 2003), in which the United States District Court for the Northern District of Alabama held that certain lead plaintiffs were atypical because they acquired their interest in the security at issue automatically pursuant to a merger between their employer and another company, as opposed to making a purchase.  Thus, they did not make an affirmative decision to purchase the HealthSouth stock and their claims did not rest on the fraud-in-the-market theory as did the rest of the putative class.[3]  Id.  The court reasoned that this was a material difference because those lead plaintiffs

> cannot say that the alleged misrepresentations and
> omissions affected their decision to purchase HealthSouth
> stock. . . . [and] [t]he defendants may well be able to
> rebut the presumption of reliance as to these employee/
> shareholders that the other class members enjoy because
> of the fraud-on-the-market theory.

Id. at 460.

---

[3]  The "fraud on the market theory" provides that plaintiffs in a securities action enjoy a rebuttable presumption that they relied upon a defendant's alleged misrepresentations.  The theory is premised on the assumption that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."  Basic Inc. v. Levinson, 485 U.S. 224, 246 (1988).

The "fraud on the market" theory, however, applies to cases brought under the Securities Exchange Act of 1934, not Sections 11 or 12(a)(2) of the Securities Act of 1933.  In re Countrywide Fin. Corp. Sec. Litig., 273 F.R.D. at 621 ("Because § 11 of the '33 Act imposes nearly strict liability for misrepresentations or omissions in a registration statement, Plaintiffs do not need to rely on a fraud-on-the-market theory to establish class-wide reliance.").  Under § 11, purchasers are not required to prove reliance unless

> such person acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement[.]

15 U.S.C. § 77k(a).  Because the parties do not mention that exception, reliance is not an issue in this case.

Section 12(a)(2) likewise contains no reliance element.  It creates civil liability for any person who

> offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission[.]

15 U.S.C. § 77l.  As is evident from the text of the statute, Section 12 "is a broad anti-fraud measure and imposes liability whether or not the purchaser actually relied on the

misstatement." <u>Akerman</u> v. <u>Oryx Commc'ns, Inc.</u>, 810 F.2d 336, 344 2d Cir. 1987).

Thus, the distinction set forth in <u>HealthSouth</u> is inapposite here. Moreover, the court in <u>HealthSouth</u> also found that two of the proposed class representatives were atypical because they were employed in the healthcare industry and "had knowledge and information not available to the open market purchasers." 213 F.R.D. at 459. Their knowledge of material facts provided a defense to the Rule 10b-5 allegation and, as such, rendered their claims atypical of the class. <u>Id.</u> Thus, the fact that some of lead plaintiffs here acquired their stock through a merger is not sufficient reason for denying class certification for a lack of typicality and defendants' reliance on <u>HealthSouth</u> does not convince the Court that lead plaintiffs' claims are atypical.

### b. Dates of Purchase

Defendants next maintain that lead plaintiffs' Section 12(a)(2) claims are not typical because each individual stock purchase will need to be reviewed in order to determine whether a material misrepresentation existed at the time it was made. Plaintiffs reply that such an argument is not supported by case law and that 12(a)(2) securities class actions involving mutual funds are regularly certified despite different purchase dates.

Defendants rely on <u>Rosen</u> v. <u>Fidelity Fixed Income Trust</u>, 169 F.R.D. 295, 299 (E.D. Pa. 1995), in which the United States

District Court for the Eastern District of Pennsylvania held that lead plaintiffs' claims were atypical because, in order to prevail on a Section 12(a)(2) claim, a plaintiff must prove that a material misrepresentation existed at the time of each class member's purchase.  The court denied class certification on the grounds that lead plaintiff would have little incentive to investigate and present evidence at trial relating to the financial history of the fund over the entire class period when lead plaintiff's claims related to only a portion of that period. Id. at 300.  The court noted, however, that its holding arose from the "peculiar circumstances" of that case.  Id. at 299.

