# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

IN RE EVERGREEN ULTRA SHORT  )   No. 1:08-CV-11064-NMG
OPPORTUNITIES FUND SECURITIES )
LITIGATION                    )
                              )
_____  )


## EVERGREEN DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT


REED SMITH LLP
George M. Linge, BBO #648199
Thomas L. Allen, *admitted pro hac vice*
Joseph P. Pohl III, *admitted pro hac vice*
Justin J. Kontul, *admitted pro hac vice*
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile: (412) 288-3063

*Counsel for Evergreen Investment Management
Co. LLC, Evergreen Investment Services, Inc.,
Wachovia Corporation, Dennis H. Ferro and
Kasey Phillips*

US_ACTIVE-108475579.2

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

LEGAL STANDARD............................................................................................................3

ARGUMENT ....................................................................................................................4

    I.    The Fund's Registration Statements Disclosed That It Invested In Securities With Long-Stated Maturities....................................................................4

    II.    Class Members Who Purchased Shares Prior To June 24, 2007 Are Time-Barred From Asserting Claims Based On The Fund's Holding Of Securities With Long-Stated Maturities And The Evergreen Defendants' Failure To Disclose The Fund's Spread Duration. ................................................9

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).................................................................................4

Belodoff v. Netlist, Inc.,
  No. 07-00677, 2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) ...................5

Benak v. Alliance Capital Mgmt. L.P.,
  349 F. Supp. 2d 882 (D.N.J. 2004), aff'd, 435 F.3d 396 (3d Cir. 2006)................. 13

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986).................................................................................4

Cook v. Avien, Inc.,
  573 F.2d 685 (1st Cir. 1978)................................................................. 10, 11

Cooperman v. Individual, Inc.,
  171 F.3d 43 (1st Cir. 1999)..........................................................................8

DeBenedictis v. Merrill Lynch & Co., Inc.
  492 F.3d 209 (3d Cir. 2007) .................................................................. 13

DeBruyne v. Equitable Life Assurance Society of the U.S.,
  920 F.2d 457 (7th Cir. 1990) ................................................................. 13

Garside v. Osco Drug, Inc.,
  895 F.2d 46 (1st Cir. 1990).........................................................................3

Goodwin Properties, LLC v. Acadia Group, Inc.,
  No. 01-49-P-C, 2001 WL 800064 (D. Me. July 17, 2001) .......................9

In re Bank of Boston Corp. Sec. Litig.,
  762 F. Supp. 1525 (D. Mass. 1991)............................................................7

In re IAC/InterActiveCorp Sec. Litig.,
  695 F. Supp. 2d 109 (S.D.N.Y. 2010) ......................................................9

In re Progress Energy, Inc.,
  371 F. Supp. 2d 548 (S.D.N.Y. 2005) ................................................... 5, 9

Litwin v. Blackstone Group, L.P.,
  634 F.3d 706 (2d Cir. 2011) ......................................................................9

Mesnick v. Gen. Elec. Co.,
  950 F.2d 816 (1st Cir. 1991).......................................................................3

Milton v. Van Dorn Co.,
  961 F.2d 965 (1st Cir. 1992).......................................................................8

Shaw v. Digital Equip. Corp.,
 82 F.3d 1194 (1st Cir. 1996) ............................................................................................ 6, 7

Slavin v. Morgan Stanley & Co.,
 791 F. Supp. 327 (D. Mass. 1992) ...................................................................................... 11

White v. Melton,
 757 F. Supp. 267 (S.D.N.Y. 1991) ...................................................................................... 7

Wielgos v. Commonwealth Edison Co.,
 123 F.R.D. 299 (N.D. Ill. 1988) .......................................................................................... 5

Young v. Lepone,
 305 F.3d 1 (1st Cir. 2002) .................................................................................................. 11

**Statutes**

15 U.S.C. § 77k ...................................................................................................................... 1

15 U.S.C. § 77l ...................................................................................................................... 1

