# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE EVERGREEN ULTRA SHORT OPPORTUNITIES FUND SECURITIES LITIGATION | Civil Action No. 08-11064-NMG |

**Expert Report of
Edward S. O'Neal, Ph.D. and
Craig J. McCann, Ph.D.
October 10, 2011**

## I.   Qualifications and remuneration

### 1. Qualifications of Edward S. O'Neal, Ph.D.

1.    Dr. O'Neal is a Principal with Securities Litigation and Consulting Group ("SLCG") in Fairfax, Virginia. SLCG provides consulting on a broad range of litigation issues related to securities, investments and the capital markets. Dr. O'Neal has personally been retained to provide expert witness services on over 200 matters in State and Federal courts and various arbitration forums.   Details of his qualifications are listed in his resume which is attached as Exhibit 1 to this report.

2.     Dr. O'Neal was a senior financial economist in the Office of Economic Analysis at the Securities and Exchange Commission from 1998 through 1999.   While there, Dr. O'Neal worked primarily with SEC staff members in the Division of Investment Management which is the Division of the SEC that oversees the mutual fund industry.   Dr. O'Neal advised the Commission on the economic impact of regulatory and policy changes as they related to mutual funds, closed end funds and investment management companies.

3.     Since leaving the SEC, Dr. O'Neal has been hired as an expert witness in 5 separate cases by SEC enforcement offices.   These cases involve topics similar to those which Dr. O'Neal has testified about in court and arbitration cases: mutual fund selling practices, broker churning in stocks and mutual funds, earnings manipulation fraud, and mis-pricing of closed end funds.

4.     Dr. O'Neal held tenure track faculty positions at three universities from 1993 through 2007.   While on the faculty of the University of New Hampshire, Auburn University and Wake Forest University, Dr. O'Neal taught undergraduate and graduate students classes in Investments and Portfolio Management, Financial Institutions, Corporate Finance and Applied Securities Analysis.

5.     Dr. O'Neal has published numerous papers in peer-reviewed academic and practitioner journals.   Most of his papers deal with investments and mutual funds.

6.     Dr. O'Neal's resume, which includes a list of all publications he has authored within the last 10 years and the cases in which he has

testified as an expert at trial or by deposition within the last four years, is attached as Exhibit 1.

### 2. Qualifications of Craig J. McCann, Ph.D.

7.      Dr. McCann is a Principal of Securities Litigation and Consulting Group, Inc. ("SLCG"). Prior to founding SLCG, Dr. McCann was a Director at LECG, a business unit of Navigant Consulting, Inc. Prior to joining LECG, he was Managing Director, Securities Litigation at KPMG LLP for two years.

8.      Dr. McCann was a senior financial economist in the Office of Economic Analysis at the Securities and Exchange Commission (SEC) from 1992 to 1993 and from 1994 to 1995. While at the SEC, he worked on several securities fraud investigations including allegations of material omissions and misrepresentations. These projects included analysis of materiality, causation, illegal profits, losses avoided, and monetary penalties.

9.      Dr. McCann earned a Ph.D. in Economics from the University of California, at Los Angeles. His dissertation examined the incidence of golden parachutes and their effect on stock prices using an event study. Financial economists use event studies to determine whether information released was material and was previously non-public. Dr. McCann holds the Chartered Financial Analyst (CFA) designation. Three years of practical investment management experience and the successful completion of a series of three day-long exams are required to receive the CFA designation.

10.     Dr. McCann has taught graduate investment management at Georgetown University and at the University of Maryland, College Park. These courses include extensive discussions of securities valuation, portfolio

construction, and performance monitoring. He has held Series 7 and Series 63 National Association of Securities Dealers ("NASD") registrations.

11.     Dr. McCann's consulting work since he left the SEC has primarily involved the analysis of investments. He has spoken at length at continuing legal education programs sponsored by Bar Associations around the country and by the North American Securities Administrators Association, the SEC, and the Texas Securities Commission. Dr. McCann has been hired as a consultant and expert witness in investigations by many state and federal agencies including the SEC and the Department of Justice.

12.     Dr. McCann's resume, which includes a list of all publications he has authored within the last 10 years and the cases in which he has testified as an expert at trial or by deposition within the last four years, is attached as Exhibit 2.

### 3. Remuneration

13.     SLCG is being compensated for its time and expenses. Dr. O'Neal's hourly rate is $475. Dr. McCann's hourly rate is $475. Other SLCG personnel working on this matter have billing rates of $100 to $275 per hour.

## II.   Materials reviewed

14.     We have reviewed the following materials:

a.     First Amended Class Action Complaint, April 30, 2009;
b.     Answer, July 16, 2010;
c.     Memorandum & Order on Motion to Dismiss, March 31 , 2010;
d.     Memorandum & Order on Class Certification, August 10, 2011;
e.     Published literature including
    i.     Brunnermeier, Markus K., 2009, "Deciphering the Liquidity and Credit Crunch 2007-2008", Journal of Economic Perspectives, 23(1), 77-100.

      ii.    Geng, Deng, Craig McCann and Edward O'Neal, 2010, "What Does a Mutual Fund's Average Credit Quality Tell Investors?", Journal of Investing, 19(4), 58–65.

      iii.    Geng, Deng, Craig McCann and Edward O'Neal, 2011, "What Does a Mutual Fund's Term Tell Investors?", Journal of Investing, 20(2), 50-57.

   f.    Deposition transcripts including

      i.    Robert Rowe, February 21, 2011.

      ii.    Lisa Premo, February 23, 2011.

      iii.    Kasey Phillips, March 15, 2011.

      iv.    Abe Riazati, March 27, 2011.

   g.    Evergreen quarterly "Fixed Income Product Reports".

   h.    Portfolio holdings and transactions and other documents produced in discovery.

   i.    Market data from Bloomberg, LP.

15.    We will continue to review documents and testimony that may result in supplements and amendments to our report.

## III.  Assignment

16.    We have been asked by counsel for Plaintiffs to evaluate the portfolio holdings and returns to the Evergreen Ultra Short Opportunities Fund (the "Fund"). We have been asked to determine whether the holdings of the Fund were consistent with how the fund was marketed and with the Fund's self-selected peer group and benchmarks.

## IV.  Summary of findings

17.    Evergreen Ultra Short Opportunities Fund held many long term securities despite being marketed as an ultra short term bond fund.

18.    Traditional naming conventions in the mutual fund industry and Securities and Exchange Commission guidance require that short term bond

funds have average maturities of less than 3 years.[1] Evergreen Ultra Short
Opportunities Fund had an average maturity of over 25 years.

19.    Evergreen Ultra Short Opportunities Fund reported a measure
of interest rate sensitivity which was false and misleading when applied to
its portfolio of long term floating-rate bonds with substantial credit risk.

## V.    Introduction

20.    Evergreen Ultra Short Opportunities Fund [2] was marketed to
investors as an ultra short bond fund. Evergreen Investments (Wachovia's
investment management unit) characterized the fund's investment objectives
as:

> "The fund seeks to provide current income consistent with
> preservation of capital and low principal fluctuation. Our strategy is to
> seek the highest total return by maximizing income and minimizing
> price fluctuations." [3]

21.    Evergreen compared the Ultra Short Opportunities Fund's
returns and risk profile (market value risk, income risk, credit risk and
liability framework risk[4]) to the Lehman Brothers Government/Credit 0-2.5
Year Index (LBGC0-2.5YI) which is an index that includes U.S. Treasuries,
U.S. agencies' obligations, and publicly issued debentures and secured
notes, both U.S. corporate and foreign, that must be fixed rate with
maturities of up to 2.5 years and be rated BBB- or higher.[5]

---

[1] See Release No. IC-24828; File No. S7-11-97 http://www.sec.gov/rules/final/ic-24828.htm#average
[2] See for example 2006 annual report filings:
http://sec.gov/Archives/edgar/data/1060711/000093677206000141/edg148317.htm
[3] Page 5
[4] CFA Program Curriculum, Reading #23 (Level III, 2012)
[5] Barclays Capital Government/Credit Index Rules
https://live.barcap.com/FIA/INDICES/descr/govcred.html

22.     The Lehman Brothers Government/Credit 0-2.5 Year Index was a custom benchmark, specifically designed for Evergreen. It reflected a very different composition than the Evergreen Ultra Short Opportunities Fund and therefore different risk profile. For example, while more than 50% of the Ultra Short Opportunities Fund was invested in private-label mortgage backed securities, over 75% of the Lehman Brothers Government/Credit 0-2.5 Year Index was composed of Treasury and securities backed by Government agencies which are considerably safer asset classes than the majority of Evergreen's securities. In the first half of 2008, Evergreen Ultra Short Opportunities Fund experienced losses greater than 20% and announced on June 18, 2008 that it would liquidate itself.

23.     The SEC defines an ultra short fund as follows:

> Ultra-short bond funds are mutual funds that generally invest in fixed income securities with extremely short maturities, or time periods in which they become due for payment.[6]

24.     Contrary to this definition, Evergreen Ultra Short Opportunities Fund held large positions in long maturity investments. For example, in 2008 the Fund held more than 60% of its investments in Residential Mortgage-Backed Securities (RMBS).

25.     Figure 1 illustrates the value of $100 invested in the Fund between 2006 and 2008 compared to the average value of $100 invested in all other funds marketed as ultra short bond funds in the market and the two benchmarks referenced in the Fund's prospectus: The BarCap Government/Credit 0-2.5 Year Index (formerly known as the Lehman Brothers Government/Credit Index) and the Consumer Price Index (CPI). We also include the BarCap Government/Credit 1-3 Year Index in the

---

[6] http://www.sec.gov/investor/pubs/ultra-short_bond_funds.htm

analysis. This index is publicly available at Barclays Capital and closely tracks the Government/Credit 0-2.5 Year Index in risk profile compositions, i.e. duration, liquidity and credit quality.

**Figure 1: Evergreen Performance Comparison: Total Return Indices**



26.    In Figure 2 we plot the value of $100 invested in the Fund compared to the value of $100 invested in all other ultra short funds in the market. From the beginning of 2006 through mid-2008, the Evergreen Ultra Short Opportunities Fund returns were worse than every one of the 29 ultra short funds in the peer group.

**Figure 2: Evergreen Performance Comparison: Total Return Indices of Ultra Short Bond Fund Universe**



27.     Table 1 reports the value of $100 invested in the Evergreen Ultra Short Opportunities Fund, the average value of $100 invested in other ultra short bond funds, money market funds, and the two aforementioned benchmarks. Until the end of March 2008, the value of $100 invested in the Evergreen Ultra Short Opportunities Fund tracked its peers. $100 invested in December 2005 would have been worth $107.88 had it been invested in the Evergreen Ultra Short Opportunities Fund. A similar investment in the average ultra short bond fund would have been worth $105.46 and in the BarCap Government/Credit 0-2.5 Year Index would have been worth $111.99.

28.     However, by the end of June 2008, only 3 month later, the value of the $100 invested in the Evergreen Ultra Short Opportunities Fund

lost approximately 20% of its value. Similar investments in the Fund's benchmark or in an average ultra short fund would not have had any substantial change of value.

**Table 1: Performance of $100 Invested in Evergreen Fund Compared to the $100 Invested in Comparable Benchmarks**

| Quarter Ending | Evergreen Ultra Short Opportunities Fund | BarCap Gov't / Credit 0-2.5 Year Index | BarCap Governme nt/Credit 1-3 Year Index | Average Ultra Short Bond Fund | Average Money Market Funds | CPI Index |
|---|---|---|---|---|---|---|
| Dec-05 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 | $100.00 |
| Mar-06 | $100.58 | $100.80 | $100.43 | $100.82 | $100.90 | $100.81 |
| Jun-06 | $101.56 | $101.77 | $101.11 | $101.79 | $101.56 | $101.92 |
| Sep-06 | $103.33 | $103.44 | $103.20 | $103.06 | $102.52 | $102.83 |
| Dec-06 | $104.83 | $104.65 | $104.25 | $104.23 | $103.42 | $101.97 |
| Mar-07 | $106.49 | $106.05 | $105.75 | $105.47 | $104.45 | $103.11 |
| Jun-07 | $107.30 | $107.18 | $106.50 | $106.39 | $105.52 | $104.42 |
| Sep-07 | $108.10 | $108.91 | $109.01 | $106.63 | $106.54 | $104.83 |
| Dec-07 | $108.44 | $110.43 | $111.38 | $106.81 | $107.53 | $106.73 |
| Mar-08 | $107.88 | $111.99 | $114.41 | $105.46 | $107.99 | $107.80 |
| Jun-08[7] | $87.18 | N/A | $113.20 | $105.40 | $108.56 | $108.68 |

29.    Evergreen Ultra Short Opportunities Fund invested mainly in a variety of asset-backed securities. Figure 3 shows how the overall holdings of the Evergreen Ultra Short Opportunities Fund (using fund valuations) evolved over time.

