UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE EVERGREEN ULTRA SHORT OPPORTUNITIES FUND SECURITIES LITIGATION | )  No. 1:08-CV-11064-NMG <br> ) <br> )  <u>CLASS ACTION</u> <br> ) <br> ) |

**LEAD PLAINTIFFS AND CLASS REPRESENTATIVES' MEMORANDUM OF LAW IN
<u>OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT .................................................................................1

II.  ARGUMENT ............................................................................................................4

    A.   Legal Standard on a Motion for Summary Judgment ...........................................4

    B.   Plaintiffs Do Not Allege that the Name of the Fund is an Actionable
        Misstatement in Itself ........................................................................................6

    C.   Plaintiffs' Claims Related to the Riskiness of the Fund's Mortgage-Backed
        Securities are Not Time-Barred ..........................................................................7

III. CONCLUSION .......................................................................................................15

Court-appointed Lead Plaintiffs and Class Representatives International Brotherhood of Electrical Workers Local 98, NECA Electrical Workers Joint Apprenticeship Training Trust Fund, First Agency Account LP, Bricklayers and Allied Craftworkers Local 1 of PA/DE Health and Welfare Fund, and the Bricklayers Local 54 of Pennsylvania Supplemental Welfare Fund (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to the motion for partial summary judgment[1] filed by the Evergreen Defendants (the "Motion").[2]

## I. PRELIMINARY STATEMENT

Conceding that genuine issues of material fact preclude summary judgment with respect to *all* of the false statements alleged in Plaintiffs' First Amended Class Action Complaint ("Complaint") (Dkt No. 32), Defendants instead seek the dismissal of one claim not at issue – that the name "Evergreen Ultra Short Opportunities Fund" (the "Fund") was materially misleading. Specifically, Defendants assert a truth on the market defense, arguing that disclosure of the Fund's portfolio of long-stated maturities in its Offering Materials[3] cures any misrepresentation related to the Securities and Exchange Commission ("SEC") name rule, which mandates that a mutual fund that employs the "ultra short" moniker must generally "invest in fixed income securities with

---

[1] The Evergreen Defendants filed their memorandum of law in support of their motion for partial summary judgment on February 15, 2012 [Dkt. No. 78]. Defendants' memorandum is referred to herein as "Def. Mem."

[2] The Evergreen Defendants include Defendants Evergreen Investment Management Co. LLC, Evergreen Investment Services, Inc., Wachovia Corporation, Dennis H. Ferro, and Kasey Phillips. The Trustee Defendants joined in the Evergreen Defendants' Motion. Dkt. No. 80. The Trustee Defendants are: Evergreen Fixed Income Trust, Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner. Collectively, the Evergreen Defendants and the Trustee Defendants are referred to herein as "Defendants."

[3] The Registration Statements, Prospectuses and supplements to the SEC filings, and other incorporated documents, are referred to, collectively, as the "Offering Materials." The Registration Statements and Prospectuses are defined in ¶¶93-95 of the Complaint.

1

extremely short maturities, or time period in which they become due for payment."[4] Nowhere in the Complaint however, do Plaintiffs assert that the name itself violated the SEC name rule or is an actionable misstatement.[5] This is a non-issue.

What is important about the Fund's portrayal of itself as an "ultra short" fund is the peer group category in which it was placed by Morningstar, Inc. ("Morningstar"), the leading mutual fund publication, in comparing its performance to others in that same "ultra short" category. This category is not determined by the SEC name rule or the name that the mutual fund employs, but rather, is determined by a mutual fund's duration, a metric that measures the sensitivity of a bond's price to changes in interest rates.

In determining duration, Morningstar does not independently calculate a mutual fund's duration. It uses and publishes the duration measurement supplied by the mutual fund itself. To be considered an "ultra short" fund by Morningstar, a mutual fund must maintain a duration of one year or less. It is this statement in the Complaint about the Fund's duration that Plaintiffs' claim is an actionable misstatement. This alleged misstatement – that the Fund intends to maintain a duration of one year or less – is a contested issue of material fact not being challenged in Defendants' Motion. Thus, the SEC name rule and the name of the Fund itself is nothing more than a red herring.

What is being challenged in this case as materially false and misleading and violations of the Federal securities laws are the fundamental and core representations that the Fund was safe, liquid,

---

[4] *See* Plaintiffs' Response to the Concise Statement of Material Facts of Record submitted by the Evergreen Defendants and Plaintiffs' Concise Statement of Material Facts of Record pursuant to Local Rule 56.1 in support of their opposition to Defendants' Motion for Partial Summary Judgment ("PSMFR"), filed contemporaneously herewith, at ¶21.

