UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE EVERGREEN ULTRA SHORT | ) | No. 1:08-CV-11064-NMG |
| OPPORTUNITIES FUND SECURITIES | ) | |
| LITIGATION | ) | CLASS ACTION |
| | ) | |
| | ) | |

STIPULATION OF SETTLEMENT

EXHIBIT 1

This Stipulation of Settlement dated as of June 22, 2012, (the "Stipulation"), is made and entered into by and among the following Settling Parties (as further defined in  Section IV hereof) to the above-captioned case ("Litigation"): (i) the Lead Plaintiffs (as defined herein, on behalf of themselves and each of the Class Members), by and through their court-approved Lead Counsel (as defined herein); and (ii)  Defendants (as defined herein), by and through their counsel of record in the Litigation.   The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined in ¶1.24), upon and subject to the terms and conditions hereof.

## I.   THE LITIGATION

Commencing on June 23, 2008 several actions were filed asserting claims for violations of §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") against various of the Defendants.   By Order dated January 15, 2009, the Court consolidated these actions under the caption *In re Evergreen Ultra Short Opportunities Fund Securities Litigation*, No. 1:08-CV-11064-NMG.   The Court also appointed the Evergreen Investor Group[1] and the Bricklayers Group[2] to serve as Lead Plaintiffs.

Thereafter, Lead Plaintiffs filed a First Amended Class Action Complaint ("Complaint") on April 30, 2009, and named as defendants: Evergreen Fixed Income Trust ("Evergreen Trust"), Evergreen Investment Management Company, LLC ("Evergreen Investment"), Wachovia

---

[1]     The Evergreen Investor Group is comprised of International Brotherhood of Electrical Workers Local 98, NECA Electrical Workers Joint Apprenticeship Training Trust Fund and First Agency Account LP.

[2]     The Bricklayers Group is comprised of the Bricklayers and Allied Craftworkers Local 1 of PA/DE Health and Welfare Fund and the Bricklayers Local 54 of Pennsylvania Supplemental Welfare Fund.

Corporation (Wachovia"), Evergreen Investment Services, Inc. ("Evergreen Services"), Dennis H. Ferro, Kasey Phillips, Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner.

The Complaint alleged that, throughout the Class Period (as defined herein), Defendants violated the Securities Act in registering, marketing and selling the Fund (as defined herein) as a stable "ultrashort" bond fund that provided "current income consistent with preservation of capital and low principal fluctuation."  Contrary to these representations, the Complaint alleges that the Fund was not an ultra short bond fund, nor one that preserved capital and maintained low principal fluctuation. Rather, as alleged in the Complaint, the Fund was comprised of assets that were illiquid, not truly short-term in nature, otherwise riskier than advertised and routinely mispriced. Further, the Complaint alleges that the Fund's Registration Statement and Prospectus materials[3] misrepresented the following: (i) "The Fund seeks to provide current income consistent with preservation of capital and low principal fluctuation;" (ii) The "Fund intends to maintain an average portfolio duration of approximately one year or less;" (iii) The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuations …;" (iv) "The Fund seeks to provide investors with a high level of current income while reducing price volatility;" (v) The Fund's performance and risks were benchmarked to the Lehman 6-Month treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index; (vi) "The Fund may not invest more than 15% (10% for

---

[3] References to Registration Statements and Prospectuses and supplements to Securities and Exchange Commission ("SEC") filings, and other incorporated documents, are referred to, collectively, as the "Offering Materials."

money market funds) of its net assets in securities that are illiquid;" and (vii) The valuation of the Fund's Net Asset Value ("NAV"). In summary, the Complaint further alleged that, contrary to those representations, the Fund invested in illiquid, risky, speculative and volatile securities throughout the Class Period. The Complaint further alleged that, as a result of Defendants' risky investments, which stood in stark contrast with the Fund's stated investment strategy as set forth in the Offering Materials, a substantial proportion of the Fund's investments were illiquid, and the actual value of the Fund's NAV was substantially below the Fund's stated valuation.