At least at this juncture, the Court is unpersuaded by defendants' argument against class certification on the grounds of lack of typicality.  First, the Court respectfully disagrees with the reasoning in Rosen.  As explained above in the Court's discussion of standing, courts have certified classes under Section 12(a)(2) despite the fact that class members may have purchased or sold stock at different times "so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security."  In re Dreyfus Aggressive Growth Mut. Fund Litig., No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS 13469, at *8-14 (S.D.N.Y. Sept. 19, 2000); see also In re Tyco Int'l, Ltd., 236 F.R.D. 62, 70-71 (D.N.H. 2006); Hicks, 2003 U.S. Dist. LEXIS 11972, at *7, *11; Abrams v. Van Kampen Funds, Inc., No. 01 C

7538, 2002 U.S. Dist. LEXIS 16022, at *16 (N.D. Ill. Aug. 26, 2002).

Moreover, class representatives' claims can be considered typical even where there is some factual variation among the claims of different class members. Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) ("A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.").

Here, the registration and prospectus statements that were in effect at the time of lead plaintiffs' purchases are alleged to be substantially similar or identical to other allegedly misleading statements at issue in this case. Thus, as in In re Dreyfus Aggressive Growth Mut. Fund Litig.,

> plaintiffs' claims will satisfy the typicality requirement because, by proving their claims, plaintiffs will necessarily prove the claims of all other class members.

2000 U.S. Dist. LEXIS 13469, at *14.

In sum, class members' differing purchase dates is a manageable variation and, on its own, does not render lead plaintiffs' claims atypical.

### 4. Adequacy

The adequacy requirement is met where 1) "the interests of the representative party will not conflict with the interests of

the class members" and 2) "counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." In re Sonus Networks, Inc. Sec. Litig., 247 F.R.D. at 249 (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)).

The adequacy requirement, along with the commonality and typicality criteria of Rule 23(a), assesses whether the

> maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quoting Gen. Tel. Co. of Sw., 457 U.S. at 157 n.13).

### a. Class Representatives

With respect to the first prong of the adequacy criterion, lead plaintiffs claim that their interests coincide exactly with those of the other class members because they were injured in the same manner as all other class members due to defendants' allegedly false and misleading statements. Defendants respond that the class includes plaintiffs who both benefitted and were harmed by the mis-pricing of the Fund's NAV. Indeed, the S.E.C. observed that

> certain shareholders redeemed their shares at prices higher than they should have received- to the detriment of remaining shareholders- and certain shareholders purchased shares at higher prices than they should have paid.

<u>In the Matter of Evergreen Inv. Mgmt. Co., LLC & Evergreen Inv.</u>
<u>Servs., Inc.</u>, S.E.C. Administrative Proceeding No. 3-13507, June
8, 2009.  Thus, defendants contend that the interests of lead
plaintiffs are antagonistic to a significant number of the absent
putative class members because no lead plaintiff benefitted from
the mis-pricing of the Fund's NAV.  Courts have referred to this
tension as the "seller/purchaser conflict."  <u>HealthSouth</u>, 213
F.R.D. at 463 n.13.

Defendants are correct that there are circumstances in which
a class should not be certified because "its members have
opposing interests or . . . it consists of members who benefit
from the same acts alleged to be harmful to other members of the
class."  <u>Pickett</u> v. <u>Iowa Beef Processors</u>, 209 F.3d 1276, 1280
(11th Cir. 2000); <u>see also</u> <u>Boca Raton Cmty. Hosp., Inc.</u> v. <u>Tenet</u>
<u>Healthcare Corp.</u>, 238 F.R.D. 679, 695-98 (S.D. Fla. 2006).

Defendants primarily rely on <u>HealthSouth</u>, in which the court
held that the adequacy requirement was not satisfied because the
proposed class included shareholders who fell into two conflicted
groups: those who benefitted from defendant's alleged inflated
share price and those who were harmed.  <u>HealthSouth</u>, 213 F.R.D.
at 462.

Again, <u>HealthSouth</u> is distinguishable because two lead
plaintiffs in that case were employees of the acquired company
and, thus, they had access to industry information and were

-19-

subject to unique defenses.  Id. at 459.  The court made it clear that its holding was based on the fact that some class members had not purchased their stock on the open market, but rather through a merger of their employer, and they had inside information.  Id. at 463.  The court specified that the seller/purchaser conflict was not cause for its denial of class certification because that conflict exists in any securities fraud class action.  Id. at 463 n.13.