15 U.S.C. § 77m .................................................................................................................... 10

15 U.S.C. § 77o ...................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................ 4

**Regulations**

17 C.F.R. § 239.15A .............................................................................................................. 1

**Other Authorities**

48 F.R. 37928 (1983) ............................................................................................................ 1

## PRELIMINARY STATEMENT

The Evergreen Ultra Short Opportunities Fund (the "Fund" or the "Ultra Short Fund")

was a mutual fund that invested substantially all of its assets in mortgage-backed or mortgage-

related securities.  In the midst of this country's worst housing and financial crisis since the

Great Depression, the Fund's net asset value ("NAV") declined significantly in June 2008, which

ultimately resulted in the Fund's closure and liquidation on June 19, 2008.  Lead Plaintiffs have

brought this class action alleging claims under Sections 11, 12(a)(2) and 15 of the Securities Act

of 1933 (the "1933 Act"), 15 U.S.C. §§ 77k, 77l, and 77o, against Defendants Evergreen

Investment Management Co. LLC, Evergreen Investment Services, Inc., Wachovia Corporation,

Dennis H. Ferro, and Kasey Phillips (the "Evergreen Defendants") in an attempt to recover

losses incurred by class members on purchases of the Fund's shares made during the period

between October 28, 2005 and June 18, 2008 (the "Class Period").  Under Sections 11 and

12(a)(2), liability exists where a registration statement or prospectus, respectively, contains an

untrue statement of material fact or omits to state a material fact required to make the statements

therein not misleading.  15 U.S.C. §§ 77k, 77l.[1]

---

[1]     Pursuant to the Securities and Exchange Commission ("SEC") Form N-1A, a Registration Statement for an open-end mutual fund, such as the Ultra Short Fund, includes three parts:  (1) a Prospectus; (2) a Statement of Additional Information ("SAI"); and (3) other information.  See SEC Form N-1A at p. 7, available at http://www.sec.gov/about/forms/secforms.htm#invcoreg (last visited February 10, 2012); see also 17 C.F.R. § 239.15A.  Because the prospectuses issued by the Fund during the October 28, 2005 through June 18, 2008 class period all incorporated the SAI by reference, the documents at issue for the Section 11 and 12(a)(2) claims are the same.  See, e.g., Transmittal Affidavit of George M. Linge ("Linge Affidavit"), filed herewith, Ex. C at EVERGREEN-KEEFE0006503; Ex. D at EVERGREEN-KEEFE0006893; Ex. E at EVERGREEN-KEEFE0005697; Ex. G at EVERGREEN-KEEFE0007219; see also 48 F.R. 37928 (1983). ("if a mutual fund incorporates the Statement of Additional Information by reference, the Statement would be part of the prospectus as a matter of law").  Accordingly, for ease of reference, the Evergreen Defendants refer to the Fund's Registration Statement throughout this memorandum when discussing both the Section 11 and 12(a)(2) claims.

Additionally, because Lead Plaintiffs' Section 15 claim is derivative of their claims under Sections 11 and 12(a)(2), Lead Plaintiffs must establish a violation of Section 11 or 12(a)(2) in order to assert their Section 15 claim. See 15 U.S.C. § 77o.

Lead Plaintiffs have alleged that the Evergreen Defendants made various misstatements and/or omissions in the Registration Statements issued by the Fund during the Class Period.[2] One misstatement alleged by Lead Plaintiffs is particularly ripe for adjudication on summary judgment – Lead Plaintiffs' claim that the Evergreen Defendants' labeling of the Fund as an "ultrashort" fund was misleading because the Fund held securities with long-stated maturities.[3] A review of the Fund's Registration Statements, however, establishes that the Fund's Registration Statements disclosed the stated maturity of every individual security held in the Fund and set no limitations on the stated maturities of the securities in which the Fund would invest.  Accordingly, no reasonable jury could conclude that the Fund's shareholders were not fully informed that the Fund invested in securities with long-stated maturities and, therefore, partial summary judgment is appropriate with respect to this alleged misstatement.