---

[7] Reflect values ending on June 18, 2008 as Evergreen Ultra Short Opportunities Fund was announced to be liquidated on that day.

**Figure 3: Composition of Evergreen Portfolio, June 2007 – March 2008**



30.    In Figure 4, we illustrate the portfolio composition of the Fund at the end of March 2008. More than 70% of the fund's investments were in different kinds of private-label asset-backed securities such as RMBS, Commercial Mortgage-Backed Securities (CMBS) and general Asset-Backed Securities (ABS). As we will illustrate below, this concentration in asset-backed securities, some of which have very long maturities, was the source of the substantial loss in value the Fund experienced after March 2008. As we explain below, the Fund's own consultants have since found that the Fund's true NAV declined earlier than was reported and was substantially more volatile than the reported NAV.

**Figure 4: Composition of Evergreen Portfolio as of 3/31/2008.**[8]



## VI. AVERAGE MATURITY

31.    Evergreen Ultra Short Opportunities Fund held many long term securities despite being marketed as an ultra short fund which should hold mainly very short term investments. Since some of these investments are complex we start with an example of a typical asset Evergreen Ultra Short Opportunities Fund held:

### 1. An Example

32.    In March 2008, Evergreen Ultra Short Opportunities Fund held about $10 million of face value of "Acacia CDO, Ltd.: Ser. 10A: Class C". This subordinate floating rate debt obligation was issued by a Collateralized Debt Obligation (CDO) trust and had a remaining maturity of more than 38 years (maturing in 9/7/2046). This Acacia security is a good example of four of the characteristics exhibited by many of Evergreen Ultra Short

---

[8] These categories are based on the self-categorization of Evergreen Ultra Short Opportunities Fund in its financial statements. RMBS do not include subprime investments. ABS includes all subprime investments and non subprime ABS.

Opportunities Fund's investments: it had a very long final maturity (38 years), potential variation in actual maturity, a floating interest rate and substantial credit risk. In Table 2, we list the capital structure of the Acacia CDO. The original balance of this CDO was $500 million divided among six tranches.

**Table 2: Structure of "Acacia CDO, Ltd.: Ser. 10A"**

| Tranche | Tranche Type | Original Balance | Interest Rate | S&P Rating |
|---------|--------------|------------------|---------------|------------|
| A1 | Floating Rate | $ 260,000,000 | 3M LIBOR + 0.31% | AAA |
| A2 | Floating Rate | $ 40,000,000 | 3M LIBOR + 0.43% | AAA |
| B | Subordinate Floating Rate | $ 30,000,000 | 3M LIBOR + 0.55% | AA+ |
| **C** | **Subordinate Floating Rate** | **$ 50,000,000** | **3M LIBOR + 1.30%** | **A** |
| D | Subordinate Floating Rate | $ 25,000,000 | 3M LIBOR + 3.00% | BBB |
| SUB | Subordinate | $ 95,000,000 | Not Applicable | N/A |

33.    The top 5 tranches had a floating coupon rate equal to the 3-month LIBOR[9] plus a fixed spread. Evergreen Ultra Short Opportunities Fund held the fourth tranche (tranche C) which is a subordinate tranche with a fixed interest rate spread of 1.3% over 3-month LIBOR. This C tranche was rated "A" when issued by Standard & Poor's. Since superior tranches get repaid first, an investment in the C tranche carried greater credit risk as evidenced by the lower rating.

## 2. Maturities

34.    Evergreen Ultra Short Opportunities Fund reported an average maturity of its investments. In Table 3, we list the reported average maturity of Evergreen Ultra Short Opportunities Fund and contrast it with the maturity we calculate using the methodology developed in Deng, McCann, and O'Neal (2011). The reported average maturity by Morningstar was

---

[9] The London Interbank Offered Rate (LIBOR) is the interest rate at which banks borrow from other banks, and hence is a common baseline interest rate for variable rate notes.

between 2.6-3.4 years. Based on our analysis of the fund's holdings, we find that Evergreen Ultra Short Opportunities Fund's average maturity varied between 26.1 and 28.9 years.

**Table 3: Actual vs. Reported Average Maturity of Securities Held by Evergreen**

| Report Date | Reported Average Effective Duration | Reported Average Maturity (years) | Calculated Average Maturity (years) |
|---|---|---|---|
| Jun-04 | 1.3 | 2.8 | 26.3 |
| Sep-04 | 1.2 | 2.7 | 26.5 |
| Dec-04 | 1.2 | 3.2 | 27.8 |
| Mar-05 | 1.3 | 3.2 | 27.5 |
| Mar-06 | 0.9 | - | 27.8 |
| Sep-06 | 1.0 | 2.6 | 24.3 |
| Sep-07 | 1.0 | 3.1 | 28.9 |
| Dec-07 | 1.0 | 3.4 | 26.6 |
| Mar-08 | 0.9 | 3.4 | 26.1 |

35.    Two examples from the fund's holdings in March 2008 illustrate the complexity of the fund's investments and their true maturities. The Evergreen Ultra Short Opportunities Fund held:[10]

1)    $10 million of "Lehman Brothers Small Balance Comml., Ser. 2007-2A, Class 2A1". This is a tranche in a Commercial Mortgage-Backed Security. This tranche is unique in the sense that it receives interest only on certain payments on the underlying assets, and hence payments may be insufficient on any distribution date to fully cover the unpaid and accrued interests. In March 2008, this CMBS had a remaining term to final maturity of more than 29 years.

---

[10] http://sec.gov/Archives/edgar/data/1060711/000113322808000387/e153179ev_h.htm, page 1

2)      $10 million of "First Horizon Mtge. Trust, Ser. 2007-5, Class A1". This is a tranche in a whole loan Mortgage-Backed Collateralized Mortgage Obligation, also with a remaining term to final maturity of more than 20 years.

## 3. Average Effective Durations

36.    The maturity of a bond is an important indicator of the risk of a bond. An investor in bonds maturing in three months will not suffer significant losses if risk free interest rates, market-wide credit spreads or liquidity risk premiums increase – even if they increase substantially – because the investor will receive the face value of the bond in three months unless the specific issuer defaults. An investor in bonds maturing in thirty years on the other hand will suffer significant losses if the risk free interest rate, market-wide credit spreads or liquidity risk premiums increase even if the issuer doesn't default.

37.    The final maturity of a bond is the date by which the issuer commits to fully repay the principal or face value of the bond. Maturity is an unambiguous concept for non-amortizing bonds since all the principal is paid out on one date when the bond matures. The principal of an amortizing bond, on the other hand, is paid off over time and the maturity date is the date when the last principal payment is made.

38.    Macaulay duration (typically referred to as "Duration") improves on maturity as an indicator of interest rate risk because it takes into account the timing of the portion of bond value recovered through coupon payments. Simply put, Macaulay duration measures the weighted average term to maturity of a bond - it weights the time to receipt of cash flows by the present value of the cash flows. Modified duration is closely related to Macaulay duration and allows us to estimate how the value of a bond or

bond fund changes in response to parallel shifts in the yield curve. A parallel shift in yield curve indicates that the interest rate of all maturities increase or decrease by the same amount. Therefore, Modified duration allows us to quantify the risk in a security due to changes in its yields but assumes that changes in interest rates have no effect on the amount of cash flows.

39.     Effective duration incorporates changes in bond values due to changes in prepayment behavior and coupon rates resulting from changes in risk free interest rates. It is an important tool for assessing the interest rate risk in agency collateralized mortgage obligations ("agency CMOs"). Changes in the level of risk free interest rates cause cash flows to agency CMO investors to increase or decrease as homeowners adjust their prepayment behavior to changes in interest rates and because some agency CMOs have coupons that float directly or inversely with risk free interest rates.

40.     While effective duration is an improvement on Macaulay duration for securities that have embedded call or put options and have no credit risk as in agency CMOs, it fails to capture the volatility in a bond or bond fund's price because of changes in the portion of yields attributable to credit risk. that is, effective duration ignores changes in yields-to-maturity caused by credit market-wide credit and liquidity premiums.[11] Moreover, similar to the effect of changes in risk free interest rates on cash flows to, and valuation of, Agency CMOs, changes in credit spreads can alter the cash flows to, and valuation on, private label asset backed securities.

---

[11] As a security becomes more illiquid, the investors demand higher premium to compensate for the risk that their asset cannot be easily converted into cash. Higher liquidity premium indicates higher illiquidity of the bond and as a result the price of the bond falls.

41.    The effective duration is insensitive to credit and liquidity risk – collectively the "yield spread" - of a bond or bond fund. In other words, when risk premiums involving higher credit defaults and lower liquidity of an asset increases, the rate of return on a bond increases. The sensitivity of a bond's value to changes in market-wide credit (credit duration) and liquidity premiums and issuer-specific credit and liquidity risk is directly related to the bond's maturity and can be far greater than its sensitivity to changes in risk free interest rates - bond's effective duration.

42.    Of particular importance to this analysis, the following three bonds have the same effective duration even though the 30-year bonds are orders of magnitude more risky than the 3-month bond.

- 3-month, A-rated bond;

- 30-year, A-rated floating-rate bond; and

- 30-year, A-rated fixed-rate bond paired with an interest rate swap.

43.    The average effective duration reported by mutual funds and used by Morningstar is not a useful measure of risk for ultra short-term and short-term bond funds.   Effective duration as typically calculated only measures the sensitivity of bond prices to changes in the risk-free or index levels of interest rates. A bond or bond portfolio can have a lot of credit risk and a high credit or spread duration yet have an extremely low – even 0 - effective duration as that potentially misleading statistic is calculated. As such, effective duration is a very poor measure of the sensitivity of the value of bonds with credit risk to changes in interest rates.  In order to inform the investors of all risks involved in Evergreen Ultra Short Opportunities Fund, Evergreen should have reported both the effective duration and credit or spread duration.

44.    Furthermore, the effective duration is difficult to calculate when there are embedded options especially for MBS which have prepayment and credit risks. According to the internal document produced by Evergreen Investment Management,12 Evergreen's risk management team and investment team calculate substantially different effective duration values. The duration reported by the risk management team ranges from 2.9 years (without Derivatives) to 3.1 years (with Derivatives) as of August 30th, 2007 while the investment team reported a duration of only 0.95 years.

### 4. Floating Rates and Average Maturity

45.    As Table 3 shows, the Evergreen Ultra Short Opportunities Fund had reported durations of only 0.9 to 1.3 years. The Evergreen Ultra Short Opportunities Fund's portfolio had low reported effective durations because it held about half of its portfolio in floating rate investments. For example in March 2008, it held 43.5% of its investment in long maturity securities with floating coupon rates.

46.    Long maturity securities with floating coupon rates have effective durations close to zero, regardless of their actual maturities. The more floating rate securities Evergreen held, the lower was the effective duration of the portfolio. Such a strategy exposes investors to the credit risk of holding long term maturities, while maintaining an appearance that fund is low risk because of its short duration.   For example, Evergreen held more than $1 million of a security called "Legg Mason Real Estate CDO, Ltd., Ser. 2006-1A, Class E, FRN, 3.43%, 03/25/2038 144A". This is a collateralized debt obligation, essentially a subordinate asset-backed security

---

12 Evergreen Internal Document numbered 00308535-1.

that pays a floating rate. It had 28 years to maturity but due to its floating rate it had a very low effective duration.