[5] *See* PSMFR, at ¶¶8, 21.

2

and subject to minimal or nominal price fluctuations, and not merely the label attached to the Fund by Defendants.

These misrepresentations, which were contained in the Fund's Offering Materials, included, *inter alia*: (i) "The Fund seeks to provide current income consistent with the preservation of capital and low principal fluctuations;" (ii) The "Fund intends to maintain an average portfolio duration of approximately one year or less;" (iii) The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations;" (iv) "The Fund seeks to provide investors with a high level of current income while reducing price volatility;" and (v) "The Fund may not invest more than 15% (10% for money market funds) of its net assets in securities that are illiquid." Complaint, ¶3. Consistent with these stated goals, the Fund misleadingly compared itself to the Lehman 6-month Treasury Bill Index and Lehman Bros. Gov't./Credit 0-2.5 Year Index. *Id*. Indeed, "the defendants expressly invited investors … to assess the Fund's risks, stating that the comparisons to the Lehman indices were 'intended to provide [investors] with some indications of the risks of investing in the Fund.'" *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.,* 705 F. Supp. 2d 86, 94 (D. Mass. 2010) (J. Gorton). These false statements outlined in the Complaint – which form the core of Plaintiffs' case – are unchallenged by Defendants on summary judgment and stand ready to be tried.

Defendants also assert a limited statute of limitations defense with respect to their admitted failure to disclose the Fund's spread duration, a metric used to measure the change in a bond's price to changes in credit spreads, which is indicative of the level of credit risk in a portfolio. Defendants' argument fails, however, because reasonable investors could not have been on inquiry notice that the Fund's portfolio of MBSs was riskier than represented until June 2008, when the Fund's Net Asset Value ("NAV") collapsed. Prior to that collapse, Defendants admittedly overstated the Fund's NAV

throughout 2007 and until the Fund's sudden closure,[6] thus diverting or preventing any investor concerns about the appropriateness of the disclosures related to the Fund's MBS holdings. In fact, in 2007 and 2008 when Defendants were concealing the deterioration in the value of the Fund's portfolio and propping up the NAV, credit spreads had widened from one or two times to 50 times.[7]

By artificially inflating the NAV throughout this time period, Defendants effectively negated the effect of any purported "storm warnings" that the Fund's public statements were materially misleading or that the failure to disclose the Fund's spread duration amounted to a materially misleading omission actionable under the Federal securities laws. Indeed, all the while credit spreads were becoming massive in the overall marketplace, the Fund's portfolio, as represented by its NAV, was stable and maintaining its value. No one would have recognized the materiality of spread duration as a key metric because of the stable NAV. The Fund's portfolio seemed immune to the massively widening spreads. Because the first complaint in this action was filed shortly after the sudden announcement of the Fund's closure, which announcement provided investors with notice of the misleading nature of the Fund's public statements for the first time, Plaintiffs' claims are timely and partial summary judgment is inappropriate. For these reasons, and those set forth in more detail herein, Defendants' Motion should be denied it its entirety.

**II.    ARGUMENT**

    **A.    Legal Standard on a Motion for Summary Judgment**

As this Court recently held, in moving for summary judgment:

The burden is on the moving party to show, through the pleadings, discovery and

---

[6] The Fund's liquidation led to investigations by the Securities & Exchange Commission ("SEC") and the Massachusetts Securities Division, ultimately resulting in a $40 million settlement. *See* PSMFR, at ¶50.

[7] *See* PSMFR, at ¶61.

>affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
>
>A fact is material if it might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary will not be counted. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute is such that a reasonable jury could return a verdict for the nonmoving party.
>
>Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

*Pedersen v. Hart Ins. Agency, Inc.*, No. 10-10922-NMG, 2011 WL 4970920, at *2 (D. Mass. Oct. 18, 2011) (Gorton, J.).[8]

This action alleges that Defendants violated the Federal securities laws. Section 11 of the Securities Act of 1933 (the "Securities Act") "imposes liability on the issuer of a security, as well as any person who signed the registration statement and/or served as a director or performed similar functions, if the registration statement 1) contained an untrue statement of material fact, 2) omitted to state a material fact or 3) omitted a material fact necessary to make the statements therein not misleading. *Evergreen*, 705 F. Supp. 2d at 91; 15 U.S.C. §77k.[9] Importantly, here, Defendants do not seek summary judgment with respect to *any* of the false statements alleged in the Complaint, but instead challenge an allegation that was never made. With respect to Defendants' limited statute of limitations defense – which pertains solely to Defendants' failure to disclose the Fund's spread

---

[8] Internal citations, quotation marks, and footnotes are omitted, and emphasis is added, unless otherwise noted.