Certain of the Defendants moved to dismiss the Complaint on July 15, 2009. On the same day, Defendants Wachovia, Evergreen Investment, Evergreen Services, Dennis H. Ferro, and Kasey Phillips filed their Answer to the Amended Complaint. On March 31, 2010, the Court issued an Order granting Defendants' motion in part and denying it in part. The remaining Defendants filed their Answer to the Amended Complaint on July 16, 2010. Thereafter, the parties engaged in full document and deposition discovery directed to class, merits and expert issues.

On February 15, 2011, Plaintiffs moved for class certification. Defendants filed their opposition on April 15, 2011. Plaintiffs filed their reply on May 16, 2011. On August 10, 2011, the Court granted Plaintiffs' class certification motion in its entirety, certifying a class of all purchasers of shares of the Fund between October 28, 2005 and June 18, 2008, inclusive and who were damaged thereby (the "Class").

On February 15, 2012, Defendants filed a motion for partial summary judgment. Plaintiffs filed their response to that motion on March 15, 2012. Subsequently, Defendants filed a notice of withdrawal of their motion on March 30, 2012. The parties were scheduled to

commence trial on June 4, 2012. On November 23, 2011, The First Circuit Court of Appeals denied Defendants' petition to appeal from the class certification order.

The parties participated in several mediation sessions with the Honorable Nicholas H. Politan (Ret.), starting on August 31, 2011.  Those mediations proved unsuccessful.  The parties renewed settlement discussions following the withdrawal of Defendants' motion for partial summary judgment, which culminated in an agreement-in-principle to settle the Litigation.

## II.     CLAIMS OF THE LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

Lead Plaintiffs believe the claims asserted in the Litigation have merit and that the evidence developed through fact and expert discovery supports the claims.  However, counsel for the Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and possible appeals.  Lead Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiffs and their counsel also are mindful of the inherent problems of proof under, and possible defenses to, the federal securities law violations asserted in the Litigation.  Lead Plaintiffs and their counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Class and that the settlement set forth in the Stipulation is in the best interests of the Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Lead Plaintiffs in the Litigation.  Defendants have denied expressly and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.

Defendants also have denied and continue to deny, *inter alia*, the allegations that they made any materially false and misleading statements, that Lead Plaintiffs or Class Members have suffered damage, or that Lead Plaintiffs or Class Members were harmed by the conduct that was or could have been alleged in the Litigation.

Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Litigation. Defendants have, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in the Stipulation.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the Class Members) and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation.

### 1.   Definitions

As used in the Stipulation, the following terms have the meanings specified below.

1.1   "Authorized Claimant" means a Class Member (or the representative of such Class Member including, without limitation, agents, administrators, executors, heirs, successors, and assigns), who timely returns a signed Claim Information Form and who is entitled to a distribution from the Settlement Fund pursuant to the terms and conditions set forth in this Stipulation or the Plan of Allocation.

1.2     "Claim Information Form" means the form, prepared by the Claims Administrator using data and information provided by Defendants, or otherwise obtained by Lead Plaintiffs, concerning Class Members' transactions in shares of the Fund during the Class Period ("Transaction Data") to the extent available in electronic database form, which will be mailed to Class Members with the Notice and pursuant to which Class Members will submit a claim by (a) either acknowledging that the Claims Administrator's statement of Transaction data is correct or, if applicable, providing to the Claims Administrator transaction information and documentation correcting the Claims Administrator's statement of Transaction Data or sufficient transaction information and documentation to enable the Claims Administrator to calculate the Class Member's Recognized Claim; and (b)  signing, dating and returning it to the Claims Administrator in accordance with the procedures set forth herein and the deadlines established by the Court.  A sample Claim Information Form proposed by Lead Plaintiffs is annexed hereto as Exhibit A-2.

1.3     "Claims Administrator" means Heffler Claims Administration, which shall administer the settlement.

1.4     "Class" means:

All persons or entities who purchased or acquired shares of the Evergreen Ultra Short Opportunities Fund (the "Fund") between October 28, 2005 and June 18, 2008, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants and any entity in which Defendants or any excluded person has or had a controlling interest, including but not limited to the Wachovia Affiliated Accounts (as defined herein), the officers and directors of the corporate defendants, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

1.5     "Class Member" or "Member of the Class" means, for purposes of this Stipulation only, a Person who falls within the definition of the Class as set forth in this Stipulation and who does not timely exercise his, her or its right to opt-out of the Class.