The Court agrees with plaintiffs that the potential conflict between purchasers and sellers is present in every securities case and does not impede class certification.  See, e.g., In re Am. Int'l Grp., Inc. Sec. Litig., 265 F.R.D. 157, 170-71 (S.D.N.Y. 2010); In re Scientific-Atlanta, Inc. Sec. Litig., 571 F. Supp. 2d 1315, 1334-35 (N.D. Ga. 2007); Lively v. Dynegy, Inc., No. 05-cv-00063, 2007 U.S. Dist. LEXIS 14794, at *42-43 (S.D. Ill. Mar. 2, 2007) ("the theory of seller-purchaser conflicts as precluding class certification has been overwhelmingly rejected in securities fraud class actions."); In re Honeywell Int'l Inc. Sec. Litig., 211 F.R.D. 255, 261-62 (D.N.J. 2002).

Moreover, as explained in the preceding discussions of standing and typicality, any conflict due to the timing of class members' purchase and sale of the Fund stock is "far outweighed by the common interest in establishing misrepresentations made by

-20-

defendants". <u>In re Baan Co. Sec. Litig.</u>, No. 1:98cv2465, 2002 U.S. Dist. LEXIS 27875, *26 (D.D.C. July 19, 2002). If it becomes necessary later on, subclasses can be created to address the different damages calculations, if any. <u>See In re Scientific-Atlanta, Inc. Sec. Litig.</u>, 571 F. Supp. 2d at 1335; <u>In re Miller Indus., Inc. Sec. Litig.</u>, 186 F.R.D. 680, 687-88 (N.D. Ga. 1999).

For those reasons, the Court finds that lead plaintiffs can provide adequate representation of the class.

### b.  Class Counsel

Plaintiffs also maintain that their counsel, Robbins Geller Rudman Dowd, LLP, Cohen, Placitella & Roth, P.C. and Evangelista & Associates, Inc., are adequate in light of the considerations listed in Fed. R. Civ. P. 23(g)(1)(A), which are:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class[.]

The Court finds that the above-named counsel are adequate to serve as class counsel. Plaintiffs have provided resumes for the three firms which all exhibit substantial experience with securities class action litigation. Furthermore, defendants do

not challenge the adequacy of class counsel.

###### D. Analysis: Fed. R. Civ. P. 23(b)(3) Requirements

###### 1. Standard

In this case, plaintiffs move for the Court to certify the class pursuant to Rule 23(b)(3).  Thus, in addition to the Rule 23(a) requirements, the court must be convinced that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

In contrast to the Rule 23(a) prerequisite of commonality, the "predominance" requirement is much more demanding, although it does not require complete uniformity.  See Amchem Prods., Inc., 521 U.S. at 623-24.  The First Circuit Court of Appeals has defined the predominance test as requiring the Court to find that "a sufficient constellation of common issues binds class members together".  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).  Before conducting the analysis, the Court notes that certification pursuant to Rule 23(b)(3) is "intended to be a less stringent requirement" than certification pursuant to either Rule 23(b)(1) or (b)(2).  Smilow, 323 F.3d at 41.

###### 2. Predominance

Plaintiffs maintain that common questions of law predominate

here because all members of the class must establish the same facts to prove that the offering materials contained untrue statements of material fact, that defendants acted as sellers under Section 12(a)(2) and that certain defendants were "control persons" under Section 15.

The Court concludes that the predominance test is met for the reasons stated by the plaintiffs and for the reasons set forth in the preceding discussion of typicality.  In addition, the United States Supreme Court has readily acknowledged that "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  Amchem Prods., Inc., 521 U.S. at 625.

### 3. Superiority

In making the superiority determination, the Court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The Court agrees with plaintiffs that all of those factors weigh in favor of class certification because the costs of

individual actions would be prohibitive when weighed against the individual recoveries. See In re Boston Scientific Corp. Sec. Litig., 604 F. Supp. 2d at 288; Swack, 230 F.R.D. at 273. The burden on the courts of individual actions would also be enormous in a case with hundreds of potential plaintiffs. See Swack, 230 F.R.D. at 273.

Finally, other judges of this Court have stressed that class actions are particularly appropriate for securities litigation because it may be the "only practicable means of enforcing investors' rights." Priest, 118 F.R.D. at 553-54; see also In re Boston Scientific Corp. Sec. Litig., 604 F. Supp. 2d at 280.

## ORDER

In accordance with the foregoing, plaintiffs' motion for class certification (Docket No. 66) is **ALLOWED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 10, 2011