A separate, independent basis for partial summary judgment is also present in this matter. Specifically, in addition to the aforementioned alleged misstatement related to the Fund's holding of securities with long-stated maturities, Lead Plaintiffs allege that the Evergreen Defendants violated Sections 11 and 12(a)(2) because they should have disclosed the Fund's credit or spread duration (hereinafter "spread duration")[4], in addition to the Fund's effective duration, due to the Fund's holding of investments with credit risk, i.e., non-agency mortgage-backed securities, and long-stated maturities.  However, if information was available to class

---

[2]     The Fund filed four registration statements with the SEC during the Class Period (the "Registration Statements").  Evergreen Defendants' LR 56.1 Concise Statement of Material Facts of Record ("CSMF"), filed herewith, at ¶ 16.

[3]     The stated maturity of a security is the final date that an issuer agrees to fully repay the principal of the security.  See Linge Affidavit, Ex. A at ¶ 37.

[4]     According to Lead Plaintiffs' expert, Edward S. O'Neal, Ph.D., spread duration is a measure of the change in a bond's price relative to a change in that bond's credit risk.  See Linge Affidavit, Ex. A at ¶ 41.

members such that they had inquiry notice prior to the one-year period before the filing of the first complaint – the first action was filed on June 23, 2008 – that the Fund held: (a) securities with long-stated maturities; and (b) non-agency mortgage-backed securities, the claims of class members who purchased Fund shares prior to that one-year period are time-barred.  The Registration Statements issued by the Fund during the Class Period disclosed that the Fund invested in both: (a) securities with long-stated maturities; and (b) non-agency mortgage-backed securities.  Thus, class members were on notice of potential claims based on the Fund's holding of securities with long-stated maturities and/or non-agency mortgage-backed securities prior to one year before the filing of the first complaint in this action, and the claims of those class members who failed to timely file their claims prior to June 24, 2007 based on these alleged misstatements are time-barred.

For these reasons, as explained more fully below, the Evergreen Defendants respectfully request that the Court grant its motion for partial summary judgment and: (a) dismiss Lead Plaintiffs' claim that the Evergreen Defendants' labeling of the Fund as an "ultrashort" Fund was misleading because the Fund held securities with long-stated maturities; and/or (b) order that Lead Plaintiffs' claims based on: (i) the Fund's holding of securities with long-stated maturities; and (ii) the failure to disclose spread duration are time-barred for those class members who purchased shares prior to the one-year period before the filing of the first complaint in this action, or June 24, 2007.

## LEGAL STANDARD

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-25 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact fails to exist, and summary judgment is appropriate, where the evidence with respect to the material fact in dispute is such that a reasonable jury could not return a verdict for the nonmoving party.  <u>Id.</u>

## ARGUMENT

Two independent bases exist for the entering of partial summary judgment in this action.  First, Lead Plaintiffs' claim that the Evergreen Defendants' labeling of the Fund as an "ultrashort" fund was misleading because the Fund held securities with long-stated maturities is contrary to and belied by the disclosures contained in the Fund's Registration Statements, which clearly disclosed the stated maturity of every individual security held in the Fund.  Therefore, Lead Plaintiffs' claims based on this alleged misstatement should be dismissed.  Second, the Fund's Registration Statements disclosed that the Fund held non-agency mortgage-backed securities and securities with long-stated maturities.  Thus, claims based on alleged misrepresentations and/or omissions related to: (a)  the Fund's holding of securities with long-stated maturities; or (b) the failure to disclose spread duration are time-barred for those class members who purchased Fund shares prior to the one-year period before the filing of the first complaint in this action.

**I.     The Fund's Registration Statements Disclosed That It Invested In Securities With Long-Stated Maturities.**

It is well-established law that a securities law claim based on alleged misrepresentations in a registration statement cannot be sustained when the allegedly omitted material information is

actually disclosed in the registration statement. <u>See</u>, <u>e.g.</u>, <u>In re Progress Energy, Inc.</u>, 371 F.