## Table 4: Comparison of the Distribution of the Holding's Duration and Maturity Compared to Its Benchmark.

Panel A: Durations (%)

| Duration | Evergreen Ultra Short Opportunities Fund | | | | | LB Government/Credit 0-2.5 Year Index | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | <1 Year | 1-3 Years | 3-5 Years | 5-10 Years | 10+ Years | <1 Year | 1-3 Years | 3-5 Years | 5-10 Years | 10+ Years |
| 4Q 2005 | 50.10 | 49.90 | 0 | 0 | 0 | 51.72 | 46.20 | 1.33 | 0.75 | 0 |
| 1Q 2006 | 52.21 | 47.79 | 0 | 0 | 0 | 53.32 | 44.42 | 1.41 | 0.85 | 0 |
| 2Q 2006 | 55.33 | 44.67 | 0 | 0 | 0 | 58.98 | 41.02 | 0 | 0 | 0 |
| 3Q 2006 | 61.92 | 38.08 | 0 | 0 | 0 | 60.02 | 39.96 | 0.02 | 0 | 0 |
| 4Q 2006 | 61.12 | 38.88 | 0 | 0 | 0 | 57.75 | 42.25 | 0 | 0 | 0 |
| 1Q 2007 | 60.84 | 39.16 | 0 | 0 | 0 | 61.84 | 38.16 | 0 | 0 | 0 |
| 2Q 2007 | 61.09 | 38.90 | 0 | 0 | 0 | 61.51 | 38.49 | 0 | 0 | 0 |
| 3Q 2007 | 57.69 | 42.31 | 0 | 0 | 0 | 63.01 | 36.99 | 0 | 0 | 0 |
| 4Q 2007 | 62.50 | 37.50 | 0 | 0 | 0 | 63.59 | 36.41 | 0 | 0 | 0 |
| 1Q 2008 | 67.22 | 32.78 | 0 | 0 | 0 | 62.68 | 37.32 | 0 | 0 | 0 |

Panel B: Maturities (%)

| Maturity | Evergreen Ultra Short Opportunities Fund | | | | | LB Government/Credit 0-2.5 Year Index | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | <1 Year | 1-3 Years | 3-5 Years | 5-10 Years | 10+ Years | <1 Year | 1-3 Years | 3-5 Years | 5-10 Years | 10+ Years |
| 4Q 2005 | 9.62 | 51.70 | 21.42 | 15.05 | 2.22 | n.a. | n.a. | n.a. | n.a. | n.a. |
| 1Q 2006 | 14.49 | 53.72 | 19.48 | 12.31 | 0 | 51.89 | 45.56 | 1.60 | 0.83 | 0.12 |
| 2Q 2006 | 13.15 | 51.29 | 20.60 | 13.38 | 1.52 | 47.54 | 49.34 | 2.01 | 1.09 | 0.02 |
| 3Q 2006 | 14.54 | 57.43 | 20.11 | 7.87 | 0.06 | 46.64 | 49.91 | 2.19 | 1.20 | 0.06 |
| 4Q 2006 | 10.75 | 55.49 | 22.64 | 10.45 | 0.68 | 42.72 | 53.57 | 2.28 | 1.36 | 0.07 |
| 1Q 2007 | 13.16 | 51.27 | 25.03 | 9.95 | 0.59 | 45.63 | 50.20 | 2.61 | 1.48 | 0.08 |
| 2Q 2007 | 12.62 | 52.20 | 21.65 | 12.80 | 0.74 | 45.05 | 50.70 | 2.46 | 1.69 | 0.11 |
| 3Q 2007 | 11.14 | 51.29 | 19.18 | 17.69 | 0.70 | 45.96 | 50.07 | 2.39 | 1.49 | 0.10 |
| 4Q 2007 | 5.06 | 60.22 | 23.91 | 10.15 | 0.66 | 47.53 | 48.57 | 2.41 | 1.32 | 0.17 |
| 1Q 2008 | 17.74 | 49.13 | 19.34 | 12.93 | 0.87 | 49.03 | 47.75 | 1.92 | 1.14 | 0.15 |

47.    In Table 4, we compare the distribution of the holdings of the Evergreen Ultra Short Opportunities Fund's holdings' maturities and durations compared to the fund's benchmark, the Lehman Brothers (BarCap) Government/Credit 0-2.5 Year Index. We can see in Panel A that the distribution of the durations of Evergreen and its benchmark are fairly similar. However, in Panel B, we can see that the distribution of maturities was significantly different between Evergreen and its stated benchmark. The Lehman Brothers Government/Credit 0-2.5 Year Index is comprised mainly of securities with maturities of up to 3 years, roughly half in securities with a maturity of 1 year and half in securities with a maturity of up to 3 years. Contrary to that, Evergreen held at time more than 30% of its portfolio in securities with maturities longer than 3 years. This highlights the fact that one can hold durations constant while having high maturities (thus high credit duration), and that duration alone is not sufficient to gauge the risk of an ultra-short fund.

## VII.    COMPOSITION OF THE INVESTENTS – DIVERSIFICATION

48.    As we showed in Figure 3, a substantial part of the Evergreen Ultra Short Opportunities Fund's investments were in various forms of mortgage- and asset-backed securities. This composition was not common to all ultra short funds. In Table 5, we calculate the composition of the mean and different quartiles of ultra short funds sorted by their holdings of private label MBS – whose holdings include Residential MBS and Commercial MBS and have significantly greater risks than any other types of securities.

**Table 5: Comparison of the Composition of Evergreen's Portfolio with Other Ultra Short Funds as of March 31, 2008**

|  | Private Label MBS | Agency RMBS | Corporate Bonds | ABS | Other |
|---|---|---|---|---|---|
| **Evergreen** | **59.29%** | **14.13%** | **10.93%** | **13.29%** | **2.35%** |
| **All Ultra Short Funds:** | | | | | |
| **75th Percentile** | 27.00% | 54.90% | 25.40% | 15.60% | 33.10% |
| **Mean** | **16.20%** | **36.20%** | **13.10%** | **9.60%** | **24.80%** |
| **50th Percentile** | 10.80% | 24.60% | 4.50% | 3.70% | 16.40% |
| **25th Percentile** | 0.00% | 8.60% | 0.00% | 0.00% | 7.20% |

49.     In March 2008, Evergreen Ultra Short Opportunities Fund was in the top decile of ultra short funds by MBS holdings with 59.3% of its investments in private label MBS. Evergreen Ultra Short Opportunities Fund thus had a substantially less diversified portfolio given this large concentration of private label MBS than its peer group funds. Moreover, other funds held more agency asset-backed securities and more securities labeled "other" including short term notes. The Fund's concentration in private label MBS resulted in much greater credit risk than the Fund's peers and resulted in its large credit losses in 2008 and the large decline in value for Evergreen in the first half of 2008.

## VIII.    LIQUIDITY

50.     By mid-2007, the asset and mortgage-backed securities in the U.S. were becoming more illiquid as increasing mortgage delinquencies created a glut of potential sellers and a shortage of potential buyers. As a result, the market for these securities became virtually non-existent and it resulted in a lack of market prices for mortgage backed securities. In Table 6 we describe the distribution of the sources of gains and losses for Evergreen Ultra Short Opportunities Fund between June 2007 and March 2008.

**Table 6: Decomposition by Source of Evergreen Ultra Short Opportunities Fund's Losses and Gains between 6/30/07 to 3/31/08.**

| Source | Percentage of Losses |
|---|---|
| ABS and MBS | 81.07% |
| CMBS | 6.97% |
| Bonds | 15.39% |
| Short Term Investments | 0.00% |
| Agency | -7.54% |
| Preferred Stocks | 4.11% |

51.　The gains primarily came from the agency-backed securities while the majority of the losses came from Evergreen Ultra Short Opportunities Fund's holdings of MBS and ABS securities. By mid 2007 the ABS and MBS were starting to become illiquid, as Brunnermeier (2009) argues "In July 2007, amid widespread concern about how to value structured products and an erosion of confidence in the reliability of ratings, the market for short-term asset-backed commercial papers began to dry up."[13]

52.　Comparing the prices that the Evergreen Ultra Short Opportunities Fund quoted for some of its holdings to the prices quoted by other funds illustrates that this liquidity hit some of Evergreen Ultra Short Opportunities Fund's holdings. For example, in December 2007, the Evergreen Ultra Short Opportunities Fund held a tranche of the Long Beach Asset Holdings asset back security "LBAHC 2005-WL1 N1". It valued it at $0.85 a share. SEI owned the same ABS[14] and valued it at $0.30 a share. One explanation for this wide disparity in the valuation is the fact that this was such an illiquid product that no registered transaction existed in the market to establish a clear market price. This would also indicate how difficult it would have been to sell this security.

[13] Page 8.
[14] http://sec.gov/Archives/edgar/data/804239/000093506908000499/simtnqcomb12_07.txt

53.     Another example is the asset-backed security "MASTR Asset Securitization Trust Series 2004-3 Class 5A1," that the Evergreen Ultra Short Opportunities Fund held, which was valued in December 2007 and in March 2008 at $1.02 a share." Blackrock[15] held a higher tranche (4A15) that gave it a higher priority for the cash flow and hence should be worth at least the same price or more. However, Blackrock priced the 4A[15] tranche at only $0.59 a share in January 2008. These examples highlight that many of the investments held by the Evergreen Ultra Short Opportunities Fund by the beginning of 2008 were likely to be very illiquid, making it very difficult for the fund to act as an ultra short fund.

## IX.   INFLATED VALUATIONS OF HOLDINGS AND VOLOATILITY

54.     There has been speculation in the financial press that a few mutual funds, hedge funds, and investment banks carried structured securities – especially mortgage backed securities – at significantly inflated values in 2007 and 2008. This behavior would have resulted in inflated mutual fund NAVs and the communication of misleading information about the quality of a fund's assets to its investors.

55.     To evaluate whether Evergreen was overpricing Evergreen Ultra Short Opportunities Fund, we compare Evergreen's valuations to valuations made by other mutual funds or otherwise reported by Bloomberg LP. The comparison for Eight MBS tranches held by the Evergreen Ultra Short Opportunities Fund in late 2007 or early 2008 are reported in Table 7.

---

[15] http://www.sec.gov/Archives/edgar/data/832327/000093041308002106/c52580_nq.htm

**Table 7: Examples of Inflated Valuations in the Evergreen Ultra Short Opportunities Fund**

| Deal Number | Evergreen Ultra Short Opportunities Fund Tranche | | | Alternative Tranche | | | Percent Overvalued |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Name | Valuation Date | Evergreen Valuation | Name | Valuation Date | Alternative Valuation | |
| 1 | B2 | 3/31/2008 | 102.51 | 2A1 | 3/31/2008 | 49.38 | 107.6% |
| 2 | 2A5 | 3/31/2008 | 98.35 | 2A2B | 3/31/2008 | 65.00 | 51.3% |
| 3 | 5A1 | 3/31/2008 | 101.20 | 1A1 | 3/31/2008 | 79.47 | 27.3% |
| 4 | 2B3 | 3/31/2008 | 103.56 | 1A2A | 3/31/2008 | 77.44 | 33.7% |
| 5 | B3 | 12/31/2007 | 100.04 | 2A7 | 12/31/2007 | 85.43 | 17.1% |
| 6 | N1 | 12/31/2007 | 84.57 | N1 | 12/31/2007 | 30.00 | 181.9% |
| 7 | M2 | 3/31/2008 | 86.68 | M2 | 3/31/2008 | 60.84 | 42.5% |
| 8 | M2 | 3/31/2008 | 100.01 | M2 | 3/31/2008 | 89.78 | 11.4% |
| | | | | | Average: | | 59.1% |

| Deal Number | Deal Name | Alternative Valuation Source |
| --- | --- | --- |
| 1 | Banc of America Mtge., Series 2004-H | Fidelity Puritan Fund |
| 2 | Bear Stearns Alternative Loan Trust, Series 2005-2 | Seligman Income & Growth Fund, Inc |
| 3 | Countrywide Home Loans, Series 2004-HYB8 | JPMorgan Ultra Short Term Bond Fund |
| 4 | Harborview Mtge. Loan Trust, Series 2005-8 | JPMorgan Real Return Fund JPMorgan Diversified Fund |
| 5 | Banc of America Mtge., Series 2004-G | Fidelity Advisor Intermediate Bond Fund |
| 6 | Long Beach Asset Holdings Corp., Series 2005-WL1 | SEI Institutional Managed Trust: Core Fixed Income Fund |
| 7 | American Gen. Mtge. Loan Trust, Series 2003-1 | Bloomberg |
| 8 | Empire Funding Home Loan Owner Trust, Series 1998-2 | Bloomberg |

56.     The last column in the upper half of Table 7 shows Evergreen's overvaluation as a percent of the alternative valuation.  The percentages indicate that Evergreen significantly overvalued many of the tranches

relative to the other mutual funds and Bloomberg.  The average magnitude of the overvaluation is 59.1% and several tranches were overvalued by considerably more.