[9] Plaintiffs also allege that certain of the Defendants violated Sections 12(a)(2) and 15 of the Securities Act. *Id.*; 15 U.S.C. §77l(a)(2); 15 U.S.C. §77o. Defendants do not assert any independent basis for the entry of summary judgment with respect to these claims.

duration – a genuine issue of material fact exists which precludes the grant of summary judgment. Accordingly, Defendants' motion should be denied in its entirety.

### B. Plaintiffs Do Not Allege that the Name of the Fund is an Actionable Misstatement in Itself

To be clear, Plaintiffs do *not* allege that naming the Fund "ultra short," by itself, amounts to an actionable misstatement under the Federal securities laws. Rather, as this Court explained in denying Defendants' motion to dismiss in substantial part:

> The plaintiffs allege that the Fund's offering materials made fundamental and core misrepresentations to investors about its strategy and objectives. Those alleged misrepresentations include, *inter alia*:
>
> 1) "The Fund seeks to provide income consistent with preservation of capital and low principal fluctuation";
>
> 2) The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations"; and
>
> 3) "the Fund seeks to provide investors with a high level of current income while reducing price volatility".
>
> \*   \*   \*
>
> The plaintiffs allege that the defendants misled investors by claiming that the Fund "would not invest more than 15% of its net assets in illiquid securities" when, in fact, the Fund invested a much greater portion of its assets in illiquid private placement securities …
>
> \*   \*   \*
>
> The next category of alleged misstatements involves a series of statements comparing the Fund to certain other indices (such as the Lehman 6-month Treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index) which, according to the plaintiffs, had significantly longer average portfolio durations than the Fund. The plaintiffs allege that the comparisons between the Fund and the Lehman indices were materially misleading because the Fund's longer portfolio duration made it far more susceptible to unanticipated changes in interest rates and therefore far riskier than the Lehman indices.

*Evergreen*, 705 F. Supp. 2d at 92-94. Finally, the Complaint alleges that Defendants artificially inflated the Fund's NAV and continued heavily investing in riskier-than-represented MBSs, many of which were attached to sub-prime mortgages. *Id*. at 89.

Thus, Defendants' core representations portrayed the Fund as a safe, liquid and stable investment suitable for conservative investors when, in fact, the Fund's portfolio duration exceeded one year, the Fund was not comparable to similarly classified funds, the Fund's investments were increasingly illiquid, the Fund invested in riskier than represented MBSs, and the Fund's NAV was grossly overstated. PSMFR, at ¶¶8-9, 14, 21, 51-60; Complaint, ¶¶101, 103, 105, 107, 109, 111, 113, 115. It is these false statements – all of which are unchallenged by Defendants in their Motion – that serve as the basis for Plaintiffs' claims. Because Plaintiffs do not allege that calling the Fund "ultra short," is itself an actionable misstatement under the Federal securities laws, and because Defendants do not seek summary judgment on any of the false statements alleged in the Complaint, Defendants' Motion in this regard should be denied.[10]

### C. Plaintiffs' Claims Related to the Riskiness of the Fund's Mortgage-Backed Securities are Not Time-Barred

Defendants also seek partial summary judgment, for a limited portion of the Class Period, with respect to Plaintiffs' claim that Defendants "should have disclosed the Fund's spread duration due to the Fund's holding of investments with credit risk, i.e., non-agency mortgage-backed securities, and long-stated maturities." Def. Mem. at 10. Importantly, Defendants do not argue that they are entitled to summary judgment because the failure to disclose the Fund's spread duration

---

[10] Because Plaintiffs do not assert that the name of the Fund, itself is an actionable misstatement, Plaintiffs need not address Defendants' legal arguments with respect to their incorporation by reference of other documents into the Fund's Offering Materials or the materiality of the Fund's name. *See* Def. Mem. at 5-9. Should Defendants assert these legal arguments later in the case with respect to those misstatements Plaintiffs do allege are actionable, Plaintiffs reserve their rights to address those arguments at that time.