1.6     "Class Period" means the period beginning on October 28, 2005 through June 18, 2008, inclusive.

1.7     "Court" means the United States District Court for the District of Massachusetts.

1.8     "Defendants" means Evergreen Trust, Evergreen Investment, Wachovia, Evergreen Services, Dennis H. Ferro, Kasey Phillips, Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner.

1.9     "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.10    "Escrow Account" means the bank account maintained by the Escrow Agents into which the Settlement Amount shall be deposited.

1.11    "Escrow Agents" mean the law firms of Robbins Geller Rudman & Dowd LLP or its successor(s) and Cohen Placitella & Roth, P.C. or its successor(s).

1.12    "Final"  with respect to the Judgment to be entered pursuant to this Stipulation means that the Judgment has been entered by the Court, and: (i) no motion to alter or amend the Judgment has been filed within the time period allowed by Federal Rule of Civil Procedure 59(e) or, if such motion is filed, the motion has been denied in all respects; (ii) no appeal has been filed within the period in which an appeal might be filed under Rule 4 of the Federal Rules of Appellate Procedure or, if an appeal is filed, the Court of Appeals has affirmed the Judgment in all respects; and (iii) the time for further appeal (including petition for a writ of certiorari) has expired without further appeal or, if a further appeal has been taken, the Judgment has been finally affirmed in all respects  and no further appeal is permitted.  Any proceeding or order, or

any appeal or petition for a writ of certiorari, pertaining solely to any Plan of Allocation and/or Fee and Expense Application (as defined below) shall not in any way delay or preclude the Judgment from becoming Final.

1.13   "Fund" means the Evergreen Ultra Short Opportunities Fund.

1.14   "Judgment" means the final judgment and order of dismissal with prejudice to be rendered by the Court that contains all material terms of the proposed form of order attached hereto as Exhibit B.

1.15   "Lead Counsel" means Robbins Geller Rudman & Dowd LLP, Cohen, Placitella & Roth, P.C., and Evangelista & Associates, LLC.

1.16   "Lead Plaintiffs" means the Court-appointed lead plaintiffs Evergreen Investor Group and Bricklayers Group as more particularly identified in footnotes 1 and 2 above.

1.17   "Liaison Counsel" means Pyle Rome Ehrenberg, P.C.

1.18   "Parties" means Lead Plaintiffs and Defendants.

1.19   "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.20   "Plaintiff" means any Person who filed a complaint in the Litigation.

1.21   "Plaintiffs' Counsel" means counsel who have appeared for any Plaintiff in the Litigation.

1.22   "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the settlement, taxes and tax expenses, and such

- 8 -

attorneys' fees, costs, expenses, and interest as may be awarded by the Court, including any award of expenses to Lead Plaintiffs.  Any Plan of Allocation is not part of the Stipulation and the Released Persons shall have no responsibility or liability with respect thereto.

1.23    "Related Parties" means each Defendant and their respective past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants or auditors, banks or investment banks, underwriters, associates, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, estates, related or affiliated entities, any entity in which a Defendant has a controlling interest, any members of each Defendant's immediate families, any trust of which any Defendant is the settlor or which is for the benefit of any Defendant and/or member(s) of his family, and the heirs, successors and assigns of the foregoing.

1.24    "Released Claims" means any and all debts, demands, rights, actions, causes of action, suits, matters, issues, damages, losses or liabilities whatsoever, whether based on federal, state, local, statutory or common law, or any other law, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, including both known and Unknown Claims (as defined below) that Lead Plaintiffs or any Member of the Class asserted or could have asserted arising out of, in connection with, or in any way related to, directly or indirectly, the purchase or sale of shares of the Fund during the Class Period and the actions, facts, statements or omissions that were or could have been alleged or asserted in the Litigation.

1.25    "Released Persons" means each and all of the Defendants and the Related Parties.