Supp. 2d 548, 552 (S.D.N.Y. 2005) (dismissing securities law claims where allegedly omitted

material information was disclosed); <u>Wielgos v. Commonwealth Edison Co.</u>, 123 F.R.D. 299,

304 (N.D. Ill. 1988) (same); <u>Belodoff v. Netlist, Inc.</u>, No. 07-00677, 2009 WL 1293690, at *6

(C.D. Cal. Apr. 17, 2009) (dismissing Section 11 claim where allegedly omitted material

information was disclosed).

 Among other alleged misstatements and/or omissions contained in the Fund's

Registration Statements issued during the Class Period, Lead Plaintiffs allege that the Evergreen

Defendants' labeling of the Fund as an "ultrashort" mutual fund was misleading because the

Fund held securities with long-stated maturities. CSMF at ¶ 8. Specifically, Lead Plaintiffs rely

on a purported SEC definition of an "ultrashort" fund which states that "[u]ltra-short bond funds

are mutual funds that generally invest in fixed income securities with extremely short maturities,

or time periods in which they become due for payment." Linge Affidavit, Ex. A at ¶ 23.

Relying on this purported definition, Lead Plaintiffs proceed to allege that because the Fund held

securities with long-stated maturities, the Fund's labeling as an "ultrashort" fund was misleading

and/or a misstatement of material fact. While the Evergreen Defendants disagree with Lead

Plaintiffs assertion that "ultrashort" bond funds should invest primarily in securities with short-

stated maturities and are not permitted to hold securities with long-stated maturities, it is

unnecessary for the Court to confront this issue at the summary judgment stage. Rather, no

genuine issue of material fact exists as to whether the Fund disclosed the fact that it held

securities with long-stated maturities. A reasonable jury could only conclude that it did.

 The Fund's Registration Statements disclosed the final stated maturity of every individual

security held in the Fund and made no representations with respect to limitations and/or

guidelines on the stated maturities of the securities in which the Fund could invest.  The Fund's

Registration Statements issued during the Class Period all incorporated by reference the Fund's

financial statements as contained in a Fund Annual or Semiannual Report.  CSMF at ¶¶ 22, 30,

39, 47.   The Fund's financial statements included a Schedule of Investments that listed all

securities held in the Fund and, <u>inter</u> <u>alia</u>, the name, coupon rate, principal amount, and market

value of the individual securities and the percent of the portfolio invested in various asset

categories.  <u>Id.</u> at ¶¶ 23, 31, 40, 48.  Most important for this Motion, the Schedules of

Investments included the final stated maturity date of every security held in the Ultra Short Fund.

<u>Id.</u>[5]  Additionally, the Fund's Registration Statements did not make any representations with

respect to limitations and/or guidelines regarding the final stated maturities of the securities in

which the Fund could invest.  <u>Id.</u> at ¶¶ 21, 29, 38, 46.  As a result, no reasonable jury could

conclude that the Fund's Registration Statements failed to make clear that the Fund invested in

securities with long-stated maturities.  In fact, by way of example, a quick review of the

Schedule of Investments incorporated by reference into the Fund's 2005 Registration Statement

clearly illustrated that a large portion of the Fund's securities possessed long-stated maturities,

including numerous securities that had a final stated maturity after the year 2030.  Linge

Affidavit, Ex. H at p. EVERGREEN-KEEFE0006100-08.

        The First Circuit has previously approved disclosures in a registration statement that were

incorporated by reference.  <u>Shaw v. Digital Equip. Corp.</u>, 82 F.3d 1194, 1205-06 (1st Cir. 1996),

<u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u>, due to Private Securities Litigation Reform Act of 1995 ("PSLRA").