57.    In cases where an alternative valuation for the tranche held by the Evergreen Ultra Short Opportunities Fund is not available, a valuation of a more senior tranche from the same deal is used.  This is a conservative approach, as the senior tranche should have a higher value than the junior tranche.

**Figure 5: Evergreen's Reported NAV vs. Navigant Adjusted NAV**



58.    Figure 5 shows Evergreen's reported daily NAV compared to Navigant's recalculated NAV for the Evergreen Ultra Short Opportunities Fund. The price inflation is shown to be consistent over time from February

2007 until the fund was liquidated in June 2008, and both NAVs eventually converged. Consistent with our estimation of NAV in Figure 5, the inflation calculated by Navigant became severe during 2008 – the worst scenario occurred on June 2, 2008 when Evergreen reported NAV was as high as $9.11 while the adjusted NAV calculated by Navigant was $7.66. This indicates that the majority of the illiquid holdings of the Evergreen Ultra Short Opportunities Fund were significantly overpriced. Only 16 days after June 2, 2008, after a time period when the Fund was heavily liquidating its assets, Evergreen reported its NAV of $7.48 agrees with Navigant's adjusted NAV $7.51. The steady decline of the adjusted per share NAV affirms that Evergreen set its NAV arbitrarily higher than other mutual funds. Furthermore, by smoothing its NAV, Evergreen concealed from the investors the high volatility of the true value of its asset.

59.    Had Evergreen adjusted its inflated NAV as Navigant, the NAV over time would have decreased significantly from mid-2007 to 2008 which violates the Fund's offering materials stating that "the Fund seeks to provide income consistent with preservation of capital and low principal fluctuation." The Fund's annualized monthly volatility would have increased from Evergreen's reported 1.7% to 4.4%, which corresponds to a 160% inflation in volatility. If this information was made available to the investors, they would have had the opportunity to withdraw their investment before it incurred larger losses. Furthermore, Evergreen's reported NAV declined so sharply between June 2, 2008 to June 18, 2008 that it did not leave enough time for investors to realize the severe damage to their holdings in this Fund.

## X.   CREDIT RISK

60.    An important metric that investors use to gauge the riskiness of a bond fund is to monitor the credit risk of the fund's investments. In Table 8 Panel B we present the reported average credit rating of the Evergreen Ultra Short Opportunities Fund for different points of time. We present its benchmark in Panel A. Average quality reported in Table 8 comes from Standard & Poor's credit ratings which "expresses the agency's opinion about the ability and willingness to an issuer, such as a corporation or state or city government, to meet its financial obligations in full and on time. Credit ratings can also speak to the credit quality of an individual debt issue, such as a corporate note, a municipal bond or a mortgage-backed security, and the relative likelihood that the issue may default." The S&P's credit rating ranges from AAA to D where AAA indicates 'extremely strong capacity to meet financial commitments' and D indicates 'payment default on financial commitments'. Credit rating of BBB suggests that the issuer has 'adequate capacity to meet financial commitments, but more subject to adverse economic conditions' and BBB- which is one level below BBB rating is 'considered the lowest investment grade by market participants'. A plus (+) or minus (-) sign next to a rating in the Average Quality column 'show relative standing within the major rating categories'.[16]

61.    Evergreen clearly had a lower average credit quality than its benchmark. The average credit quality was a notch below its benchmark, making the fund substantially riskier than investors could expect from the benchmark to which the fund had compared itself.

---

[16] Credit Ratings Definitions from S&P. http://www.standardandpoors.com/ratings/definitions-and-faqs/en/us

**Table 8: Reported average credit quality and credit composition of Evergreen and its benchmark.**

Panel A: Lehman Brothers Government/Credit 0-2.5 Year Index

| Date | Average Quality | US Treasury | Gov't Agency | AAA | AA | A | BBB & Below |
|---|---|---|---|---|---|---|---|
| 4Q 2005 | AAA | 55% | 22% | 3% | 5% | 11% | 5% |
| 1Q 2006 | AAA | 56% | 23% | 3% | 5% | 11% | 3% |
| 2Q 2006 | AAA | 54% | 21% | 4% | 9% | 8% | 3% |
| 3Q 2006 | AAA | 54% | 21% | 4% | 10% | 8% | 3% |
| 4Q 2006 | AAA | 54% | 21% | 4% | 10% | 8% | 3% |
| 1Q 2007 | AA+ | 50% | 19% | 4% | 14% | 10% | 3% |
| 2Q 2007 | AA+ | 0% | 0% | 74% | 14% | 9% | 3% |
| 3Q 2007 | AA+ | 0% | 0% | 73% | 14% | 9% | 4% |
| 4Q 2007 | AA+ | 0% | 0% | 73% | 14% | 10% | 3% |
| 1Q 2008 | AAA | 0% | 0% | 74% | 13% | 9% | 4% |

Panel B: Evergreen Ultra Short Opportunities Fund

| Date | Average Quality | US Treasury | Gov't Agency | AAA | AA | A | BBB & Below |
|---|---|---|---|---|---|---|---|
| 4Q 2005 | AA | 0% | 0% | 39% | 15% | 21% | 24% |
| 1Q 2006 | AA | 0% | 0% | 37% | 15% | 23% | 26% |
| 2Q 2006 | AA | 0% | 0% | 32% | 16% | 29% | 23% |
| 3Q 2006 | AA | 0% | 9% | 25% | 15% | 27% | 24% |
| 4Q 2006 | AA | 0% | 10% | 24% | 15% | 28% | 23% |
| 1Q 2007 | AA | 0% | 17% | 25% | 12% | 23% | 23% |
| 2Q 2007 | AA | 0% | 19% | 19% | 14% | 22% | 26% |
| 3Q 2007 | AA | 0% | 23% | 26% | 12% | 16% | 23% |
| 4Q 2007 | AA | 0% | 22% | 27% | 11% | 17% | 23% |
| 1Q 2008 | AA | 0% | 15% | 31% | 11% | 17% | 25% |

## XI.  CONCLUSIONS

62.    Evergreen Ultra Short Opportunities Fund lost more than 20% if its value in the second quarter of 2008 which precipitated its liquidation in June of that year. By the end of 2007, the holdings of the fund exhibited characteristics an investor would not expect to be associated with an ultra

short fund. The holdings had very long average maturities of more than 25 years and were heavily concentrated in asset- and mortgage-backed securities. Moreover, these securities were becoming more illiquid and Evergreen's reported average credit ratings overstated the fund's credit quality.

63.     Evergreen Ultra Short Opportunities Fund held a very long-term bond portfolio that was sold to investors as ultra-short term. Evergreen Ultra Short Opportunities Fund reported effective durations as short as nine months even though their 20- to 30- year average maturities would usually imply traditional durations of 10 to 15 years. This transformed Evergreen Ultra Short Opportunities Fund effectively to a short-term bond funds with credit default swaps written on long term bonds. The extraordinary credit risk resulting from holding long-tem, non-government securities caused Evergreen Ultra Short Opportunities Fund to suffer similar losses as a portfolio of 20- and 30-year bonds when credit spreads widened in 2008.

## XII.   Comments

64.     Our understanding of the facts in this case is based upon a preliminary assessment of the documents available to date.   We are continuing to review these documents.   To the extent that the facts of the case (after further review of the documents or further fact discovery) differ from our current understanding, our findings may change.

Edward S. O'Neal   10/10/2011

**Edward S. O'Neal, PhD**

Craig J. McCann   10/10/2011

**Craig J. McCann, PhD, CFA**



slcg  SECURITIES LITIGATION & CONSULTING GROUP

# Edward S. O'Neal, Ph.D.
## Principal

EDDIEONEAL@SLCG.COM
336-655-8718

## Key Qualifications

Dr. O'Neal is Principal, Securities Litigation and Consulting Group, Inc.  He is experienced in financial analysis, investment management and valuation. Dr. O'Neal has been recognized as a mutual fund industry expert and has been quoted in such popular financial press outlets as the *Wall Street Journal*, *USA Today*, *The Washington Post*, *Barron's*, *Business Week*, *Newsweek*, and *Consumer Reports*.

Prior to joining SLCG, Dr. O'Neal was an assistant professor of finance at the Babcock Graduate School of Management at Wake Forest University where he taught Investments and Portfolio Management, Applied Security Analysis and Corporate Finance to MBA students.  Dr. O'Neal's students have gone on to be employed by some of the largest and most prestigious investment management, investment banking and brokerage firms in the U.S.  He previously held tenure-track positions in the business schools of Auburn University and the University of New Hampshire.  Dr. O'Neal also served a one-year appointment as a visiting economic scholar at the U.S. Securities and Exchange Commission where he advised the Chief Economist on investment management regulation and policy issues. Dr. O'Neal has written expert witness reports and has testified in NASD, NYSE, and AAA arbitration hearings and in US and State Court cases.

Dr. O'Neal has published numerous articles in peer-reviewed journals, including the *Journal of Financial Economics*, the *Journal of Portfolio Management*, the *Financial Analysts Journal* and the *Journal of Investing*.  His research concentrates primarily on portfolio management with a special emphasis on mutual funds.  His papers have been presented at numerous conferences and seminars and have been distinguished as award-winners on different occasions.

Dr. O'Neal received a B.S. in Electrical Engineering from NC State University, an M.B.A. from Auburn University and a Doctorate degree in Finance from the University of Florida.

## Professional Experience

SECURITIES LITIGATION AND CONSULTING GROUP, INC.
2007 -          *Principal*
                Provides expert consulting and testifying in investment management and
                valuation disputes.


ACADEMIC WEALTH MANAGEMENT, A REGISTERED INVESTMENT ADVISOR
2003 - 2007    *Principal*


WAKE FOREST UNIVERSITY, WINSTON-SALEM, NC
2000 - 2007    *Assistant Professor of Finance*
                MBA courses taught:
                        Investments and Portfolio Management
                        Applied Security Analysis
                        Corporate Finance
                Additional responsibility:
                        Make final portfolio decisions for the Wachovia Securities Fund, a part of
                        the Wake Forest University Endowment.

AUBURN UNIVERSITY, AUBURN, AL
1998-2000      *Assistant Professor of Finance*
                Taught MBA and Undergraduate courses in Investments and Portfolio Management

U.S. SECURITIES AND EXCHANGE COMMISSION
1997-1998      *Senior Research Economist*
                Worked in the office of economic analysis providing support and expertise on
                mutual fund and investment management regulatory issues.  Provided analysis to
                facilitate enforcement actions.

UNIVERSITY OF NEW HAMPSHIRE
1993-1997      *Assistant Professor of Finance*
                Taught MBA and Undergraduate courses in Investments and Portfolio
                Management, Corporate Finance, and Financial Institutions


## Education

UNIVERSITY OF FLORIDA, GAINESVILLE
1993    Ph.D. Finance

AUBURN UNIVERSITY, AUBURN, AL
1989    Master of Business Administration

NC STATE UNIVERSITY, RALEIGH, NC
1986    B.S. Electrical Engineering

## Publications and Working Papers

"Commodities ETFs," with Ilan Guedj, Guohua Li and Craig McCann, 2010, available at www.slcg.com.

"Charles Schwab YieldPlus," with Geng Deng, Ilan Guedj and Craig McCann, 2010, available at www.slcg.com.

"What TiVo and JP Morgan teach us about Reverse Convertibles," with Geng Deng, Ilan Guedj, Guohua Li, Sherry Liu, Joshua Mallett, Craig McCann, 2010, available at www.slcg.com.

"The Risks of Preferred Stock Portfolios," with Ilan Guedj, Guohua Li and Craig McCann, 2010, available at www.slcg.com.

"What does a Mutual Fund's Term Tell Investors?," with Geng Deng and Craig McCann, *Journal of Investing,* forthcoming.