was not a material omission or because their disclosures regarding the riskiness of the Fund's MBS portfolio insulate them from liability. Rather, Defendants argue that, based on the disclosures in the Fund's Offering Materials, a reasonable investor would have been on inquiry notice that the Fund's spread duration was a material piece of undisclosed information and, as a result, purchases of Fund shares that occurred more than one year prior to the filing of the initial complaint in this action are time-barred.[11]

Defendants miss the point. By artificially inflating the Fund's NAV while credit spreads in the overall market were widening, Defendants rendered the concept of spread duration meaningless and nullified its utility as a signal the Fund's financial health was failing. It appeared to investors that as long as the Fund's NAV was stable the Fund's portfolio was immune to credit risk. Plaintiffs had no reason to believe otherwise and no way to discover the Fund's portfolio was deteriorating. Plaintiffs' claim, and the trigger beginning the running of the one-year statute of limitations, did not take place until June 2008 when the NAV collapsed. Thus, Defendants' narrowly constituted statute of limitations fails.

Section 13 of the Securities Act provides that actions to enforce any liability under Sections 11 or 12(a)(2) must be brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence ..." 15 U.S.C. §77m; *see* Def. Mem. at 10. Interpreting the statute of limitations period for a claim

---

[11] Thus, even if the Court were to grant Defendants' Motion on this point, a triable issue remains regarding whether Defendants' failure to disclose the Fund's spread duration in light of the risks associated with its MBS portfolio amounts to an actionable omission for those investors who purchased shares from June 24, 2007 until the Fund's closure. *See* Def. Mem. at 14. Likewise, Plaintiffs' claims with respect to all other alleged misstatements *see* Section II.B., *infra*, will proceed to trial for the entire Class Period.

under Section 10(b) of the Securities Exchange Act of 1934, the Supreme Court held that the time period to file a claim "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784, 1798 (2010). That is, "[i]n determining the time at which 'discovery' of those 'facts' occurred, terms such as 'inquiry notice' and 'storm warnings' may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered '***the facts constituting the violation***,' including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id*. (finding that warning letter from FDA and pleadings filed in products-liability actions against Merck did not put investors on inquiry notice to start the running of statute of limitations period). As noted above, an omission must be material to constitute an actionable violation of Section 11. *Evergreen*, 705 F. Supp. 2d at 91. Thus, the salient question here is not simply when a reasonable investor would have been on inquiry notice that Defendants failed to disclose the Fund's spread duration, but when a reasonable investor was on notice that such a failure to disclose was material, of some significance, and, thus, a ***violation*** of Section 11. *See Merck*, 130 S.Ct. at 1798.

Judge Rakoff's decision in *Public Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475 (S.D.N.Y. 2010), is instructive. In denying the defendants' motion to dismiss the plaintiff's Securities Act claims on statute of limitations grounds, the Court in *Merrill Lynch* held that, "even if a plaintiff had 'inquiry notice' sufficient to warrant beginning to investigate, a plaintiff would not be barred by the statute of limitations unless a reasonably diligent plaintiff similarly situated would have actually discovered the facts showing the ***violations*** alleged in the plaintiff's

9

complaint." *Id*. at 480. In their Motion, Defendants ignore this governing standard, instead arguing that Plaintiffs were on "inquiry notice of potential claims based on the Fund's holding of securities with long stated maturities and/or non-agency mortgage-backed securities prior to one year before the filing of the first complaint in this action." Def. Mem. at 10. But it is only when a reasonably diligent plaintiff would have discovered the facts showing a Section 11 violation – here, (1) an omission of (2) a ***material fact*** – that triggers the statute of limitations period. While Plaintiffs may have been, for argument's sake, on inquiry notice of one element of their Securities Act claims – that there was an omission of the Fund's spread duration – they were not on notice of the materiality or significance of this omission, or that Defendants should have disclosed the Fund's spread duration, and thereby aware of the fact that a cause of action potentially existed – until the Fund announced its sudden closure in June 2008.[12]

Indeed, no reasonable investor knew or should have known, prior to the Fund's liquidation, that the disclosures pertaining to the riskiness of the Fund's MBSs contained in the Offering Materials[13] were false and misleading because, among other reasons, they failed to disclose the Fund's spread duration. While the Offering Materials incorporated by reference a Schedule of

---

[12] To that end, Defendants oversimplify the testimony of Plaintiffs' expert, Edward S. O'Neal, Ph.D. To be sure, Plaintiffs' expert opines that, "[i]n order to inform investors of all risks involved in Evergreen Ultra Short Opportunities Fund, Evergreen should have reported both the effective duration and credit or spread duration." *See* Linge Affidavit, Ex. A at ¶43. However, Plaintiffs' expert does not opine that a reasonable investor would have known of the importance of the Defendants' omission of the Fund's spread duration during the Class Period, particularly in light of the Fund's artificially inflated NAV and comparison to the Lehman Brothers Government/Credit 0-2.5 Year Index.