1.26    "Settlement Amount" means twenty five million dollars ($25,000,000.00). Simultaneously with the payment of the Settlement Amount into the Escrow Account,

Defendants shall also pay or cause to be paid into the Escrow account, an additional amount representing interest on the Settlement Amount (the "Interest Amount"), which shall be the amount that the Settlement Amount would have earned had it been invested in the Wells Fargo Advantage Government Money Market Fund from May 7, 2012, through the date the Settlement Amount is paid into the Escrow Account. The Settlement Amount plus the Interest Amount shall be referred to herein as the Settlement Fund.

1.27 "Settlement Fund" means the Settlement Amount plus the Interest Amount, deposited in an interest-bearing Escrow Account, as set forth in ¶2.1, maintained by the Escrow Agents into which the Settlement Fund shall be paid. Interest earned shall be added to and included in the Settlement Fund.

1.28 "Settling Parties" means, collectively, each of the Defendants and the Lead Plaintiffs on behalf of themselves and the Members of the Class.

1.29 "Special Notice" means the Special Notice to Class Members who Previously Requested to be Excluded From the Class and the Form for Request for Revocation of Exclusion, mailed together to Class Members with the Notice pursuant to the Notice Order. A copy of the Special Notice proposed by the Parties is annexed hereto as Exhibit A-4.

1.30 "Unknown Claims" means any Released Claims which the Lead Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs shall expressly and each of the Class Members shall be deemed to have, and by operation of the

Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiffs shall expressly and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, and/or equivalent to California Civil Code §1542. Lead Plaintiffs or any Class Member may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs shall expressly, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. Lead Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

1.31    "Wachovia Affiliated Accounts" are as follows: (a) Diversified Stable Value Wrap; (b) Wachovia Stable Value Wrap; (c) Envision Income Fund; (d) Envision Growth Fund; and (e) Envision Growth & Income Fund.

## 2.    The Settlement

### a.    The Settlement Fund

2.1    The Settlement Fund shall be transferred or caused to be transferred by the Defendants directly into the Escrow Account within ten (10) business days of the Court's entry of the Notice Order. Dennis H. Ferro, Kasey Phillips, Evergreen Trust, Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Petit, David M. Richardson, Russell A. Salton, III, Michael S. Scofield, Richard J. Shima, and Richard K. Waggoner shall have no obligation to contribute financially to the Settlement Fund.

2.2    All fees, costs and expenses incurred by or on behalf of Lead Plaintiffs and the Class associated with the settlement, including but not limited to taxes, tax expenses, any costs f providing notice of the settlement to Class Members or otherwise administering the settlement, any award of plaintiffs' attorneys' fees and litigation expenses, and any award to the Lead Plaintiffs pursuant to Section 27(a)(4) of the Private Securities Litigation Reform Act, shall be paid from the Settlement Fund as awarded by the Court. In no event shall Defendants bear any responsibility for such fees, costs or expenses.

### b.    The Escrow Agents

2.3    The Escrow Agents shall invest the amounts deposited pursuant to ¶2.1 only in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of those instruments as they mature in similar instruments at their then current market rates.  The Escrow

Agents shall not disburse any of the Settlement Fund except as provided in the Stipulation and by an order of the Court.  Prior to the Effective Date, except as provided in paragraphs 2.4, 2.5, and 6.2, the Escrow Agents shall not disburse any of the Settlement Fund without the written agreement of counsel for Defendants.  The Settlement Fund shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.  The Settlement Fund shall bear all risks related to investment of the Settlement Fund.

   2.4  Without written agreement of counsel for the Defendants or any further order of the Court, after preliminary approval of the settlement by the Court, the Escrow Agents may establish a "Notice and Administration Fund," and may deposit up to $200,000.00 from the Settlement Fund in it.  The Notice and Administration Fund may be used by the Escrow Agents without further consent of Defendants or order of the Court to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Claim Information Forms, and paying escrow fees and costs, if any.  The Notice and Administration Fund may also be invested and earn interest.