In <u>Shaw,</u> the plaintiffs alleged that the defendants had violated Section 11 because they failed to

---

[5]        The Fund's Registration Statements also disclosed that the Fund's holdings of mortgage-backed securities
would be exposed to risks of varying maturities.  CSMF at ¶¶ 19, 27, 36, 44.

disclose certain information, including that the defendants had allegedly embarked on a risky marketing strategy that involved cutting prices and, as a result, profit margins in order to achieve market penetration with a new product. Shaw, 82 F.3d at 1206. The First Circuit affirmed the district court's dismissal of the plaintiffs' claims with respect to the alleged risky marketing strategy because the public filings incorporated by reference into the defendant's registration statement disclosed the information that the plaintiffs alleged was omitted. The First Circuit determined that the disclosures in documents that were incorporated by reference into a registration statement "obviate[d] the plaintiffs' claim that defendants failed to disclose" the relevant information. Id.

Other courts have also determined that documents incorporated by reference into a registration statement can defeat a plaintiff's claims of alleged material misrepresentations and/or omissions under the 1933 Act. In White v. Melton, 757 F. Supp. 267, 271 (S.D.N.Y. 1991), involving claims brought under Sections 11, 12(2)[6] and 15 of the 1933 Act, the Southern District of New York granted summary judgment and dismissed the plaintiff's claims when it concluded that the plaintiff could not state a claim under Section 11 or 12(2) because the mutual fund's statement of additional information, which was incorporated by reference into the prospectus, contained the disclosure that had been allegedly omitted.

Furthermore, the decisions by the Shaw and White courts are consistent with well-settled law under the 1933 Act that documents that are not incorporated by reference into a registration statement cannot form the basis for liability under Section 11 or 12(a)(2). See, e.g., In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1538-39 (D. Mass. 1991) (dismissing Section 11

---

[6]     The PSLRA added a loss causation defense to Section 12, causing Section 12(2) to be renamed Section 12(a)(2).

and 12(2) claims based on alleged misstatements made in certain documents that were not incorporated into the registration statement/prospectus because "[t]he Registration Statement and Prospectus explicitly define and limit the categories of documents that are incorporated by reference" and "[n]one of the alleged misleading documents or public statements are explicitly incorporated in the Registration Statement and Prospectus.").

Even if the Court were to determine that the incorporation-by-reference was somehow ineffective – which it should not – Lead Plaintiffs' claim relating to the Fund's holding of securities with long-stated maturities should be dismissed because no reasonable jury could conclude that the alleged misleading statement was material.  In determining whether an alleged misrepresentation or omission is material, a court must look to the "total mix" of information that is available to investors.  The First Circuit has outlined the boundaries of materiality and stated that "[t]he mere fact that an investor might find information interesting or desirable is not sufficient to satisfy the materiality requirement.  Rather, information is 'material' only if its disclosure would alter the 'total mix' of facts available to the investor and 'if there is a substantial likelihood that a reasonable shareholder would consider it important' to the investment decision."  Cooperman v. Individual, Inc., 171 F.3d 43, 49 (1st Cir. 1999) (quoting Milton v. Van Dorn Co., 961 F.2d 965, 969 (1st Cir. 1992)).  While "materiality is a mixed question of law and fact which the trier of fact ordinarily decides . . . if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality," a court can conclude that the allegations are inactionable as a matter of law.  Id.

Here, any alleged omissions or misstatements regarding the maturities of securities held by the Fund cannot be material because the final stated maturity of each security held in the Fund

was publicly disclosed in the Schedules of Investments contained in the Fund's Annual and

Semiannual Reports, which were delivered to Fund shareholders and publicly filed with the SEC.

CSMF at ¶¶ 23-24, 31-32, 40-41, 48-49.  The total mix of information includes "information

already in the public domain and [those] facts known or reasonably available" to investors.

Litwin v. Blackstone Group, L.P., 634 F.3d 706, 718 (2d Cir. 2011).  Courts have consistently

held that the non-disclosure of a fact that has already been disclosed is not actionable.  E.g., In re

IAC/InterActiveCorp Sec. Litig., 695 F. Supp. 2d 109, 118 (S.D.N.Y. 2010) (dismissing Section

11 claim based on alleged misstatement that had already been publicly disclosed); In re Progress

Energy, Inc., 371 F.Supp.2d at 552-53 ("[i]t is well-established law that the securities laws do

not require disclosure of information that is publicly known"); Goodwin Properties, LLC v.