"Auction Rate Securities," with Craig McCann, 2010, available at www.slcg.com.

"What does a Mutual Fund's Average Credit Quality Tell Investors?," with Geng Deng and Craig McCann, *Journal of Investing,* forthcoming.

"Window Dressing in Bond Mutual Funds," with Matthew Morey, *Journal of Financial Research*, Summer, 2006.

"Institutional Management Fees," with Sherry Jarrell, *Journal of Investment Management,* First Quarter, 2004.

"Purchase and Redemption Patterns of US Equity Mutual Funds," *Financial Management,* Spring, 2004.

"Utility Sector Mutual Funds: Performance and Dividend Policy Implications," with Daniel Page, *Managerial Finance,* volume 28:12, 2002.

"Which Alternative Asset Class?  The diversification merits of high-yield debt, emerging market equity, and real estate," with L. Franklin Fant, *Journal of Investing,* Winter, 2001.

"Industry Momentum and Sector Mutual Funds," *Financial Analysts Journal,* July-August, 2000.

"Temporal Changes in the Determinants of Mutual Fund Flows," with L. Franklin Fant, *Journal of Financial Research*, Summer, 2000.

"Real Estate Mutual Funds: Abnormal Performance and Fund Characteristics," with Daniel Page, *Journal of Real Estate Portfolio Management*, July-September, 2000.

"Mutual Fund Share Classes and Broker Incentives," *Financial Analysts Journal*, September-October, 1999.

"Do You Need More than One Manager for a Given Equity Style? *Evidence from Mutual Funds*" with L. Franklin Fant, *Journal of Portfolio Management,* Summer, 1999.

"The Cost of Mutual Fund Distribution Fees," with Miles Livingston, *Journal of Financial Research*, Summer, 1998.

"The Cost of Market versus Regulatory Discipline in Banking," with Matthew Billett and Jon Garfinkel, *Journal of Financial Economics*, June, 1998. Reprinted in *The Regulation and Supervision of Banks,* M.J.B. Hall, ed., Edward Elgar Publishing, Inc., Northampton, MA.

"Why Electric Utility Stocks are Sensitive to Interest Rates," *Financial Review*, February, 1998.

"How Many Mutual Funds Constitute a Diversified Mutual Fund Portfolio?," *Financial Analysts Journal*, March-April, 1997.

"Mutual Fund Brokerage Commissions," with Miles Livingston, *Journal of Financial Research*, Summer, 1996.

## Honors and Awards

2002 Southern Finance Association Outstanding Paper in Investments Award for "Window Dressing in Bond Mutual Funds," with Matthew Morey.

1997-98 Securities and Exchange Commission Visiting Economic Fellowship.

The 1997 University of New Hampshire Whittemore School of Business and Economics Excellence in Teaching Award.

1995 Eastern Finance Association Outstanding Paper in Investments Award for "Mutual Fund Brokerage Commissions," with Miles Livingston.

## Research Referenced in

*Wall Street Journal (11/3/95, 9/9/97, 4/6/98, 2/5/02, 3/5/03, 7/2/03, 3/17/04, 4/1/04, 7/14/04)*
*Barron's (4/21/97), San Francisco Chronicle (12/31/03), Newsweek Magazine (2/16/04)*
*Chicago Tribune (5/18/97), Baltimore Sun (12/21/03), Washington Post (3/20/04, 7/4/04)*
*Los Angeles Times (7/15/97, 1/24/04), Chicago Sun-Times (2/2/04)*
*Wall Street Journal Report (television appearance, 10/18/97)*
*Alabama at Work on Alabama Public Television (television appearances, 11/13/98, 11/20/98, 8/29/99)*
*Mutual Fund Market News (12/12/02, 3/10/03), Money Management Executive (2/2/04)*
*Consumer Reports Money Adviser (6/03)*
*USA Today (1/23/04)*

## Testimony and Expert Reports – Court cases and selected Arbitration Cases

Direct and cross examination in *Knell v. Citigroup*, FINRA Arbitration Panel, August 2010 on preferred securities.

Deposition testimony in *Securities and Exchange Commission v. Symbol Technologies, et al.*, U.S. District Court, Eastern District of New York, April 2010, on stock price inflation, fraudulent earnings reports and wrongful gains on option transactions.

Direct and cross examination in *Fowler v. Morgan Keegan and Company.*, FINRA Arbitration Panel, April 2010 on closed end fund risk, high yield securities and structured finance.

Direct and cross examination in *Carmichael v. Merrill Lynch, et al.*, FINRA Arbitration Panel, March 2010 on preferred securities.

Direct and cross examination in *Green v. UBS*, FINRA Arbitration Panel, March 2010 on preferred securities.

Direct and cross examination in *Lee v. Morgan Keegan and Company.*, FINRA Arbitration Panel, March 2010 on preferred securities.

Direct and cross examination in *Wade v. Morgan Keegan and Company.*, FINRA Arbitration Panel, November 2009 on closed end fund risk, high yield securities and structured finance.

Deposition testimony in *Helmut F. Porkert v. Chevron Corporation.*, US District Court, District of South Carolina, Beaufort Division, May 2009 on executive stock option valuation.

Direct and cross examination in *Almas Temple v. M & T Bank.*, FINRA Arbitration Panel, September 2009 on portfolio risk and damages.

Direct and cross examination in *Canale v. Morgan Keegan and Company.*, FINRA Arbitration Panel, June 2009 on closed end fund risk, high yield securities and structured finance.

Direct and cross examination in *UPM v. Morgan Keegan and Company.*, FINRA Arbitration Panel, June 2009 on closed end fund risk, high yield securities and structured finance.

Direct and cross examination in *Ruch v. Morgan Keegan and Company.*, FINRA Arbitration Panel, June 2009 on closed end fund risk, high yield securities and structured finance.

Direct and cross examination in *Klosky v. Morgan Keegan and Company.*, FINRA Arbitration Panel, April 2009 on closed end fund risk, high yield securities and structured finance.

Direct and cross examination in *Hough v. Morgan Keegan and Company.*, FINRA Arbitration Panel, April 2009 on closed end fund risk, high yield securities and structured finance.

Direct and cross examination in *Muhlbauer v. Morgan Keegan and Company.*, FINRA Arbitration Panel, March 2009 on closed end fund risk, high yield securities and structured finance.

Trial and Deposition testimony in *Re American Funds Mutual Fund Fee Litigation.*, US District Court, Central District of California, Western Division, 2009 on economies of scale and 12b-1 fees in mutual fund management.

Deposition testimony in *City of Coral Gables Retirement System v. UBS Financial Services, et al.*, Circuit Court of the 11th Judicial Circuit, Miami – Dade County, Florida, March 2009, on portfolio risk and return.

Direct and cross examination in *Kopel v. Morgan Keegan and Company.*, FINRA Arbitration Panel, February 2009 on closed end fund risk and structured finance.

Direct and cross examination in *Goldstein v. Emmett Larkin, Inc.*, FINRA Arbitration Panel, December 2008 on suitability and portfolio risk.

Deposition Testimony and Expert report in *Charles Fisher, et al v. ABB Inc.*, U.S. District Court, Western District of Missouri, November 2008, on 401(k) plan design.

Deposition Testimony and Expert report in *Beasely, et al v. International Paper Company*, U.S. District Court, Southern District of Illinois, October 2008, on 401(k) plan design.

Deposition Testimony and Expert report in *Anthony Abbott, et al v. Lockheed Martin Corporation*, U.S. District Court, Southern District of Illinois, September 2008, on 401(k) plan design.

Deposition Testimony and Expert report in *Beverly Kanawi, et al v. Bechtel Corporation*, U.S. District Court, Northern District of California, San Francisco Division, September 2008, on 401(k) plan design.

Deposition Testimony and Expert report in *RE Mutual Funds Investment Litigation, RS Funds Sub-track*, U.S. District Court, District of Maryland, June 2008, on mutual fund market timing.

Deposition Testimony and Expert report in *RE Mutual Funds Investment Litigation, Putnam Sub-track*, U.S. District Court, District of Maryland, May 2008, on mutual fund market timing.

Deposition Testimony and Expert report in *RE Mutual Funds Investment Litigation, Scudder Sub-track*, U.S. District Court, District of Maryland, May 2008, on mutual fund market timing.

Deposition Testimony and Expert report in *Gary Spano, et al v. The Boeing Company, et. al.*, U.S. District Court, Southern District of Illinois, April 2008 and December 2007, on mutual fund selection for employee benefits plans.

Deposition Testimony and Expert report in *David S. Taylor, et al v. United Technologies Corporation*, U.S. District Court, District of Connecticut, December 2007, on excessive fees charged to 401(k) plan participants.

Expert Report in *Securities and Exchange Commission v. Mitchell Drucker, et al.*, U.S. District Court, Southern District of New York, November 2007, on insider trading.

Deposition Testimony and Expert report in *Dennis Hecker, et al v. Deere and Company, Fidelity Management Trust Company and Fidelity Management and Research Company*, U.S. District Court, Western District of Wisconsin, June 2007, on excessive fees charged to 401(k) plan participants.

Deposition testimony in *Susan Strigliabotti, et al. v. Franklin Resources, Inc. et al.*, US District Court, Northern District of California, May 2007 on economies of scale and excessive fees in mutual fund management.

Deposition testimony in *Nicholas M. and Ann R. Salerno v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, State Court of South Carolina, February 2007 on suitability and risk analysis.

Deposition testimony in *John Gallus, et al. v. Ameriprise Financial, Inc. (F/K/A American Express Financial Corp) et al.*, US District Court, District of Minnesota, January 2007 on economies of scale, excessive fees and 12b-1 fees in mutual fund management.

Deposition testimony in *Gerard Boeckman, et al. v. A.G. Edwards, Inc.*, US District Court, Southern District of Illinois, December 2006 on excessive fees charged to 401(k) plan participants.

Direct and cross examination in *Schunmann v. Sowa*, NASD Arbitration Panel, September 12, 2006 on portfolio risk, diversification, fiduciary responsibility of an RIA.

Deposition testimony in *Walter Sins, et al. v. Janus Capital Management, LLC, et al.*, and *Michael Fleisher, v. Janus Capital Management, LLC, et al.*, US District Court, District of Colorado, August 2006 on economies of scale and excessive fees in mutual fund management.

Deposition testimony in *Jerry N. Jones, et al. v. Harris Associates, L.P.*, US District Court, Northern District of Illinois, Eastern Division, May 2006 on economies of scale and excessive fees in mutual fund management.

Deposition and rebuttal deposition testimony in *Barbara D. Williams, et al. v. Waddell and Reed Investment Management Company et al.*, US District Court, Western District of Missouri, Central Division, March and July 2006 on economies of scale, excessive fees, and 12b-1 fees in mutual fund management.

Deposition and rebuttal deposition testimony in *Robert Baker, et al. v. American Century Investment Management, Inc. and American Century Investment Services, Inc.*, US District Court, Western District of Missouri, Central Division, December, 2005 and March, 2006 on economies of scale in mutual fund management.

Direct and cross examination in *Barwise v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* NASD Arbitration Panel, January 10, 2006 on suitability and portfolio risk.

Direct and cross examination in *Sprague, et. al.  v. Morgan Stanley Dean Witter Inc.,* NASD Arbitration Panel, November 14, 2005 on suitability and mutual fund share classes.

Direct and cross examination in *CCJ Partnership v. Goldman Sachs.,* AAA Arbitration Panel, October 18, 2005 on suitability, portfolio management and risk analysis.

Direct and cross examination in *Sischo v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* NASD Arbitration Panel, September 20, 2005 on suitability and portfolio risk.

Direct and cross examination in *Lescroart v. Goldman Sachs.,* NASD Arbitration Panel, May 17, 2005 on suitability.

Direct and cross examination in *Smart  v. Morgan Stanley Dean Witter Inc.,* NASD Arbitration Panel, May 10, 2005 on suitability.

Direct and cross examination in *Andrzejewski. v. Morgan Stanley Dean Witter Inc.,* NASD Arbitration Panel, April 20, 2005 on suitability.

Direct and cross examination in *Lambert. v. Southwest Securities Inc.,* NASD Arbitration Panel, April 7, 2005 on suitability.