[13] This Court previously rejected Defendants' argument that their purported risk disclosures insulate them from liability. *See In re Evergreen*, 705 F. Supp. 2d at 93 ("The bespeaks caution doctrine is of no avail to the defendants in this case. … Moreover, the vague, boilerplate language in the prospectuses warning that the Fund is not guaranteed to meet its goals did not disclose the risky nature of the Fund's investments with sufficient clarity to 'bespeak caution' nor did it expressly warn of the particular risk that allegedly brought about the plaintiffs' loss. Thus, the defendants' 'bespeaks caution' defense is to no avail.").

Investments that listed the final maturity of each security,[14] and provided a general statement about credit risk, such disclosures did not amount to "storm warnings" sufficient to put a reasonable investor on inquiry notice of violation of the Federal securities laws, particularly in light of Defendants' daily overstatement of the Fund's NAV, the mispricing of many of the Fund's underlying assets, and the comparisons in the Offering Materials to the conservative Lehman Brothers Government/Credit 0-2.5 Year Index. *See Evergreen*, 705 F. Supp. 2d at 94 ("Here, on the other hand, the defendants expressly invited investors to use the charts to assess the Fund's risks, stating that the comparisons to the Lehman indices were 'intended to provide [investors] with some indication of the risks of investing in the Fund.'"); PSMFR, at ¶¶50-60. Defendants' own management with responsibility over the Fund claimed not to know about the mispricing of the Fund's assets until after the Fund closed in June 2008. *Id*., ¶50. If these executives were unaware of the mispricing being orchestrated by the Fund's managers, there is no rational basis to contend that a reasonable investor would have been on notice that the Fund's MBS portfolio was anything other than what was represented by the Fund's daily NAV – safe and stable.

To be sure, because Defendants: (1) assured investors on a daily basis that the Fund's NAV was stable and experienced little to no volatility; (2) overstated the value of many of the Fund's riskier securities; and (3) made misleading comparisons to the Lehman Brothers Government/Credit

---

[14] To the extent that Defendants argue at trial that they are shielded from liability because their statements about the final stated maturities of their MBS holdings were literally true, Defendants miss the mark. When Defendants undertook to discuss their holdings, they had a duty to speak fully and truthfully. That is, "a duty to speak the full truth arises when a defendant undertakes a duty to say anything." *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994). Statements that are literally true are not immune from liability under the federal securities laws because "[s]ome statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239, 250 n.10 (D. Mass. 2006); *see also Lucia v. Prospect St. High Income Portfolio*, 36 F.3d 170, 175 (1st Cir. 1994) ("when a corporation does make a disclosure – whether it be voluntary or required – there is a duty to make it complete and accurate."). Because Defendants created a misleading picture with respect to their risky investments in MBSs through their misstatements of the assets' market values by overstating the NAV, and by misleadingly comparing the Fund's risk profile to that of the Lehman Brothers Government/Credit 0-2.5 Year Index, their misstatements are actionable.

0-2.5 Year Index, which had a much more conservative composition than the Fund, reasonable investors had no reason to suspect that the Fund's MBS portfolio was significantly riskier than represented and warranted the disclosure of the Fund's spread duration. *Id.*, at ¶¶50-60. Because these false statements "made by the defendants in contemporaneous and subsequent documents would reasonably have had the effect of reassuring an investor" about the limited riskiness of the Fund's MBS portfolio, investors were not on inquiry notice of a potential Securities Act violation. *See Merrill Lynch*, 714 F. Supp. 2d at 479. Moreover, the listing of the assets' stated maturities, coupled with generic risk warnings about MBSs, at most alerted investors to "a perceived increase in risk" associated therewith – not a viable cause of action under Section 11. *Id*. at 480. Simply, Defendants cannot blame investors for failing to learn of an omission of a material fact in the Fund's Offering Materials while Defendants, at the same time, were overstating the Fund's NAV and the value of the Fund's underlying assets to create the impression of a much more stable, and valuable, Fund than actually existed. *See* PSMFR, at ¶58. ("[b]y causing the Fund to overstate its NAV from February 2, 2007 to June 2008, investors who owned Fund shares during this period and those investors considering purchasing Fund shares were denied the opportunity to consider accurate information about the Fund's performance when deciding whether to retain, redeem, or purchase those shares.")