   **c.**  **Taxes**

   2.5  The Settling Parties and the Escrow Agents agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  In addition, the Escrow Agents shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.5, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of

the Escrow Agents to timely and properly prepare and deliver the necessary documentation for

signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)     For the purpose of §468B of the Internal Revenue Code of 1986, as

amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow

Agents.  The Escrow Agents shall timely and properly file all informational and other tax returns

necessary or advisable with respect to the Settlement Fund (including, without limitation, the

returns described in Treas. Reg. §1.468B-2(k)).  Such returns (as well as the election described in

¶2.5(a) hereof) shall be consistent with this ¶2.5 and in all events shall reflect that all Taxes

(including any estimated Taxes (as defined in ¶2.5(b) hereof), interest or penalties) on the

income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in

¶2.5(b) hereof.  After preliminary approval, the Escrow Agents may pay such Taxes without

further order of the Court or written agreement by counsel for the Defendants.

(b)     The Released Persons shall have no liability or responsibility for any

Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income

earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon

the Defendants or their counsel with respect to any income earned by the Settlement Fund for

any period during which the Settlement Fund does not qualify as a "qualified settlement fund"

for federal or state income tax purposes ("Taxes").  All (a) Taxes, and (b) expenses and costs

incurred in connection with the operation and implementation of this ¶2.5 (including, without

limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and

expenses relating to filing (or failing to file) the returns described in this ¶2.5 ("Tax Expenses")),

shall be paid out of the Settlement Fund; in all events the Released Persons shall have no liability

or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be

- 14 -

treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agents out of the Settlement Fund without prior order from the Court and the Escrow Agents shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); none of the Released Persons are responsible nor shall they have any liability therefor.  The Settling Parties agree to cooperate with the Escrow Agents, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.5.

(c)     For the purpose of this ¶2.5, references to the Settlement Fund shall include both the Settlement Fund and the Notice and Administration Fund and shall also include any earnings thereon.

### d.     Termination of Settlement

2.6     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund, including the Notice and Administration Fund (including accrued interest on both), less costs of notice and administration actually incurred or due and owing in connection with the settlement provided for herein, shall be refunded to Defendants' designee, as described in ¶7.5 hereof.

### 3.     Notice Order and Settlement Hearing

3.1     Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order") substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in the Stipulation, and approval for the mailing of

a settlement notice (the "Notice") and publication of a summary notice substantially in the form and content of Exhibits A-1 and A-3 attached hereto.

3.2     Lead Counsel shall request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation as set forth in the Notice and the Fee and Expense Application.

## 4.     Releases

4.1     Upon the Effective Date, as defined in ¶1.9 hereof, the Lead Plaintiffs and each of the Class Members (on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns)  shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever remised, released, relinquished, and discharged all Released Claims (including Unknown Claims) against the Released Persons, regardless of whether such Class Member executes and delivers a Claim Information Form. By entering into this Stipulation, Lead Plaintiffs represent and warrant that they have not assigned, hypothecated, transferred or otherwise granted any interest in the Released Claims, or any of them, to any Person.

4.2     Upon the Effective Date as defined in ¶1.9 hereof, Lead Plaintiffs and each of the Class Members (and their heirs, executors, administrators, predecessors, successors and assigns) shall be permanently barred and enjoined from the assertion, institution, maintenance, prosecution or enforcement against Defendants or any of the Release Persons in any state or federal court or arbitral forum, or in any court of foreign jurisdiction, of any and all Released Claims (including Unknown Claims) as well as any other claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the Litigation or the Released Claims.

4.3     The Claim Information Form to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 hereto.

4.4     Upon the Effective Date, as defined in ¶1.9 hereof, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiffs, each and all of the Class Members, Lead Counsel, Liaison Counsel, and Plaintiffs' Counsel, from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Court or Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.

5.2     Within thirty (30) calendar days of the Court's entry of the Notice Order, the Claims Administrator will cause the Notice to be mailed to all shareholders of record identified on information available to the Claims Administrator. The Notice and Claim Information Form shall be posted on the Claim's Administrator's website. A summary notice will also be published once in the national edition of *Investor's Business Daily* and once over the *Business Wire*. The cost of providing such notice shall be paid out of the Settlement Fund.