Acadia Group, Inc., No. 01-49-P-C, 2001 WL 800064, at *18 (D. Me. July 17, 2001) ("no duty

to disclose public information" in context of a Section 12 claim).

As described above, Lead Plaintiffs' claim that the Evergreen Defendants' labeling of the

Fund as an "ultrashort" mutual fund was misleading because the Fund held securities with long-

stated maturities should be dismissed because the Fund disclosed, in its Registration Statement

and Annual and Semiannual Reports delivered to Fund shareholders and filed with the SEC, the

final stated maturity of every security held in the Fund.  Accordingly, the Evergreen Defendants'

motion for partial summary judgment should be granted, and Lead Plaintiffs' Section 11 and

12(a)(2) claims based on this alleged misstatement should be dismissed.

II.     **Class Members Who Purchased Shares Prior To June 24, 2007 Are Time-Barred From Asserting Claims Based On The Fund's Holding Of Securities With Long-Stated Maturities And The Evergreen Defendants' Failure To Disclose The Fund's Spread Duration.**

Even if the Court declines to enter partial summary judgment as requested in Section I, a

separate, independent basis for partial summary judgment exists.  In addition to the

aforementioned alleged misstatement related to the Fund's holding of securities with long-stated maturities, Lead Plaintiffs also allege that the Evergreen Defendants violated Sections 11 and 12(a)(2) because they should have disclosed the Fund's spread duration due to the Fund's holding of investments with credit risk, i.e., non-agency mortgage-backed securities, and long-stated maturities.  CSMF at ¶ 9.  Such claims, however, are time-barred for any class member who purchased shares in the Fund prior to the one-year period before the filing of the first complaint in this action.  The Registration Statements and public filings issued by the Fund during the Class Period disclosed that the Fund invested in both: (a) securities with long-stated maturities; and (b) non-agency mortgage-backed securities.  Thus, class members were on inquiry notice of potential claims based on the Fund's holding of securities with long-stated maturities and/or non-agency mortgage-backed securities prior to one year before the filing of the first complaint in this action.  Because Lead Plaintiffs make no allegations and there is no evidence to support a tolling of the statute of limitations, the claims of class members who purchased shares in the Fund prior to the one-year period before the filing of the first complaint in this action should be dismissed.

Under Section 13 of the Securities Act of 1933, "[n]o action shall be maintained to enforce any liability under [Section 11] or [Section 12(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . ."  15 U.S.C. § 77m. The analysis of a plaintiff's compliance with the statute of limitations under the law of the First Circuit entails a two-part inquiry: (1) when inquiry notice occurred; and (2) whether the plaintiff exercised reasonable diligence following inquiry notice.  Cook v. Avien, Inc., 573 F.2d 685, 694-98 (1st Cir. 1978).

In terms of inquiry notice, the First Circuit has characterized the facts that trigger inquiry notice as "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale." Cook, 573 F.2d at 697-98. The standard is an objective one. Slavin v. Morgan Stanley & Co., 791 F. Supp. 327, 330 (D. Mass. 1992). While the burden of showing compliance with the statute of limitations under Section 13 of the Securities Act of 1933 is normally on the plaintiff, see Cook, 573 F.2d at 695, when a defendant seeks to "truncate the limitation period," he or she bears the burden of establishing the existence of such storm warnings. Young v. Lepone, 305 F.3d 1, 9 (1st Cir. 2002).