Direct and cross examination in *Joanne Desrosiers et. al. v. Robert W. Baird, Inc..,* NASD Arbitration Panel, March 29, 2005 on portfolio risk.

Direct and cross examination in *Bernard Friesmuth v. Prudential Equity Group, LLC.,* NASD Arbitration Panel, March 15, 2005 on portfolio risk.

Direct and cross examination in *Mary Jane Schwartz v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* NASD Arbitration Panel, December 7, 2004 on suitability and excessive trading.

Direct and cross examination in *Wormser v. Salomon Smith Barney,* NASD Arbitration Panel, November 16, 2004 on suitability.

Direct and cross examination in *Rooney v. Wachovia Securities,* NASD Arbitration Panel, November 4, 2004 on misuse of B-share mutual funds.

Direct and cross examination in *O'Leary v. Scott and Stringfellow,* NASD Arbitration Panel, September 29, 2004 on suitability.

Direct and cross examination in *Henrietta Bennett v. Wachovia Securities,* NASD Arbitration Panel, August 30, 2004 on suitability.

Deposition testimony in *Annie Hyde Johnson, Linda D. Johnson and Mary Anne Howland v. John Hancock Funds, LLC, et al.,* Chancery Court for Davidson County, Tennessee, August 2004 on suitability and misuse of B-share mutual funds.

Direct and cross examination in *Henson. v. Morgan Stanley Dean Witter Inc.,* NASD Arbitration Panel, July 28, 2004 on suitability and improper sale of Class B mutual funds.

Direct and cross examination in *Glen and Krista Hansen v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* NASD Arbitration Panel, July 13, 2004 on suitability.

Direct and cross examination in *Michael Brim v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* NASD Arbitration Panel, June 17, 2004 on suitability.

Direct and cross examination in *Tena Collins v. Credit Suisse Asset Management,* AAA Arbitration Panel, April 16, 2004 on exchange funds.

Direct and cross examination in *Teshame Bokan v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, NASD Arbitration Panel, March 16, 2004 on suitability.

Direct and cross examination in *Erik Corritt v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, NASD Arbitration Panel, February 2, 2004 on suitability and excessive trading.

Direct and cross examination in *Jorge Karpati and Ana Maria Davies v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, NASD Arbitration Panel, January 19, 2004 on suitability.

Direct and cross examination in *Alvin L. Starks v. Prudential Securities Inc.*, NASD Arbitration Panel, December 17, 2003 on suitability.

Direct and cross examination in *Securities and Exchange Commission v. IFG Network Securities, Inc. et.al.*, SEC Administrative Proceeding, November 18-19, 2003 on improper sale of Class B mutual funds.

Direct and cross examination in *Edwin Kornblue, D.D.S., P.A., et al. v. Morgan Stanley Dean Witter Inc.*, NASD Arbitration Panel, November 4, 2003 on suitability and improper sale of Class B mutual funds.

Direct and cross examination in *Marjorie Alberg v. Morgan Stanley Dean Witter.*, NYSE Arbitration Panel, September 4, 2003 on suitability.

Direct and cross examination in *Annette Adams v. Salomon Smith Barney Inc.*, NYSE Arbitration Panel, April 30, 2003 on suitability.

Direct and cross examination in *Paul Winer and Freight Express. v. GBI Capital Partners*, NASD Arbitration Panel, March 12, 2003 on excessive trading and suitability.

Direct and cross examination in *Linda Bokor, et. al. v. Summit Equities, et. al.*, NASD Arbitration Panel, February 11, 2003 on suitability.

Direct and cross examination in *Robert and Elaine Johnson v. Morgan Stanley Dean Witter and Mr. Riley Hughes* NASD Arbitration Panel, September 24, 2002 on suitability.

Direct and cross examination in *Taylor v. National Securities, Inc., et. al.* NASD Arbitration Panel, October 14, 2001 on excessive trading and suitability.

Expert report in *Allison Hines, et. al vs. ESC Strategic Funds and SunTrust Equitable Securities Corporation*, U.S. District Court, Middle District of Tennessee, Nashville Division, May 16, 2000 on breach of fiduciary duty by mutual fund directors.

August 2010

slcg   SECURITIES LITIGATION & CONSULTING GROUP

# Craig McCann, Ph.D., CFA
## Principal

CRAIGMCCANN@SLCG.COM
703-246-9381

## Key Qualifications



Dr. McCann is Principal, Securities Litigation and Consulting Group, Inc. He is experienced in securities class action litigation, financial analysis, investment management and valuation. Dr. McCann has taught graduate investment management at Georgetown University and at the University of Maryland, College Park. He held a Series 7 and a Series 63 NASD registration and is an NASD-R arbitrator. Dr. McCann is a Chartered Financial Analyst.

Dr. McCann received a B.A. and an M.A. in Economics from the University of Western Ontario and a Doctorate degree in Economics from the University of California, at Los Angeles. Dr. McCann's fields of graduate study were industrial organization, mathematical economics and information and uncertainty. His dissertation examined the incidence of golden parachutes and their effect on stock prices. After receiving his doctorate degree, Dr. McCann taught economics at the University of South Carolina.

Prior to founding Securities Litigation and Consulting Group, Dr. McCann was Director at LECG and Managing Director, Securities Litigation at KPMG. Dr. McCann was a senior financial economist at the Securities and Exchange Commission. There he focused on investment management issues and contributed financial analysis to numerous investigations involving alleged insider trading, securities fraud, personal trading abuses and broker-dealer misconduct.

Dr. McCann was a Senior Consultant at a consulting firm where he managed projects involving alleged securities fraud, insider trading, and market manipulation. These projects included analysis of materiality, causation, damages and class certification. In addition, he has consulted on transfer pricing, breach of contract, labor and antitrust cases as well as on various regulatory matters.

Dr. McCann has published in the *Journal of Investing, the Journal of Index Investing* the *Journal of Legal Economics,* the *Journal of Applied Corporate Finance* and the *Harvard Business Review.* He has testified in state and federal court, in NASD, NYSE, JAMS and AAA arbitration proceedings and before the United States Senate and has been quoted in the *New York Times, the Wall Street Journal, the Washington Post, Money Magazine, Kiplinger Retirement Report* and *Crain's Investment News.*

## Professional Experience

SECURITIES LITIGATION AND CONSULTING GROUP, INC.
2000 -           *Principal*
                 Provides expert consulting and testifying in securities class actions, investment management,
                 labor and valuation disputes.

Navigant Consulting, Inc. / LECG
1999-2000        *Director*
                 Provided expert consulting and testifying in complex litigation.

KPMG llp
1997-1999        *Managing Director, Securities Litigation*
                 Directed projects in complex litigation.

UNIVERSITY OF MARYLAND, COLLEGE PARK
1995-1998        *Adjunct Professor of Finance*
                 Taught graduate investment management.

GEORGETOWN UNIVERSITY
1996             *Adjunct Professor of Finance*
                 Taught graduate investment management.

NATIONAL ECONOMIC RESEARCH ASSOCIATES
1995-1997        *Senior Consultant*
                 Directed projects in the economics of complex securities litigation.

VIRGINIA TECH
1995-1997        *Adjunct Professor of Economics*
                 Taught graduate managerial economics.

U.S. SECURITIES AND EXCHANGE COMMISSION
1994-1995        *Professional Fellow and Acting Associate Chief Economist for Policy*
                 Reviewed Commission initiatives and coordinated research in support of Chief Economist.
                 Conducted research into portfolio performance, personal trading and quantitative risk measures.
                 Provided financial analysis in support of enforcement.

ECONOMIC ANALYSIS CORPORATION
1993-1994        *Senior Economist*
                 Directed projects involving analysis of vertical and horizontal practices, mergers, and general
                 business damages.

U.S. SECURITIES AND EXCHANGE COMMISSION
1992-1993        *Academic Fellow*
                 Conducted research into the valuation and expensing of employee stock options, reviewed policy
                 proposals and supported enforcement actions.

UNIVERSITY OF SOUTH CAROLINA, COLLEGE OF BUSINESS
1987-1992        *Assistant Professor*
                 Taught economics, antitrust and public policy towards business at undergraduate, masters, MBA and
                 doctorate levels.

## Education

UNIVERSITY OF CALIFORNIA, LOS ANGELES
1989        Ph.D., Economics
1986        M.A., Economics

UNIVERSITY OF WESTERN ONTARIO
1983        M.A., Economics
1982        B.A., Economics

Chartered Financial Analyst
Series 7 NASD Registration (1997-1999)
Series 63 NASD Registration (1997-1999)

## Professional Activities

American Economic Association
American Finance Association
Chartered Financial Analyst Institute
Washington Society of Investment Analysts

## Testimony, Depositions, Reports and Affidavits

### Federal Court

*Vida F. Negrete, et al v. Allianz Life Insurance Company,* United States District Court, Central District of California, Case No: CV 05-6838
> Declaration, September 15, 2011.
> Deposition, May 27, 2011.
> Supplemental Declaration, March 31, 2011
> Deposition, October 29, 2008.
> Declaration, July 25, 2008.
> Second Supplemental Declaration, September 18, 2006.
> Supplemental Declaration, July 16, 2006.
> Declaration, May 26, 2006.

*In re: Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation,* United States District Court, Southern District of New York, Civil Action 09-MD-2072 (MGC)
> Rebuttal Expert Report, September 14, 2011.
> Deposition, August 2, 2011.
> Expert Report, June 30, 2011.

*Susan Antilla v. L. J. Altfest & Co., Inc.,,* United States District Court, District of Connecticut, No. 3:09-CV-2128-VLB.
> Expert Report, August 12, 2011.

*In re : International Management Associates, LLC,* United States Bankruptcy Court, Northern District of Georgia, Atlanta Division, Case No. 06-62966.
> Expert Report, July 7, 2011.

*Thomas Todd Martin, III et al v Wachovia Bank, NA et al,* United States District Court, Northern District of Alabama, Case No.: CV-09-902464
 Expert Report, June 17, 2011.

*Corporate America Credit Union v Joseph Herbst, et al ,* United States District Court, Northern District of Alabama, Case No.: CV-09-J-2126-S
 Rebuttal Expert Report, May 23, 2011.

*Sierra-Sonora Enterprises, Inc. et al v Domino's Pizza, LLC et al,* United States District Court, District of Arizona, NO. 2:10-cv-00105-JAT
 Expert Report, August 24, 2010.

*Houston Police Officer's Pension System v. State Street Bank and Trust Company and State Street Global Advisors, Inc.* United States District Court, Southern District of Texas, Houston Division, No. 08-05442-RJH
 Declaration, July 1, 2010.
 Deposition, May 10, 2010.
 Rebuttal Expert Report, March 19, 2010
 Expert Report, January 15, 2010.

*Akanthos Capital Management, LLC, et al. v CompuCredit Holdings Corporation,* United States District Court, Northern District of Georgia, Atlanta Division, No. 1:10-CV-844-TCB
 Declaration, May 7, 2010.

*Securities and Exchange Commission v. Kederio Ainsworth et al,* United States District Court, central District of California, Eastern Division, Civil Action No. EDCV08-1350 VAP(OPx)
 Deposition, February 2, 2010.
 Supplemental Expert Report, January 5, 2010
 Expert Report, December 11, 2009.

*Florence Smith v National Western Life Insurance Company* United States District Court, Middle District of Pennsylvania, Civil Action no. 08-2119
 Expert Report, January 4, 2010.

*City of Cedar Rapids and Cedar Rapids/Linn county Solid Waste Agency v. Wells Fargo Brokerage Services, LLC.* United States District Court, Northern District of Iowa, Cedar Rapids Division, No. ____
 Rebuttal Expert Report, December 2, 2009.
 Expert Report, September 3, 2009.

*Daniel G. Schmidt, III v Wachovia Bank, N.A.* United States District Court, Southern District of Texas, Houston Division, No. 08-05442-RJH
 Deposition, February 25, 2010.
 Expert Report, October 30, 2009.

*In Re Midland National Insurance Co. Annuity Sales Practices Litigation,* United States District Court, Central District of California, No. MDL No. 07-1825 CAS (MANx).
 Deposition, September 12, 2009.
 Supplemental Declaration, June 19, 2009.
 Deposition, January 8, 2008.
 Declaration, October 31, 2007.
 Deposition, July 27, 2007.
 Declaration, July 16, 2007.
 Declaration, July 2, 2007.
 Declaration, June 29, 2007.