The cases cited by Defendants are self-defeating. In *Young v. Lepone* (Def. Mem. at 11), the First Circuit held that, "[t]he multifaceted question of whether storm warnings were apparent involves issues of fact. In the archetypical case, therefore, it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice." 305 F.3d 1, 9 (1st Cir. 2002). Thus, whether the mere listing of Fund assets and the existence of boilerplate warnings about credit risk amounts to "storm warnings" sufficient to put a

reasonable investor on inquiry notice of the existence of a cause of action is a question of fact inappropriate for summary judgment. *See id.*

Moreover, the Court in *Young* found that two letters from the defendant's auditor to the defendant's board of directors indicating "reportable conditions" were insufficient to put a board member on inquiry notice of potential fraud claims, in part because "specific reassurances" were given "that the reportable conditions did not represent material weaknesses in the company's reporting systems." *Id.* at 11-12. Likewise here, the Fund's artificially inflated daily NAV, artificially inflated asset values, and explicitly stated conservative investment guidelines, all served as continual reassurances to shareholders that the Fund was safe, stable, and experienced little volatility, and thus mitigated against any inference that the Fund was riskier than represented and should have disclosed its spread duration. *See* PSMFR, at ¶¶50-60. As the First Circuit explained in *Young*, "[g]iven this steady stream of comforting words, we are not persuaded that the management letters necessarily placed [Plaintiffs] on inquiry notice of the possibility that fraud was afoot." *Id*.[15]

The First Circuit's decision in *Cook v. Avien, Inc.* (Def. Mem. at 10), also supports the denial of Defendants' Motion. 573 F.2d 685 (1st Cir. 1978). First, *Cook* stands for the well-settled rule that "the question of whether reasonable diligence has been exercised is factually based" and "when the issue of reasonable diligence arises in a jury case, it is for the jury to decide whether reasonable diligence has been exercised." *Id*. at 697. Thus, Defendants' Motion should be denied and the fact-intensive question of whether Plaintiffs were on inquiry notice, and whether they acted reasonably in response, is a question for the jury. After judgment was entered and on a full factual record, the

---

[15] Defendants' argument in this regard is disingenuous in light of the fact that the Fund reported an inaccurate and artificially inflated NAV throughout 2007 and until the Fund announced its closure in June 2008. *See* PSMFR, at ¶¶50-58. Given the inaccuracy of its valuation at the time, and the routine mispricing of the Fund's assets, any spread duration provided by Defendants to the market likely would also have been inaccurate.

13

Court in *Cook* found the plaintiff was on inquiry notice of potential claims after being specifically informed of the defendant company's "serious financial difficulties." *Id*. at 697. In sharp contrast here, investors were never informed of any financial difficulties related to the Fund until the sudden announcement of the Fund's closure. Indeed, investors were told exactly the opposite – that the NAV was stable and that the Fund was experiencing minimal volatility. For both of these reasons, *Cook* firmly supports the denial of Defendants' Motion.

The other cases cited by Defendants lend further support to Plaintiffs. In *Benak v. Alliance Capital Mgmt. L.P.* (Def. Mem. at 13), the Court found claims to be time-barred because investors were on inquiry notice of "storm warnings" more than one year prior to the filing of the complaint. 349 F. Supp. 2d 882 (D.N.J. 2004). There, the plaintiffs alleged violations of Section 11 of the Securities Act based on false representations in a fund's offering materials related to the fund's investment and research strategies. *Id*. at 884. The plaintiffs alleged these representations were false because the fund made large investments in, and thus had considerable exposure to, Enron Corporation. *Id*. While the plaintiffs did not file suit until December 13, 2002, it was public knowledge by December 4, 2001, more than one year prior to the filing of the complaint, that the fund in question held 16.7 million shares of Enron, that Enron had filed for bankruptcy, and that the fund experienced a "tremendous drop" in the value of its Enron holdings. *Id*. at 888-89. Here, on the other hand, investors had no indication that anything was amiss with the Fund's holdings, or that its MBS portfolio was riskier than represented, until the announcement that the Fund would be closed. Rather than alerting shareholders to the deterioration of the Fund's assets or the true volatility of the Fund's NAV, Defendants published artificially inflated valuations to further mask any concerns investors otherwise might have had, while at the same time comparing the Fund's risk portfolio to that of the conservative Lehman Brothers Government/Credit 0-2.5 Year Index. *See*