5.3     The Settlement Fund shall be applied as follows:

(a)     to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, soliciting Class claims, creating and

maintaining transaction and damage databases, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Claim Information Forms, and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.5 hereof, if any;

(c)     to pay Plaintiffs' Counsel's attorneys' fees, expenses, and costs with interest thereon (the "Fee and Expense Award"), if and to the extent allowed by the Court; including any award of expenses to Lead Plaintiffs; and

(d)     to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.4     Following the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with ¶¶5.5-5.10.

5.5     Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a signed Claim Information Form, in a form containing all material terms of the form of Exhibit A-2 attached hereto, signed under penalty of perjury and, if the transactional information is not otherwise in the possession of the Claims Administrator, supported by such documents as specified in the Claim Information Form.

5.6     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Claim Information Form within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to

the Stipulation and the settlement set forth therein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel may, in their discretion, accept for processing late filed claims so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

5.7     The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.  However, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall reallocate such balance among Authorized Claimants in an equitable and economic fashion.  Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to a non-profit organization selected by Lead Counsel subject to Court approval or designated by the Court.

5.8     The Released Persons shall have no responsibility for or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

5.9     No Person shall have any claim against Plaintiffs' Counsel or any Released Person or any claims administrator based on the distributions made substantially in accordance with the Stipulation and the settlement contained therein, the Plan of Allocation, or further order(s) of the Court.

5.10     It is understood and agreed by the Settling Parties that any proposed plan of allocation of the Net Settlement Fund including, but not limited to, any adjustments to an

Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation, and any orders or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the settlement set forth therein, or any other orders entered pursuant to the Stipulation.

> **6.**     **Plaintiffs' Counsel's Attorneys' Fees and Payment of Expenses**

6.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) payment of expenses, including the fees and expenses of any experts or consultants, incurred in connection with prosecuting the Litigation, plus any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserve the right to make additional applications for fees and expenses incurred. Defendants take no position with respect to Lead Counsel's requests for attorneys' fees and expenses.

6.2     The attorneys' fees, expenses, and costs, including the fees and expenses of experts and consultants, as awarded by the Court, may be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Lead Counsel shall thereafter allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Litigation. In the event attorneys' fees or expenses are awarded by the Court pursuant to ¶6.1 hereof and paid to Plaintiffs' Counsel from the Settlement Fund, all Plaintiffs' Counsel who receive any payment of attorneys' fees or expenses agree that they accept payment subject to the joint and several obligation of each

Plaintiffs' Counsel (including their respective partners, shareholders, and/or firms), to make repayment to the Settlement Fund within ten (10) business days from receiving notice from Lead Counsel or from a court of appropriate jurisdiction, of the amount required to be refunded, with accrued interest at the same rate as earned by the Escrow Account, in the event, for any reason, including, without limitation, appeal, further proceeding on remand or successful collateral attack, the Stipulation fails to become effective or the attorneys' fee or expense award is reduced or reversed, and Lead Counsel agrees that it shall on that date pay any amount due to be paid by any Plaintiffs' Counsel which remains unpaid.  Furthermore, all Plaintiffs' Counsel (including their respective partners, shareholders, and/or firms) agree that they remain subject to the continuing jurisdiction of the Court for the purpose of enforcing their obligation to repay required attorneys' fees and expenses to the Settlement Fund as provided in this paragraph.

6.3    The procedure for and the allowance or disallowance by the Court of any applications by Lead Plaintiffs or Lead Counsel for attorneys' fees and expenses, including the fees and expenses of experts and consultants, to be paid out of the Settlement Fund, are not part of the settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation, and any order or proceeding relating to the provisions of ¶¶6.1 and 6.2 of this Stipulation, the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the settlement of the Litigation set forth therein.

6.4    Defendants and the Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Plaintiffs, Lead Counsel, Liaison

Counsel, Plaintiffs' Counsel, or any other counsel or Person who receives payment from the Settlement Fund.

6.5     Defendants and the Related Parties shall have no responsibility for, and no liability whatsoever with respect to the allocation among Plaintiffs' Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation, and Defendants and their respective Related Parties take no position with respect to such matters.