Once a defendant successfully does so, the plaintiff must then counter with "a showing that she fulfilled her corresponding duty of making a reasonably diligent inquiry into the possibility of fraudulent activity." Id. A court, in determining whether an investor made reasonable inquiries, will look to "the nature of the misleading statements alleged, the opportunity to discover the misleading nature of the statements, and the subsequent actions of the parties." Cook, 573 F.2d at 696-97. An investor, in exercising reasonable diligence, is required to be "reasonably cognizant of financial developments relating to his investment, and [take] early steps . . . to appraise those facts which come to the investor's attention." Id. at 698. In sum, a plaintiff's cause of action is "deemed to accrue on the date when, exercising reasonable diligence, she would have unearthed" the alleged violation. Young, 305 F.3d at 10.

While the exercise of reasonable diligence is normally a question of fact, "where plaintiff has not met his burden of alleging facts which could lead to an inference of reasonable diligence, there is no resulting opportunity for that inference to toll the statute of limitations." Slavin, 791 F. Supp. at 331 (emphasis in original).

- 11 -

As explained in Section I, the Fund's Registration Statements issued during the Class Period all incorporated by reference the Fund's financial statements as contained in a Fund Annual or Semiannual Report, which included a Schedule of Investments that listed the final stated maturity of each individual security held by the Fund. See supra at pp. 5-6; CSMF at ¶¶ 22-23, 30-31, 39-40, 47-48. Thus, it is undisputable that information was available to Fund shareholders throughout the Class Period to alert them that the Fund held securities with long-stated maturities.

Additionally, the Fund's Registration Statements informed shareholders that the Fund invested in securities with credit risk, and, in particular, non-agency mortgage-backed securities. The Fund's Registration Statements all included a "Credit Risk" disclosure informing Fund shareholders that the Fund invested in securities that presented credit risk. CSMF at ¶¶ 20, 28, 37, 45. The Fund's Registration Statements further disclosed that the Fund would invest primarily all of its assets in mortgage-backed or mortgage-related securities, including those that included credit risk because they were not issued by the U.S. government or one of its agencies (i.e., non-agency mortgage-backed securities). CSMF at ¶¶ 17, 25, 33, 42. Specifically, each Registration Statement disclosed that the Fund's mortgage-backed securities "include those issued by private issuers, which are not guaranteed or backed by the credit of the U.S. government or by an agency or instrumentality of the U.S. government." CSMF at ¶¶ 18, 26, 35, 43.[7] Finally, the Fund's Registration Statements disclosed, in detail, that the Fund's mortgage-backed securities would be exposed to risks of varying maturities and that the securities could

---

[7]     The July 2007 Registration Statement also disclosed that "at June 30, 2007, more than 80% of the . . . Fund's assets were invested in mortgage-backed (including collateralized mortgage obligations) and other asset-backed securities, most of which were issued by private (non-U.S. Government agency) issuers."  CSMF at ¶ 34.

possess credit risk due to the absence of a guarantee from the U.S. government or one of its

agencies or instrumentalities:

> The Fund may invest in mortgage-backed securities and asset-backed securities. Two principal types of mortgage-backed securities are collateralized mortgage obligations (CMOs) and real estate mortgage investment conduits (REMICs). . . . Investors purchasing CMOs in the shortest maturities receive or are credited with their pro rata portion of the scheduled payments of interest and principal on the underlying mortgages plus all unscheduled prepayments of principal up to a predetermined portion of the total CMO obligation.  Until that portion of such CMO obligation is repaid, investors in the longer maturities receive interest only. Accordingly, the CMOs in the longer maturity series are less likely than other mortgage pass-throughs to be prepaid prior to their stated maturity.  Although some of the mortgages underlying CMOs may be supported by various types of insurance, and some CMOs may be backed by GNMA certificates or other mortgage pass-throughs issued or guaranteed by U.S. government agencies or instrumentalities, the CMOs themselves are not generally guaranteed.

CSMF at ¶¶ 19, 27, 36, 44.  Therefore, throughout the Class Period, the Fund's Registration

Statements explicitly disclosed to shareholders that the Fund invested in securities that possessed

credit risk, in particular non-agency mortgage-backed securities.