*Securities and Exchange Commission v. Biovail Corporation et al*, United States District Court, Southern District of New York, Civil Action No. 08 CIV 02979 (LAK)
Expert Report, July 2, 2009.

*CountryMark Cooperative, LLP, v Morgan Keegan & Company, Inc.*, United States District Court, Southern District of Indiana, Case No: 1:08-cv-00118-RLY-JMS
Expert Report, April 6, 2009

*Amy J. Straily et al v UBS Financial services, Inc.*, United States District Court, District of Colorado, Case No: 07-cv-00884-REB-KMT
Deposition, February 22, 2009.
Supplemental Expert Report, January 16, 2009
Expert Report, January 16, 2009

*Securities and Exchange Commission v. Competitive Technologies, et al*, United States District Court, District of Connecticut, Civil Action No. 304-CV-1331 JCH.
Trial Testimony, October 7, 2008.
Trial Testimony, November 15, 2007.
Deposition, February 22, 2006.
Expert Report, January 30, 2006.

*In Re American Equity Annuity Practices and Sales Litigation*, United States District Court, Central District of California, No. MDL No. CV-05-6735-CAS (MANx).
Deposition, July 24, 2008.
Declaration, April 21, 2008.

*In re Alstom SA Securities Litigation*, United States District Court, Southern District of New York, Case No: 03-CV-6595 (VM).
Affidavit, January 4, 2008.

*Vida F. Negrete, et al v. Fidelity and Guaranty Life Insurance Company*, United States District Court, Central District of California, Case No: CV 05-6837.
Declaration, January 22, 2008.
Declaration, December 26, 2007.
Deposition, August 28, 2007.
Declaration, July 23, 2007.

*Youxin (Kevin) Ma et al v Merrill Lynch & Co., Inc. and Irene S. Ng*, United States District Court, Southern District of New York, Case No. 06 CV 15497.
Expert Report, December 24, 2007.

*Dale Sakai v Merrill Lynch Life Insurance Company*, United States District Court, Northern District of California, Case No: CV 06-2581.
Deposition, December 10, 2007.
Expert Report, October 26, 2007.

*Securities and Exchange Commission v. Louis E. Rivelli, et al*, United States District Court, District of Colorado, Civ. 05-CV-1039 RPM-MJW
Deposition, March 3, 2008.
Expert Report, October 8, 2007.

*Kevin Lamkin, et al v. UBS PaineWebber, Inc.*, United States District Court, Southern District of Texas, Civil Action No. H-02-0851
Deposition, February 28, 2007.
Expert Report, June 1, 2006.

*Carmen Migliaccio, et al. v. Midland National Life Insurance Company,* United States District Court, Central District of California, Case No: CV 05-6838.
> Deposition, February 13, 2007.
> Declaration, December 28, 2006.

*Gary Yokoyama, et al. v. Midland National Life Insurance Company,* United States District Court, District of Hawaii, Case No. 05-00303 MS KSC.
> Deposition, November 20, 2006.
> Declaration, November 10, 2006.
> Declaration, May 4, 2006.

*Samuel Cooper, et al v. Pacific Life Insurance Company et al,* United States District Court, Southern District of Georgia, Case No. CV 203-131
> Deposition, September 12, 2006.
> Expert Report, July 5, 2006.

*United States of America v. Jamie Olis,* United States District Court, Southern District of Texas, Criminal Number H-03-217.
> Expert Report, December 23, 2005.

*David Henderlight and Christine Henderlight v AmSouth Bank,* United States District Court, Eastern District of Tennessee, Knoxville Division Civil Action No: 3:02-CV-169.
> Deposition Testimony, July 7, 2005.
> Expert Report, January 18, 2005.

*United States of America v. Bernard J. Ebbers* United States District Court, Southern District of New York, Docket S4 02 Cr. 1144 (BSJ).
> Expert Report June 8, 2005.

*In Re: Kaiser Group International, Inc. et al.,* United States Bankruptcy Court for the District of Delaware, Case Nos. 00-2263 to 00-2301 (MFW).
> Declaration, May 29, 2005.

*United States of America v. Shawn P. McGhee* United States District Court, District of Eastern Virginia, Docket 04-495.
> Expert Report March 4, 2005.

*Walnut Capital Partners et al. v Key Bank / McDonald Investments, Inc.,* United States District Court, Western District of Pennsylvania, Case No. 03-CV-0284.
> Affidavit, February 14, 2005.
> Deposition Testimony, September 8, 2004.
> Supplemental Expert Report July 2, 2004
> Expert Report June 1, 2004

*Securities and Exchange Commission v. David Gane et al* United States District Court, Southern District of Florida Miami Division, Civil Action No:03-61553.
> Trial Testimony, December 10, 2004.
> Deposition Testimony August 2, 2004.
> Expert Report July 20, 2004.

*Simon Falic et al v Legg Mason Wood Walker, Inc.,* United States District Court, Southern District of Florida, West Palm Beach Division Civil Action No. 03-80377.
> Expert Report, October 19, 2004.

*Securities and Exchange Commission v. David W. Butler* United States District Court Western District of Pennsylvania, Civil Action No. 00-1827.

    Trial Testimony September 21, 2004.
    Expert Report January 9, 2003.
    Deposition Testimony, October 26, 2001.
    Expert Report October 15, 2001.

*United States of America v. Franklin C. Brown* United States District Court, Middle District of Pennsylvania CR-02-146-02.

    Trial Testimony, August 6, 2004.
    Expert Report July 19, 2004.

*United States of America v. Jeffry R. Anderson* United States District Court, District of Eastern Virginia, Docket 1:03-CR-444.

    Expert Report January 2, 2004.

*United States of America v. Scott H. Miller* United States District Court, District of Eastern Virginia, Docket No. 03-443-A.

    Expert Report December 3, 2003.

*In re: World Access, Inc. Securities Litigation*, United States District Court, Northern District of Georgia Atlanta Division, 1:99-CV-0043-ODE.

    Rebuttal Expert Report August 8, 2003.
    Expert Report June 27, 2003.

*In re: Pediatric Services of America, Inc. Securities Litigation*, United States District Court, Northern District of Georgia Atlanta Division.

    Expert Report November 19, 2001.
    Affidavit, October 13, 2000.

*United States of America v. Paul F. Polishan* United States District Court, Middle District of Pennsylvania No.3: CR-96-274.

    Trial Testimony November 15, 2001.
    Expert Report November 5, 2001.

*Kantishna Mining Company, Inc. et al v. Gail Norton et al* United States District Court, District of Alaska F98-007 CV.

    Declaration, June 1, 2001.
    Expert Report and Declaration, April 17, 2001.

*H. James Griggs et al v. Pace American Group, Inc., Coopers & Lybrand L.L.P., et al* United States District Court, District of Arizona.

    Trial Testimony, March 13, 2001.
    Deposition Testimony, December 4, 2000.
    Expert Report, November 14, 2000.

*David Lesser, et al v Quadramed Corporation* United States District Court, District of Eastern Virginia No: 00 Civ. 606-A.

    Expert Report, September 8, 2000.

*John Tenaglia and The Tenaglia Family Partnership v. A.F. Best Securities et al*, United States District Court, Southern District of Florida.

    Expert Report, March 31, 2000.

*UMG Recordings, Inc. et al v. MP3.com, Inc.*, United States District Court, Southern District of New York, No:00 Civ. 0472.

    Expert Report, August 8, 1999.

*Jonathan Bekhor et al v. Josephthal Holdings et al*, United States District Court, Southern District of New York, No: 96 Civ. 4156.
>    Deposition Testimony, September 30, 1999.
>    Expert Report, August 20, 1999.

*John Shane and Beth Goodman v. Tokai Bank*, United States District Court, Southern District of New York, No:96 Civ. 5187.
>    Trial Testimony, October 23, 24 1997.
>    Deposition Testimony, October 19, 1997.
>    Expert Report, October 18, 1997.

## State Court

*In Re International Textile Group, Inc. Merger Litigation*, State of South Carolina, County of Greenville, Court of Common Pleas, C.A. No. 2009-CP-23-3346.
>    Expert Report, July 20, 2011.
>    Deposition Testimony, May 13 and May 14, 2011
>    Expert Report, April 1, 2011.

*Pursuit Partners, LLC and Pursuit Management, LLC v. UBS AG Securities LLC et al,* Superior Court, Judicial District of Stamford-Norwalk at Stamford No. X05-CV-08-4013452-S
>    Deposition Testimony, June 7, 2011.
>    Expert Report, May 5, 2011.

*Petition of Bank One Trust Company, N.A. For Instruction and Construction of Trust*, District Court, Tulsa County, State of Oklahoma, Case No. PT-2006-013
>    Trial Testimony, April 19 and May 19, 2011.
>    Supplemental Expert Report, November 16, 2009.
>    Deposition Testimony, December 15, 2008.
>    Expert Report, June 13, 2008.

*BB&T Asset Management, Inc., et al v Frederick V. Martin,* Virginia Circuit Court for the City of Norfolk Case No. CL07006153-00,
>    Expert Report, August 15, 2008.

*Ross Gampel et al v Northern Trust Bank of Florida, Circuit Court, Broward County,* CACE 05-18352 CA 31,
>    Deposition Testimony, April 17, 2008.

*Cynthia Weiss v Robert Sturman, et al* In The Court of Common Pleas of Philadelphia County, August Term, 2006 NO. 3332
>    Expert Report January 23, 2008.

*Salix Affiliates et al v Lattimore, Black, Morgan & Cain, P.C.*, Chancery Court, Tennessee Case No. 06-1500-IV
>    Deposition Testimony, December 5, 2007.
>    Expert Report, September 21, 2007.

*Tafazzoli Family Limited, et al v. TradeStation Group, Inc. et al* Circuit Court, Miami-Dade County, CACE 03-19815 CA 40.
>    Deposition Testimony, September 18, 2007.

*Glenn Wall, et al v. James F. Bottoms, et al* State Court of Fulton County, Georgia, Case No. 06VS091950F.
>    Deposition Testimony, June 19, 2007.

*Andrew A. Allen Family Limited Partnership v. TradeStation et al* Circuit Court, Broward County, CACE 03-014229.
   Trial Testimony, May 4, 2007.
   Deposition Testimony, February 20, 2007.

*Remmora Investments v Robert Orr*, Circuit Court of Fairfax County, VA No. 187948
   Trial Testimony, November 20, 2006.
   Deposition Testimony, October 9, 2006.

*Gerardo Martin Demerutis Chaul, et al, v. Mohammed Abu-Ghazaleh, et al* Circuit Court, Miami-Dade County, CACE 02-31670 CA 32.
   Trial Testimony, November 6, 2006.
   Deposition Testimony, October 11, 2005.
   Expert Report July 15, 2005.

*Calomiris v Calomiris*, District of Columbia Superior Court, Civil Action No. 05-0004062
   Deposition Testimony, October 11, 2006.

*Jack Holtsberg and Elaine M. Holtsberg v. Citigroup et al* Circuit Court, Palm Beach County, CACE 50 2004CA000837
   Affidavit, August 28, 2006.

*Majestic Enterprises v. Northern Trust Bank of Florida* Circuit Court, Broward County, CACE 03-19243.
   Deposition Testimony, July 26, 2006.

*San Carlos Apache Tribe Government Employee's 401(K) v. A. Thomas Ullmann et al*, Superior Court of Arizona, Case No. CV2005-005942.
   Supplemental Expert Report, July 24, 2006.
   Expert Report, June 30, 2006.

*Patrick T. Noonan and Nancy J. Noonan v. Hackett Investment Advisors, Inc. et al*, Superior Court of Arizona, No. CV2005-010186.
   Deposition Testimony, June 21, 2006.

*Stephen F. Johnston et al v Baran Group et al*, Superior Court of Fulton County, State of Georgia, Case No. 2004CV89313.
   Deposition Testimony, June 28, 2006.
   Expert Report June 9, 2006.

*Carol Pomerantz et al v. Northern Trust Bank of Florida, et al* Circuit Court, Broward County, CACE 02-015246-08,
   Deposition Testimony, October 5 and October 12, 2005.