PSMFR, at ¶¶50-60. Accordingly, *Benak* is readily distinguishable and the Motion should be denied.[16]

In short, Plaintiffs do not allege that Defendants failed to list their MBS assets. Rather, Plaintiffs allege that Defendants failed to provide an accurate description of the riskiness of the Fund's MBS portfolio by, among other things, failing to disclose the Fund's spread duration. Plaintiffs were not placed on inquiry notice of the materiality of this omission until Defendants announced the Fund would be closed. Prior to that point, Defendants actively masked the riskiness of the Fund's MBS portfolio by reporting artificially inflated asset values, by reporting a steady and artificially inflated NAV, and by reiterating inaccurate statements about the Fund's supposedly safe investment strategy and risk portfolio. *See* PSMFR, at ¶¶50-60. Defendants charged misconduct belies their motion's premise. They simply cannot, on the one hand, insist that a reasonable investor would have been apprised that the Offering Materials contained actionable misstatements regarding the Fund's MBS portfolio where and when, at the same time, they obscured any concerns about the Fund's investments by overpricing many of the Fund's assets which consequently provided the market with an artificially inflated NAV on a daily basis.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

---

[16] For this same reason, *DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209 (3d Cir. 2007) (Def. Mem. at 13), is inapposite. In that case, unlike here, investors were not provided with direct reassurances that the Fund was conservative and had almost no volatility, which served to dissipate a reasonable investor's concerns. *Id*. at 218 ("there are occasions when, despite the presence of some ominous indicators, investors may not be considered to have been placed on inquiry notice because the warning signs are accompanied by reliable words of comfort from management…."). Likewise, *DeBruyne v. Equitable Life Assurance Society of the U.S.*, 920 F.2d 457 (7th Cir. 1990) (Def. Mem. at 13), is of no relevance. There, unlike here, the plaintiffs admitted that they suspected the very problems which led them to file suit more than a year beforehand. *Id*. at 466. In contrast, Plaintiffs did not suspect (nor did they have any reason to suspect) that the Fund failed to conform with its stated investment strategy, and that the Fund's NAV was overvalued, until the Fund announced its closure in June 2008.

DATED:  March 15, 2012	ROBBINS GELLER
	  RUDMAN & DOWD LLP
	JACK REISE (*pro hac vice*)


	               s/ JACK REISE
	            JACK REISE

	120 East Palmetto Park Road, Suite 500
	Boca Raton, FL  33432
	Telephone:  561/750-3000
	561/750-3364 (fax)

	EVANGELISTA & ASSOCIATES, LLC
	JAMES M. EVANGELISTA
	One Glenlake Parkway, Suite 700
	Atlanta, GA  30328
	Telephone:  404/478-7195
	404/478-7139 (fax)

	COHEN, PLACITELLA & ROTH, P.C
	STEWART L. COHEN
	MICHAEL COREN
	STUART J. GUBER
	Two Commerce Square
	2001 Market Street
	Philadelphia, PA 19103
	Telephone:  215/567-3500
	215/567-6019 (fax)

	Class Counsel and Lead Counsel for Lead Plaintiffs

	PYLE ROME EHRENBERG, P.C.
	BETSY EHRENBERG, BBO #554628
	18 Tremont Street, Suite 500
	Boston, MA  02108
	Telephone:  617/367-7200
	617/367-4820 (fax)

	Liaison Counsel for Plaintiffs

16

                                      GREENWALD DAVIDSON PLLC
                                      MICHAEL L. GREENWALD
                                      5550 Glades Road, Suite 500
                                      Boca Raton, FL  33431
                                      Telephone:  561/824-5477

                                      RIGRODSKY & LONG, P.A.
                                      TIMOTHY J. MACFALL
                                      825 East Gate Blvd., Suite 300
                                      Garden City, NY  11530
                                      Telephone:  516/683-3516

                                      Additional Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on March 15, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

                                                             s/ JACK REISE
                                                             JACK REISE