**7.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Settlement shall be as of and expressly conditioned upon the occurrence of all of the following events:

(a)     the Settlement Amount shall have been transferred to the Escrow Agents as required by ¶2.1 hereof;

(b)     the Court has entered the Notice Order as required by ¶3.1 hereof;

(c)     Defendants Wachovia, Evergreen Investment and Evergreen Services have not exercised their option to terminate pursuant to ¶7.4;

(d)     the Court has entered the Judgment substantially in the form and content of Exhibit B attached hereto; and

(e)     the Judgment has become Final, as defined in ¶1.12 hereof.

7.2     Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

7.3     If all of the conditions specified in ¶7.1 hereof are not met or cannot be met, then the Stipulation shall be canceled and terminated subject to ¶¶7.4-7.6 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

7.4     If, prior to the Settlement Hearing, the aggregate losses from shares in the Fund purchased by Persons who would otherwise be members of the Class, but who request exclusion from that Class, exceed the sum specified in a separate supplemental agreement between Lead Plaintiff and Defendants (the "Supplemental Agreement"), Defendants Wachovia, Evergreen Investment, and Evergreen Services, shall have, in their sole and absolute discretion, the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement. The Supplemental Agreement will not be filed with the Court unless required by the Court or unless and until a dispute as between Lead Plaintiffs and Defendants concerning its interpretation or application arises.

7.5     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, the Settlement Fund (including accrued interest), plus any amount then remaining in the Notice and Administration Fund (including accrued interest), less expenses and any costs which have either been disbursed pursuant to ¶¶2.4 or 2.5 hereof, or are chargeable to the Notice and Administration Fund, shall be refunded by the Escrow Agents to Defendants' designee within ten (10) business days after written notification of such event is sent by counsel for Defendants.   At the request of Defendants' counsel, the Escrow Agents or their designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Defendants.

7.6     In the event that the Stipulation is not approved by the Court or the settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of May 4, 2012. In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to Lead Plaintiffs or to any Plaintiffs' Counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.7     If the Effective Date does not occur, or if the Settlement set forth in the Stipulation is terminated pursuant to its terms, neither Lead Plaintiffs nor any Plaintiffs' Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Notice and Administration Fund or pursuant to ¶2.5 hereof.  In addition, any expenses already incurred and chargeable to the Notice and Administration Fund pursuant to ¶2.4 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agents in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶7.5 hereof.

7.8     If a case is commenced with respect to any Defendant under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of such

Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction, then, as to such Defendant, the Stipulation and settlement shall terminate and the releases given and Judgment entered in favor of such Defendant pursuant to this Stipulation shall be null and void.

**8.      Miscellaneous Provisions**

8.1      The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2      The Settling Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.

8.3      The Final Judgment will contain a statement that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The parties agree that the amount paid to the Settlement Fund and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

8.4      Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing, fault or liability of the Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any wrongdoing, fault or liability of any of the Defendants in any civil, criminal or administrative

- 25 -

proceeding in any court, administrative agency or other tribunal.  Defendants may, however, file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.  In addition, nothing contained in this paragraph shall prevent this Stipulation (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Stipulation (or any agreement or order relating thereto) or the Judgment, or to enforce or effectuate provisions of this settlement, the Final Judgment, or the Proofs of Claim and Release as to the Defendants and Released Persons.

8.5    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

8.6    All of the Exhibits to the Stipulation are material and integral parts thereof and are fully incorporated therein by this reference.

8.7    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.8    The Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided therein, each party shall bear its own costs.

8.9    Lead Counsel, on behalf of the Class, are expressly authorized by Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the

- 26 -

Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

8.10    Lead Counsel may request the Court's assistance in enforcing information requests or subpoenas relating to nominee, broker or omnibus account holder accounts or for rulings establishing a nominee, broker or omnibus account holder's duty and obligation to provide the Claims Administrator with beneficiary or subaccount holder identity and transactional information in a usable, economic and efficient form.

8.11    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.12    The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

8.13    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation.