Courts have held that, for purposes of determining inquiry notice under Section 13 of the

Securities Act, an investor is presumed to have read prospectuses, periodic reports, and other

information related to their investments.  DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d

209 (3d Cir. 2007).  In DeBenedictis, the court concluded that information provided in public

filings, among other sources, was sufficient to trigger inquiry notice.  Id. at 218-19.  Moreover,

in the context of a mutual fund, courts have determined that the "storm warnings" to trigger

inquiry notice are "fairly severe" when the plaintiff is aware of a fund's holdings based on the

fund's annual report.  See Benak v. Alliance Capital Mgmt. L.P., 349 F. Supp. 2d 882, 888

(D.N.J. 2004), aff'd, 435 F.3d 396 (3d Cir. 2006); see also DeBruyne v. Equitable Life

Assurance Society of the U.S., 920 F.2d 457, 465-67 (7th Cir. 1990) (affirming summary

judgment for defendants on Section 11 and 12(2) claims due to statute of limitations, where "open disclosures as to the percentage composition of the Balanced Fund" contradicted other disclosures and provided for inquiry notice as to alleged fraud, and further noting that "plaintiff cannot avoid the statute of limitations by possessing, but failing to read, the documents that put them on inquiry notice").

In light of the above, there is no dispute that class members were on inquiry notice throughout the Class Period that the Fund invested in securities with long-stated maturities and that the Fund invested in securities with credit risk, including non-agency mortgage-backed securities.  Furthermore, there is no dispute that a class member exercising reasonable diligence would have discovered these facts by reviewing the Fund's Prospectuses and Annual Reports, which they received throughout the Class Period.  CSMF at ¶¶ 24, 32, 41, 49.  Plaintiffs have not alleged, nor could they allege, any facts that would support tolling of the statute of limitations.

This action's first complaint was filed on June 23, 2008 in the action entitled Keefe v. Evergreen Investment Management Co., LLC, No. 1:08-cv-11064 (NMG).  CSMF at ¶¶ 1-5. Any class member, therefore, who purchased shares prior to June 24, 2007 is time-barred from asserting Section 11 or 12(a)(2) claims against the Evergreen Defendants based on: (a) the Fund's holding of securities with long-stated maturities; and (2) the failure to disclose the Fund's spread duration.

## CONCLUSION

No reasonable jury could conclude that the Fund's Registration Statements, through the incorporation by reference of the Schedule of Investments in the Fund's Annual or Semiannual Reports, did not disclose to shareholders that the Fund invested in securities with long-stated maturities.  Furthermore, no reasonable jury could conclude that the Evergreen Defendants did

not inform and provide notice to class members that the Fund invested in securities with long-stated maturities and in securities, such as non-agency mortgage-backed securities, that possessed credit risk.

For these and the foregoing reasons, the Evergreen Defendants respectfully request that the Court grant this partial motion for summary judgment and: (a) dismiss Lead Plaintiffs' Section 11 and 12(a)(2) claims based on the Fund's holding of securities with long-stated maturities; and/or (b) dismiss Lead Plaintiffs' Section 11 and 12(a)(2) claims based on (i) the Fund's holding of securities with long-stated maturities, and (ii) the failure to disclose the Fund's spread duration, as time-barred for those class members who purchased Fund shares prior to June 24, 2007.

Respectfully submitted,

Dated:    February 15, 2012

REED SMITH LLP

By: */s/ George M. Linge*
George M. Linge, BBO #648199
Thomas L. Allen, *admitted pro hac vice*
Joseph P. Pohl III, *admitted pro hac vice*
Justin J. Kontul, *admitted pro hac vice*
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile: (412) 288-3063

*Counsel for Evergreen Investment Management Co. LLC, Evergreen Investment Services, Inc., Wachovia Corporation, Dennis H. Ferro and Kasey Phillips*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed on February 15, 2012 through the ECF system

will be sent electronically to the registered participants as identified on the Notice of Electronic

Filing and by U.S. Mail to those identified non-registrants on the date of filing.

*/s/ George M. Linge*