*Carney Family Irrevocable Trust of 1999 v State Street Global Advisors, et al* Superior Court of Commonwealth of Massachusetts, CIV. 03-2716 BLS 2
   Deposition Testimony, June 21, 2005.

*Trust Estate of Emanuel Rosenfeld, Settlor* In The Court of Common Pleas of Philadelphia County, Orphans' Court Division, O.C. NO. 1664 IV OF 2002
   Trial Testimony, May 3, 2005.
   Expert Report April 8, 2005.

*Evi U. Chamness et al v. Northern Trust Bank of Florida, et al* Circuit Court, Broward County, CACE 03-001939-12,
   Deposition Testimony, February 17 and February 18, 2005.
   Affidavit, November 19, 2004.

*Ponswamy Rajalingham et al v Urecoats International, Inc. et al*, Circuit Court, Broward County, CACE 02-009324,
     Deposition Testimony, March 1, 2004.

*William J. Kerley v. McCullough, Sherrill LLP, et al* State Court of Fulton County, State of Georgia, Civil Action No. 02VS028870E,
     Affidavit, March 12, 2004.
     Deposition Testimony, September 11, 2003.

*Plantation Sales, Inc. dba Plantation Nissan/Volvo v Northern Trust Bank of Florida*, Circuit Court, Broward County, CACE 02-006761 (05),
     Deposition Testimony, February 19, 2004.

*Century Business Services v Victor C. Moore*, Court of Common Pleas, Cuyahoga County, Case No. 469291,
     Trial Testimony, February 9, 2004.
     Deposition Testimony, January 19, 2004.

*Michael B. Holt, as Trustee of the Mark E. Munro Charitable Remainder Unitrust, v. Merrill Lynch Trust Co., et al* Superior Court of New Jersey, Docket # ESX-L-6713-02
     Deposition Testimony, January 15, 2004.
     Expert Report, September 8, 2003.

*Jack E. Forbes v. A.G. Edwards, et al* Circuit Court of Monongalia County, State of West Virginia, Civil Action No. 01-C-325
     Trial Testimony, December 11, 2003.
     Deposition Testimony, September 30, 2003.

*In re: Thompsons vs. Glenmede Trust Company*, Court of Common Pleas Philadelphia County, Pennsylvania February Term 2002, 004428
     Expert Report, August 25, 2003.

*In re: Moutsatsos vs. Glenmede Trust Company*, Court of Common Pleas Philadelphia County, Pennsylvania May Term 2001, 003659
     Expert Report, July 7, 2003.

*Nancy J. Needham et al v. Advanced Communications et al* Circuit Court of Florida, Fifteenth Judicial Circuit, Case No.: 00-0067-CA-HDH
     Affidavit, May 15, 2003.

*JDN Realty et al v. McCullough, Sherrill LLP, et al* Superior Court of the State of Georgia, Civil Action No. 01-CV-39193,
     Deposition Testimony, April 8, 2003.

*Dezendorf v Riggs Bank*, District of Columbia Superior Court, Civil Action No. 00502-01
     Deposition Testimony, April 24, 2002.

*Ratcliff Family Charitable Remainder Trust et al v. Appletree Capital Management et al* Circuit Court of Collier County, Florida Case No.: 00-0067-CA-HDH
     Affidavit, August 22, 2001.

*Mahvash Sabet v. Olde Discount Corporation et al*, Superior Court of Arizona
     Affidavit, July 31, 2001.
     Trial Testimony, April 24 and April 25, 2001.
     Deposition Testimony, January 22 and January 23, 2001.
     Supplemental Expert Report, October 11, 2000.
     Expert Report, August 31, 2000.

Affidavit, February 17, 2000.

*Pierce v van Beuren*, Circuit Court of Rappahannock County, VA
Trial Testimony, January 24, 2001.

*Jason A. Forge et al v. National Semiconductor Corp. et al*, Superior Court of the State of California, County of Santa Clara CV 770082
Deposition Testimony, May 18, 2000.

## International

*In the Matter of Biovail Corporation et al,* before the Ontario Securities Commission
Trial Testimony, April 9, 2009.
Expert Report, February 27, 2009.

## AAA and JAMS Arbitrations

*St. Anthony Foundation vs. SCM Advisors, LLC* AAA Arbitration
Trial Testimony, March 8, 2011.

*Stephen Tigerman v Heller Capital Resources, Inc. et al* JAMS Arbitration
Trial Testimony, February 9, 2011.
Deposition, January 6, 2011.

*Peter Fusco v Fisher Investments, Inc.* AAA Arbitration,
Trial Testimony, September 16, 2010.

*Elliott C. Levinthal al v. First Republic Securities Company LLC et al* AAA Arbitration
Trial Testimony, April 7, 2010.

*Matthew Schoenberg et al v Wells Fargo Bank, N.A. et al* AAA Arbitration
Trial Testimony, January 11, 2010.
Deposition, January 5, 2010.
Expert Report, December 11, 2009.

*Robert Tandler et al v. First Republic Securities Company LLC et al* AAA Arbitration
Trial Testimony, August 25, 2009.

*CRG Partners, Inc. et al v Genesis Technology Group,* AAA Arbitration
Trial Testimony, December 4 and December 23, 2008.
Deposition Testimony, November 26, 2008 and December 19, 2008.
Supplemental Expert Report, December 18, 2008.
Expert Report, November 24, 2008.

*Anthony Ostlund & Baer, P.A. et al v Vigilant Investors L.P. et al.* AAA Arbitration
Trial Testimony, October 30, 2008.

*Dominion Terminal Associates v. CSX Transportation, Inc.,* AAA Arbitration
Deposition Testimony, June 23, 2006.
Expert Report, May 17, 2006.
Declaration, February 9, 2006.

*Bradley Markham and John Truchanowicz v Black Box Inc.,* AAA Arbitration
Trial Testimony, June 4, 2002.
Expert Report, May 22, 2002.

*Douglas Millar et al v Merrill Lynch, et al* JAMS Arbitration.
Trial Testimony, May 9, 2002

Supplemental Expert Report, April 10, 2002.
Expert Report, March 23, 2002.

*Raymond H. Stanton II and Raymond H. Stanton III v. Cendant Corporation*, AAA Arbitration,
Trial Testimony, October 16 and 18, 2000.
Expert Report, February 9, 2000.

## NASD and NYSE Arbitrations

Dr. McCann has testified before more than 200 NASD, NYSE, and FINRA arbitration panels.

## Miscellaneous Testimony

*In the Matter of: UBS Financial Services, Inc. Respondent.* State of New Hampshire, Secretary of
State, Bureau of Securities Regulation
Expert Report, February 17, 2011.

*South Beach Securities Inc.* before the National Securities Clearing Corporation,
Hearing Testimony February 9, 2000.
Expert Report January 31, 2000.

*Report on The Adequacy of the SIPC Fund* to the Board of Directors of Securities Investor
Protection Corporation, April 22, 1998.

Before the Subcommittee on Securities of the Senate Banking Housing and Urban Affairs
Committee, "How (and Why) Companies Should Value Their Employee Stock Options" Senate
Hearings No. 103-359, October 21, 1993.

## Publications and Working Papers

"Using Monte-Carlos Techniques to Value Partial Interests in Trusts and Assess the Duty of
Impartiality" with Monica Amparo, Geng Deng and Tim Husson, 2011, available at
www.slcg.com.

"The VXX ETN and Volatility Exposure" with Tim Husson, 2011, available at www.slcg.com.

"The Properties of Short Term Investing in Leveraged ETFs" with Geng Deng, forthcoming *Journal of
Financial Transformation* and available at www.slcg.com.

"Modeling Autocallable Structured Products" with Geng Deng and Joshua Mallett, 2011, *forthcoming
Journal of Derivatives and Hedge Funds* available at www.slcg.com.

"What Does a Mutual Fund's Term Tell Investors?" with Geng Deng and Edward O'Neal, *Journal of
Investing* Summer 2011 vol. 20 and available at www.slcg.com.

"Leveraged Municipal Bond Arbitrage: What Went Wrong?" with Geng Deng, 2011, available at
www.slcg.com.

"Futures-Based Commodities ETFs" with Ilan Guedj and Guohua Li, *Journal of Index Investing,* Summer
2011 vol. 2, no. 1 available at www.slcg.com.

"What Does a Mutual Fund's Average Credit Quality Tell Investors?" with Geng Deng and Edward
O'Neal, *Journal of Investing* Winter 2010 vol. 19, no. 4 and available at www.slcg.com.

"Leveraged ETFs, Holding Periods and Investment Shortfalls" with Ilan Guedj and Guohua Li, 2010,
*Journal of Index Investing* Winter 2010 vol. 1, no. 3 and available at www.slcg.com.

"The Anatomy of Principal Protected Absolute Return Barrier Notes" with Geng Deng, Ilan Guedj and Joshua Mallett, 2010, available at www.slcg.com.

"Charles Schwab YieldPlus" with Geng Deng, and Edward O'Neal, 2010, available at www.slcg.com.

"What TiVo and JP Morgan teach us about Reverse Convertibles", with Geng Deng, Edward O'Neal, and Guohua Li, 2010, available at www.slcg.com.

"The Risks of Preferred Stock Portfolios," with Guohua Li and Edward O'Neal, 2010, available at www.slcg.com.

"Auction Rate Securities" with Edward O'Neal, 2010, available at www.slcg.com.

"Structured Products in the Aftermath of Lehman Brothers" with Geng Deng and Guohua Li, 2009, available at www.slcg.com.

"Oppenheimer Champion Income Fund" with Geng Deng and Joshua Mallett, 2009, available at www.slcg.com.

"Regions Morgan Keegan and the Abuse of Structured Finance", 2009, available at www.slcg.com.

"An Economic Analysis of Equity-Indexed Annuities", 2008, available at www.slcg.com.

"A CMO Primer: The Law of Conservation of Structured Securities Risk", 2007, available at www.slcg.com.

"Are Structured Products Suitable for Retail Investors?" with Dengpan Luo, 2006, available at www.slcg.com.

"An Overview of Equity-Indexed Annuities" with Dengpan Luo, 2006, available at www.slcg.com.

"Annuities" with Kaye A. Thomas, 2005, available at www.slcg.com.

"Optimal Exercise of Employee Stock Options and Securities Arbitrations" with Kaye A. Thomas, 2005, available at www.slcg.com.

"Concentrated Investments, Uncompensated Risk and Hedging Strategies" with Dengpan Luo, , 2004, available at www.slcg.com.

"The Use of Leveraged Investments to Diversify a Concentrated Position" with Dengpan Luo, *Securities Arbitration 2004 Handbook* PLI, available at www.slcg.com.

"Detecting Personal Trading Abuses", 2003, available at www.slcg.com.

"Churning Revisited: Trading Costs and Control" with Dengpan Luo, *Securities Arbitration 2003 Handbook* PLI available at www.slcg.com.

"The Suitability of Exercise and Hold," with Dengpan Luo, *Securities Arbitration 2002 Handbook*, PLI available at www.slcg.com.

"Spreads, Markups, Sales Credits and Trading Costs," with Richard Himelrick, Esq., 2001 available at www.slcg.com.

"The Prudent Investor Rule, Uniform Prudent Investor Act and Financial Theory," 2000.

"Economic Analysis in Broker Customer Disputes Involving Allegations of Churning," *Journal of Legal Economics* 9:1 Spring/Summer 1999.

"A Comment on Accelerated Trading Models Used in Securities Class Action Lawsuits," with David Hsu, *Journal of Legal Economics* 8:3 Winter 1998-1999.

"How (and Why) Companies Should Value Their Employee Stock Options," *Journal of Applied Corporate Finance* Summer 1994, Volume 7 number 2, page 91.

"Perspectives: Taking Account of Stock Options," *Harvard Business Review* January-February 1994, Volume 72 number 1, page 27.

"Golden Parachutes: A Theoretical and Empirical Investigation," unpublished Ph.D. dissertation, UCLA, 1989.

## Presentations at Conferences and Colloquia

Dr. McCann has been invited to speak on prudent investment management practices, financial analysis in securities arbitrations, securities class action lawsuits and antitrust litigation on more than 50 continuing legal education panels around the country.

September 15, 2011