8.15    In the event that the Court or any other court is called upon to interpret this Stipulation, no one party or group of parties shall be deemed to have drafted this Stipulation.

8.16    The section headings used throughout this Stipulation are for convenience only and shall not affect the interpretation or construction of this Stipulation.

8.17    The Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Massachusetts, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Massachusetts without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of _____ June 22 _____, 2012.

ROBBINS GELLER RUDMAN & DOWD LLP

Jack Reise
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000

COHEN, PLACITELLA & ROTH, P.C.

Stewart L. Cohen
Michael Coren
Stuart J. Guber
Two Commerce Square, Suite 2900
Philadelphia, PA 19103
(215) 567-3500

EVANGELISTA & ASSOCIATES, LLC

James Evangelista
One Glenlake Parkway, Suite 700
Atlanta, GA 30328
(404) 478-7195

*Class Counsel and Lead Counsel for
Plaintiffs*

REED SMITH LLP

Thomas L. Allen
Joseph P. Pohl III
George M. Linge
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131

*Counsel for Defendants Evergreen
Investment Management Co. LLC,
Evergreen Investment Services, Inc.,
Wachovia Corporation, Dennis H. Ferro,
and Kasey Phillips*

ROPES & GRAY LLP

Robert G. Jones
Abraham R. George
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 951-7000

*Counsel for Evergreen Fixed Income Trust,
Charles A. Austin, Shirley L. Fulton, K. Dunn
Gifford, Leroy Keith, Jr., Gerald M.*

8.17   The Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Massachusetts, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Massachusetts without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of _June 22_ , 2012.

ROBBINS GELLER RUDMAN & DOWD LLP

_____
Jack Reise
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000

COHEN, PLACITELLA & ROTH, P.C.

_____
Stewart L. Cohen
Michael Coren
Stuart J. Guber
Two Commerce Square, Suite 2900
Philadelphia, PA 19103
(215) 567-3500

EVANGELISTA & ASSOCIATES, LLC

_____
James Evangelista
One Glenlake Parkway, Suite 700
Atlanta, GA 30328
(404) 478-7195

*Class Counsel and Lead Counsel for Plaintiffs*

REED SMITH LLP

_____
Thomas L. Allen
Joseph P. Pohl III
George M. Linge
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131

*Counsel for Defendants Evergreen Investment Management Co. LLC, Evergreen Investment Services, Inc., Wachovia Corporation, Dennis H. Ferro, and Kasey Phillips*

ROPES & GRAY LLP

_____
Robert G. Jones
Abraham R. George
Prudential Tower
800 Boylston St.
Boston, MA 02199-3600
(617) 951-7000

*Counsel for Evergreen Fixed Income Trust, Charles A. Austin, Shirley L. Fulton, K. Dunn Gifford, Leroy Keith, Jr., Gerald M.*

- 28 -

8.17   The Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Massachusetts, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Massachusetts without giving effect to that State's choice-of-law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of _June 27_, 2012.

ROBBINS GELLER RUDMAN & DOWD LLP

_____
Jack Reise
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000

COHEN, PLACITELLA & ROTH, P.C.

_____
Stewart L. Cohen
Michael Coren
Stuart J. Guber
Two Commerce Square, Suite 2900
Philadelphia, PA 19103
(215) 567-3500

EVANGELISTA & ASSOCIATES, LLC

_____
James Evangelista
One Glenlake Parkway, Suite 700
Atlanta, GA 30328
(404) 478-7195

_Class Counsel and Lead Counsel for Plaintiffs_

REED SMITH LLP

_____
Thomas L. Allen
Joseph P. Pohl III
George M. Linge
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131

_Counsel for Defendants Evergreen Investment Management Co. LLC, Evergreen Investment Services, Inc., Wachovia Corporation, Dennis H. Ferro, and Kasey Phillips_

ROPES & GRAY LLP

_____
Robert G. Jones
Abraham R. George
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

_Counsel for Evergreen Fixed Income Trust, Charles A. Austin, Shirley L. Fulton, K. Dunn Gifford, Leroy Keith, Jr., Gerald M._

- 28 -

*McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner*