UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re EVERGREEN ULTRA SHORT OPPORTUNITIES FUND SECURITIES LITIGATION | ) ) ) ) | Master File No. 1:08-cv-11064-NMG |
| | | CLASS ACTION |
| This Document Relates To: | ) ) ) | |
| ALL ACTIONS. | ) ) ) | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF SETTLEMENT AND
PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

## I.      INTRODUCTION

Court-appointed lead plaintiffs, the Evergreen Investor Group[1] and the Bricklayers Group[2] ("Lead Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds.[3]   Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs respectfully request an order granting final approval of:  (i) the proposed Settlement of this securities class action (the "Litigation") on behalf of a class (the "Class") consisting of all persons or entities (other than the Excluded Persons) who purchased or otherwise acquired shares of Evergreen Ultra Short Opportunities Fund (the "Fund") shares between October 28, 2005 and June 18, 2008, inclusive; and (ii) the Plan of Allocation of settlement proceeds which will govern how the Net Settlement Fund will be allocated among Class Members.  Pursuant to the Stipulation, the parties and their counsel have agreed to a settlement of the Litigation for the sum of $25,000,000 in cash, plus interest ("Settlement Fund" or

---

[1]      The Evergreen Investor Group is comprised of International Brotherhood of Electrical Workers Local 98, NECA Electrical Workers Joint Apprenticeship Training Trust Fund and First Agency Account LP.

[2]      The Bricklayers Group is comprised of the Bricklayers and Allied Craftworkers Local 1 of PA/DE Health and Welfare Fund and the Bricklayers Local 54 of Pennsylvania Supplemental Welfare Fund.

[3]      Defendants Evergreen Fixed Income Trust ("Evergreen Trust"), Evergreen Investment Management Company, LLC ("Evergreen Investment"), Wachovia Corporation ("Wachovia"), Evergreen Investment Services, Inc. ("Evergreen Services"), Dennis H. Ferro, Kasey Phillips, Charles A. Austin III, Shirley L. Fulton, K. Dun Gifford, Leroy Keith, Jr., Gerald M. McDonnell, Patricia B. Norris, William Walt Pettit, David M. Richardson, Russell A. Salton III, Michael S. Scofield, Richard J. Shima, and Richard K. Wagoner (collectively, "Defendants"), consent to the relief sought herein.

the "Gross Settlement Fund").  The Settlement resolves all claims asserted by Lead Plaintiffs and the Class in the Litigation against Defendants. [4]

As discussed below and in the accompanying Joint Declaration of Stewart L. Cohen and Jack Reise in Support of Approval of the Proposed Settlement, Award of Attorneys' Fees and Reimbursement of Expenses, and Plan of Allocation ("Joint Declaration" or "Joint Decl."), the Court should grant final approval of the Settlement.  The Settlement is fair, reasonable, and adequate, and represents a tremendous result for the Class.  The $25 million Settlement was the product of extensive arm's-length negotiations with counsel for the Defendants, and followed several sessions with an experienced securities mediator.  The fairness of the Settlement is particularly apparent when evaluated in light of the remaining to factual and legal difficulties that Lead Plaintiffs would have to overcome at trial to prove Defendants' liability and recoverable damages suffered by the Class.

Lead Plaintiffs also request that the Court approve the Plan of Allocation of settlement proceeds.  This plan will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.  The plan was devised with the assistance of Lead Plaintiffs' damages expert and was designed to ensure an equitable distribution of the Settlement Fund to the members of the Class.  The plan is fair, reasonable, and adequate and should be approved.

## II.    HISTORY OF THE LITIGATION

The following is a brief procedural history of the Litigation.  The Court is respectfully referred to the Joint Declaration for a more detailed description of the Litigation, including a factual summary of Lead Plaintiffs' allegations.  *See* Joint Decl., §II.

---

[4]    All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation of Settlement (the "Stipulation"), filed with the Court on June 23, 2012 (Dkt. No. 95-97).

The action was commenced on June 23, 2008 upon the filing a complaint asserting claims for violations of §§11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") against Defendants. [Dkt. No. 1].  Two substantially similar complaints were filed on August 4, 2008 and August 12, 2008, respectfully.   By electronic Order dated January 15, 2009, the cases were consolidated under the caption *In re Evergreen Ultra Short Opportunities Fund Securities Litigation*, No. 1:08-CV-11064-NMG.  At the hearing on competing motions for lead plaintiff held on February 27, 2009, the Court entered an electronic order allowing for joint requests for lead counsel and lead plaintiff and setting a schedule for the filing of a consolidated complaint and any responsive pleadings thereto.  The Evergreen Investor Group and the Bricklayers Group had previously filed a joint stipulation for appointment as lead plaintiffs and approval of their selection of Robbins Geller Rudman & Dowd LLP (f/k/a Coughlin Stoia Geller Rudman & Robbins LLP), Cohen Placitella & Roth, P.C., and Evangelista & Associates, LLC[5] to serve as Lead Counsel.  That stipulation was entered by the Court on May 7, 2009 [Dkt. No. 33].

Pursuant to the Court's scheduling order, Lead Plaintiffs filed a First Amended Class Action Complaint ("Complaint") on April 30, 2009 adding considerable detail to the substantive allegations in the initial complaint based on information obtained through Lead Plaintiffs' Counsel's continued investigation, factual and legal research, and interviews with confidential witnesses.  Dkt. No. 32.  The Complaint alleged that, throughout the Class Period, Defendants violated the Securities Act in registering, marketing and selling the Fund as a stable "ultrashort" bond fund that provided "current income consistent with preservation of capital and low principal fluctuation."

---

[5]     On April 15, 2010, Evangelista & Associates, LLC replaced Page Perry LLC as Lead Counsel as a result of a change of firm affiliation of the attorneys who were principally in charge of the litigation.

Contrary to these representations, the Complaint alleges that the Fund was not an ultra short bond fund, nor one that preserved capital and maintained low principal fluctuation. Rather, as alleged in the Complaint, the Fund was comprised of assets that were illiquid, not truly short-term in nature, otherwise riskier than advertised and routinely mispriced. Further, the Complaint alleges that the Fund's Registration Statement and Prospectus materials[6] misrepresented the following: (i) "The Fund seeks to provide current income consistent with preservation of capital and low principal fluctuation;" (ii) The "Fund intents to maintain an average portfolio duration of approximately one year or less;" (iii) The Fund's investment "strategy is to seek the highest total return by maximizing income and minimizing price fluctuation . . .;" (iv) "The Fund seeks to provide investors with a high level of current income while reducing price volatility;" (v) The Fund's performance and risks were benchmarked to the Lehman 6-month treasury Bill Index and the Lehman Brothers Government/Credit 0-2.5 Year Index; (vi) "The Fund may not invest more than 15% (10% for money market funds) of its net assets in securities that are illiquid;" and (vii) The valuation of the Fund's Net Asset Value ("NAV"). In summary, the Complaint alleged that, contrary to the Fund's stated investment strategy as set forth in the Offering Materials, the Fund invested in illiquid, risky, speculative and volatile securities throughout the Class Period and that, as a result of Defendants' risky investments and mis-pricing of the assets of the Fund's portfolio, the actual value of the Fund's NAV was substantially below the Fund's stated valuation.

Certain of the Defendants moved to dismiss the Complaint on July 15, 2009. Dkt. Nos. 37-39. On the same day, Defendants Wachovia, Evergreen Investment, Evergreen Services, Dennis H.

---

[6] References to Registration Statements and Prospectuses and supplements to Securities and Exhange Commission ("SEC") filings, and other incorporated documents, are referred to, collectively, as the "Offering Materials."

Ferro, and Kasey Phillips filed their Answer to the Amended Complaint. Dkt. No. 36. Pending resolution of Defendants' anticipated motion to dismiss, proceedings in the Litigation were automatically stayed pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). However, on March 31, 2010, the Court issued an Order granting Defendants' motion in part and denying it in part. Dkt. No. 46. Thereafter, the parties engaged in full document and deposition discovery directed to class, merits and expert issues. The remaining Defendants filed their Answer to the Amended Complaint on July 16, 2010. Dkt. No. 55.

On February 15, 2011, Lead Plaintiffs moved for class certification. Dkt. No. 66. Defendants filed their opposition on April 15, 2011. Dkt. No. 68. Lead Plaintiffs filed their reply on May 16, 2011. Dkt. No. 69. On August 10, 2011, the Court granted Lead Plaintiffs' class certification motion in its entirety, certifying a class of all purchasers of shares of the Fund between October 28, 2005 and June 18, 2008, inclusive and who were damaged thereby (the "Class"). Dkt. No. 73. Defendants petitioned the First Circuit for permission to appeal the class certification order, but that request was denied on November 23, 2011. Dkt. No. 76.

On February 15, 2012, Defendants filed a motion for partial summary judgment. Dkt. Nos. 77-82. Lead Plaintiffs filed their response on March 15, 2012. Dkt. Nos. 87-90. Subsequently, Defendants filed a notice of withdrawal of their motion on March 30, 2012. Dkt. No. 93. The parties were scheduled to commence trial on June 4, 2012.

The first of two mediation sessions was held on August 31, 2011 with the Honorable Nicholas H. Politan (Dec). Although those mediation sessions proved unsuccessful, the parties renewed settlement discussions following the withdrawal of Defendants' motion for partial summary judgment, which culminated in an agreement-in-principle to settle the Litigation. The settlement was reached only after Lead Counsel: (a) conducted an extensive investigation into the underlying

- 5 -

facts; (b) thoroughly researched the law pertinent to the Class Members' claims and Defendants' defenses; (c) prepared and filed a detailed amended class action complaint specifying Defendants' violations of the federal securities laws; (d) successfully opposed Defendants' motion to dismiss the Complaint; (e) conducted extensive fact discovery, including the review of approximately 1.1 million pages of documents; (f) prepared and appeared for the deposition of Lead Plaintiffs; (g) researched, briefed, and argued Lead Plaintiffs' successful motion for class certification; (h) researched and briefed Lead Plaintiffs' opposition to Defendants' motion for partial summary judgment; (i) prepared an in-depth mediation statement that analyzed the merits of Lead Plaintiffs' claims and the defenses available to Defendants; (j) participated in fifteen (15) fact depositions and six (6) expert depositions as well as certain third party discovery; (k) consulted with various experts to fully evaluate the strength of Lead Plaintiffs' claims and Defendants' defenses; and (l) engaged in full trial preparation. The Settlement was reached at a time when Lead Plaintiffs and Lead Counsel were fully cognizant of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of Settlement.

As discussed herein and in the Joint Declaration, Lead Plaintiffs faced significant risks in obtaining a more favorable outcome after continued litigation. For example, Lead Plaintiffs were faced with the formidable task of proving that Defendants made materially false and misleading statements. Defendants denied liability, asserting that their statements were, among other things, "general and indefinite," immaterial as a matter of law, and protected by the "bespeaks caution" defense, thus absolving them of any liability under the federal securities laws. Defendants also argued that there was no loss causation or, even if there was, that damages were severely limited. If the Court or a jury accepted any of these arguments at trial, it would have severely reduced or eliminated the Class's damages. In short, Lead Plaintiffs faced numerous obstacles in proving both

liability and damages.  There was no certainty, given Defendants' asserted defenses, that Lead Plaintiffs and the Class would prevail on either liability or damages.

Lead Counsel, who are well-respected and experienced in prosecuting securities class actions, have concluded that the settlement is an excellent  result under the circumstances and is clearly in the best interest of the Class.  This conclusion is based on all the circumstances present here, a complete analysis of the evidence, the substantial risks, expense and uncertainties in continuing the Litigation, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to the present action.  Moreover, the Plan of Allocation of the settlement proceeds, which tracks Lead Plaintiffs' theory of damages, is necessarily fair, reasonable, and adequate.

## III.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Under Federal Rule of Civil Procedure 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  In addition to the requirements of Rule 23, the constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement.  *DeJulius v. New Eng. Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. Const. amend. V).  Generally, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  A notice of settlement satisfies due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The law requires "'adequate notice,' not perfect notice."  *Uhl v. Thoroughbred Tech. &*

*Telecomms., Inc.*, No. IP00-1232-C-B/S, 2001 WL 987840, at *20 (S.D. Ind. Aug. 28, 2001).  Here, the Notice, in plain easily understood language, advises the Class Members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting Claim Information Forms, objections and requests for exclusion to the Settlement, who to contact for additional information, and provides specifics regarding the date, time, and place of the Settlement Hearing.  The Notice also contains information regarding Lead Plaintiffs' Counsel's attorneys' fee and expense application, Lead Plaintiffs' expense application and the Plan of Allocation.  Thus, the Notice provides the necessary information for Class Members to make an informed decision regarding the Settlement and their rights with respect to it.

Submitted concurrently herewith is the Affidavit of Heffler Claims Administration ("Heffler Aff.").  Pursuant to the Court's Preliminary Order [Dkt. No. 85], a Notice of Proposed Settlement of Class Action (the "Notice") was mailed to over 16,080 Potential Class Members and nominees. Heffler Aff. at ¶30.  Additionally, the Publication Notice was published on the Internet, *Investor's Business Daily* and *PR Newswire* on August 31, 2012.  *Id.* at ¶32.  In addition, a Special Notice was sent to potential Class Members who previously requested to be excluded from the Class in order to apprise them of their right to request revocation of that previous exclusion from the Class in light of the settlement and provide them with a form to revoke such previous exclusion request.  *Id.* at ¶31. The time to file objections expires on November 5, 2012.  To date, no objections to any aspect of the settlement, the Plan of Allocation, or Lead Counsels' request for attorneys' fees and expenses has been received.  The overwhelming acceptance of the settlement by the Class fully supports a finding that the settlement and Plan of Allocation are fair, reasonable, and adequate with respect to the Class and should be approved.

Plaintiff respectfully submits that the notice program implemented in the Litigation constitutes the best notice practicable under the circumstances and satisfies the requirements of due process and Federal Rule of Civil Procedure 23. *See, e.g.*, *In re Lupron(R) Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (although direct mail was not used, a notice plan which included nationwide publication, posting of court-approved notices on website, and method for class members to have questions answered satisfied the requirements of Rule 23 and due process).

## IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.     The Settlement Before the Court

In complete settlement of the Litigation, Defendants agreed to pay $25 million in cash plus interest earned from May 7, 2012.  These settlement funds were deposited in an escrow account on August 2, 2012, and will continue to earn interest until distribution.  The settlement proceeds will be distributed to Class Members pursuant to the Plan of Allocation, as set forth in the Notice, after payment of settlement administration costs, reasonable attorneys' fees and expenses awarded by the Court, and time and expenses awarded to Lead Plaintiffs.

### B.     The Standards for Judicial Approval of Class Action Settlements

It is well settled that compromises of disputed claims are favored by the courts.  *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement.").  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation.  *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in

the future, after protracted and expensive litigation,' there are clearly strong arguments for approving

a settlement.") (citation omitted).

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, adequate

and reasonable, and in the best interest of the class. *See, e.g., Allen v. Decision One Mortg. Co.,*

*LLC*, No. 07-11669-GAO, 2010 WL 1930148, at *1 (D. Mass. May 12, 2010); *Bennett v. Roark*

*Capital Grp., Inc.*, No. 2:09-cv-00421-GZS, 2011 WL 1627939, at *2 (D. Me. Apr. 27, 2011); *In re*

*Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 (D. Mass. 2005); *In re StockerYale, Inc. Sec. Litig.*, No.

1:05cv00177-SM, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007).

In determining whether a proposed settlement is fair, adequate and reasonable, the First

Circuit has not established a formal protocol, but the district courts therein routinely rely on the

*Grinnell* factors which are as follows: "'(1) the complexity, expense and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in

light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation.'" *Lupron*, 228 F.R.D. at 93-94

(quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Courts have emphasized that these factors should not be applied in a "formalistic" fashion.

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action

settlement cannot be measured precisely against any particular set of factors.").  Moreover, courts

have consistently held that the function of a judge in reviewing a settlement is not to rewrite the

settlement agreement reached by the parties or to try the case by resolving issues intentionally left

unresolved.  *See, e.g., Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.  They do not decide the merits of the case or resolve unsettled legal questions.") (citation omitted).

When examined under the applicable criteria, the Settlement is a very good result for the Class.  Although Lead Plaintiffs believe in the merits of their case, they recognize that they would face substantial obstacles in establishing liability and damages should this case proceed to trial.  Furthermore, even if this case were to proceed to trial, Defendants could appeal any judgment favorable to the Class, putting at risk, or otherwise delaying, any recovery to Class Members.  *See Rolland*, 191 F.R.D. at 10 ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").  The Settlement achieves a substantial and certain recovery for Class Members and is unquestionably superior to the distinct possibility that were the Litigation to proceed to trial, there could be no recovery at all.  Analysis of the relevant factors demonstrates that the proposed Settlement warrants the Court's approval.

C.      The Settlement Satisfies the Criteria for Approval

        1.      The Complexity, Expense, and Likely Duration of the Litigation

This factor "'captures the probable costs, in both time and money, of continued litigation.'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001)).  Here, this factor strongly supports the fairness of the Settlement, because had the parties not reached an agreement to settle they would have faced continued expensive litigation, including a complicated, lengthy trial, followed by appeals; the outcome of which were uncertain.  Continued litigation would have caused Class Members who suffered economic losses between 2005 and 2008

to wait years longer for a resolution of their claims.  Settlement, now, avoids that and provides an immediate cash benefit to Class Members.

### 2.      The Reaction of the Class to the Settlement

This factor "'attempts to gauge whether members of the class support the settlement.'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)).  While it is significant that Lead Plaintiffs are fully in support of the Settlement (*see id.* at *3), this factor can be analyzed only by comparing the number of objectors and opt-outs with the number of claimants.  *Lupron*, 228 F.R.D. at 96; *see also* accompanying Declarations of Lead Plaintiffs in Support of Application for Award to Representative Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) (in which Lead Plaintiffs explain their support of the settlement).  Reaction to a settlement is considered positive when the number of objectors is minimal compared with the number of claimants.  *See Lupron*, 228 F.R.D. at 96.  A small percentage of objections and opt-outs constitutes strong evidence that a settlement is fair and reasonable.  *See Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999).  Here, as of October 19, 2012, Lead Plaintiffs have received no objections to and only 55 valid opt-outs from the proposed Settlement.  *See* Joint Decl., ¶53; Heffler Aff. At ¶¶31, 33.  Thus, this factor clearly weighs in favor of settlement approval.

### 3.      Stage of Proceedings and Extent of Discovery

This factor "'captures the degree of case development that class counsel [had] accomplished prior to settlement.'"  *StockerYale*, 2007 WL 4589772, at *3 (quoting *Cendant*, 264 F.3d 201 at 235).  This case was in litigation for approximately four years before the Settlement was reached. During that time, Lead Counsel undertook a careful and extensive investigation of Lead Plaintiffs' claims, including: the review and analysis of an enormous quantity of publicly available information about Defendants, the Fund and its underlying holdings of thousands of securities at various times;

- 12 -

the identification and interview of numerous confidential witnesses; research of the (often developing and/or unsettled) law pertinent to the claims and defenses asserted in the Litigation; the drafting and filing of an amended complaint; extensive motion to dismiss briefing; oral argument in connection with Defendants' motion to dismiss the Complaint; the substantial defeat of Defendants' motion to dismiss the Complaint; ongoing communications and conferral with the Court-appointed Lead Plaintiffs; the preparation of thorough discovery requests; the careful review and analysis of 1.1 million pages of responsive documents resulting from those requests; the deposition of fifteen (15) fact depositions and six (6) expert depositions; extensive briefing on Lead Plaintiffs' successful motion for class certification and defeat of Defendants' Rule 23(f) motion; briefing on Defendants' partial motion for summary judgment (which ultimately was withdrawn); fully preparing the case for trial, and the drafting and exchange of detailed mediation statements and participation in good-faith settlement discussions with counsel for Defendants.  Based on the foregoing, Lead Counsel adequately appreciated the merits of this Litigation before agreeing to the Settlement.  Thus, this factor weighs strongly in favor of the fairness and reasonableness of the Settlement.

### 4.     The Risks of Establishing Liability and Damages

These factors "'survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'"  *StockerYale*, 2007 WL 4589772, at *3 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004)).  Continuing with the case could have resulted in loss at trial or on appeal.  The two sides vigorously disagree on both liability and the amount of money that could have been won if Lead Plaintiffs prevailed at trial.  The parties disagree about:  (1) the amount of alleged damages, if any, that could be recovered at trial; (2) the other causes of the losses to the Fund during the Class Period; (3) the proper measure of alleged damages; (4) the extent that various facts alleged by the Lead Plaintiffs were materially false and misleading; (5) the extent that the various facts alleged by the

Lead Plaintiffs influenced the net asset value of the Fund during the Class Period; and (6) whether the facts alleged were material, false, misleading or otherwise actionable under the securities laws. In the face of these significant risks, the Class obtained a meaningful all-cash settlement, providing support for the fairness of the Settlement.

### 5.   Maintaining the Class Action Throughout Trial

This factor "measures the likelihood of obtaining and keeping the class certified if the action were to proceed to trial" because "'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class action].'" *StockerYale*, 2007 WL 4589772, at *3 (quoting *Warfarin*, 391 F.3d at 537). At the time of settlement, the Class had already been certified for a Class Period spanning almost three years (October 28, 2005 through June 18, 2008, inclusive). While concerns about the manageability of a large class of purchasers of Fund shares over a lengthy period of time did not pose a problem for the certification of a settlement class, there is a risk that such a lengthy class period would create difficult management problems if it were to become a litigation class. *StockerYale*, 2007 WL 4589772, at *3. Thus, the difficulties in maintaining this putative class, as currently defined, weighs in favor of settlement.

### 6.   The Ability of Defendants to Withstand a Greater Judgment

This factor considers "'whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement.'" *StockerYale*, 2007 WL 4589772, at *4 (quoting *Cendant*, 264 F.3d at 240). Lead Counsel knows of no evidence that suggests Defendants would be unable to pay a large judgment. Nonetheless, further conduct of the Litigation would be protracted and expensive and in order to limit further inconvenience, distraction, negative impact and publicity on Defendants' business, employees, and customers, it is desirable and beneficial to Defendants that the Litigation be settled.

- 14 -

### 7.      The Settlement Offers a Meaningful Benefit to the Class

These factors "'evaluate[s] whether the settlement represents a good value for a weak case or poor value for a strong case.'"  *StockerYale*, 2007 WL 4589772, at *4 (quoting *Warfarin*, 391 F.3d at 538).  The $25 million settlement amount is well within the common recovery range for class actions of this sort.  Lead Plaintiffs' damages expert, Candace L. Preston, CFA, of Financial Markets Analysis, LLC, opined that the estimated recoverable damages were approximately $97 million.  Thus, the $25 million recovery represents approximately 26% of the estimated recoverable damages as calculated by Lead Plaintiffs' expert.[7]  Such is well within the range of reasonableness necessary to approve a securities class action settlement.[8]  Additionally, the Class is receiving a complete cash settlement that equates to a true benefit for the Class at relatively little expense.  Thus, this factor supports the fairness of the Settlement.

Accordingly, pursuant to Rule 23(e), the Court should approve this class action Settlement as fair, adequate, reasonable, and in the best interest of the Class.

---

[7]      This does not include any reductions for the monies Class Members received pursuant to the Fund's settlement with the SEC (the "SEC Settlement").  When damages are reduced by amounts already received by Class Members from the SEC Settlement, the $25 million recovery represents 37% of the estimated recoverable damages. Similarly, when amounts received in the SEC settlement are combined with Class Members' recovery here, Class Members could receive approximately 56% of recoverable damages, which here are equal to their market losses.

[8]      In 2011, 68 cases asserting claims under Sections 11 and 12(a)(2) of the Securities Act were settled.  The median settlement as a percentage of estimated damages in those cases was 7.4%.  *See* Ellen M. Ryan and Laura E. Simmons, *Securities Class Action Settlements – 2011 Review and Analysis* (Cornerstone Research), http://www.cornerstone.com/files/News/85d21ef6-25ff-45d0-8147-b6e69dfd7115/Presentation/NewsAttachement/6d6e4c44-93a5-4616-8ba1-0e7e6ce519f8/Cornerstone_Research_Settlements_2011_Analysis.pdf at 11.

**V.      THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS IS FAIR
          AND REASONABLE AND SHOULD ALSO BE APPROVED**

The Notice contains the Plan of Allocation detailing how the settlement proceeds are to be
divided among eligible Class Members.  A trial court has broad discretion in approving a plan of
allocation.  *See In re Chicken Antitrust Litig.*, 810 F.2d 1017, 1019 (11th Cir. 1987).  The test is
simply whether the proposed plan, like the settlement itself, is fair, reasonable and adequate.  *See In
re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d
Cir. 1997).  In determining whether a proposed plan of allocation is fair, courts look primarily to the
opinion of counsel.  *See id.* at 133 ("[T]he adequacy of an allocation plan turns on whether counsel
has properly apprised itself of the merits of all claims, and whether the proposed apportionment is
fair and reasonable in light of that information."); *see also White v. National Football League*, 822 F.
Supp. 1389, 1420 (D. Minn. 1993) (stating "[t]he court . . . affords considerable weight to the
opinion of experienced and competent counsel that is based on their informed understanding of the
legal and factual issues involved" in approving distribution of settlement proceeds).

Here, working with Lead Plaintiffs' damages expert, Lead Counsel developed the Plan of
Allocation of settlement proceeds that reflects their damage theory of the case in a simple and
straightforward manner and will result in a fair distribution of the available proceeds among Class
Members.  Generally, the Plan of Allocation provides that Class Members will receive a portion of
the Net Settlement Fund based on the percentage of that Class Member's investment or economic
loss, as defined in the Notice, bears to the total investment or economic loss of all Class Members
who submit valid, timely Claim Information Forms.  In other words, the Plan of Allocation awards a
*pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized
Claim  taking into account several factors including the timing of the purchases and sales of the Fund
shares.  *See* Joint Decl., §IV.  This simple formula is fair and reasonable, as there is no rule that a

settlement must benefit all class members equally. *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005); *see also In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001) (concluding "the plan of allocation, as a general matter, fairly treats class members by awarding a pro rata share to every Authorized Claimant").

Courts also consider the reaction of a class to a plan of allocation. *See PaineWebber*, 171 F.R.D. at 126; *Maywalt v. Parker & Parsley Petroleum Co.*, No. 92 Civ. 1152 (RWS), 1997 WL 7668, at *4 (S.D.N.Y. Jan. 9, 1997) (plan of allocation approved as fair and equitable where no objections received). The Notice described the proposed Plan of Allocation of settlement proceeds in detail and indicated that the deadline for objecting to the plan is November 5, 2012. To date, no objections to the plan have been received. Accordingly, since the Plan of Allocation is fair, reasonable and adequate, is recommended by experienced and competent counsel, and is not opposed by its beneficiaries it should be approved.

## VI. CONCLUSION

Based on the foregoing, the Joint Declaration and the entire record herein, Plaintiff respectfully requests that the Court finally approve the Settlement and the Plan of Allocation of settlement proceeds as fair, reasonable, and adequate and in the best interests of the Class.

DATED: October 22, 2012
                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        JACK REISE


                                        _____
                                                  s/JACK REISE

                                        120 East Palmetto Park Road, Suite 500
                                        Boca Raton, FL 33432
                                        Telephone: 561/750-3000
                                        561/750-3364 (fax)
                                        jreise@rgrdlaw.com

COHEN, PLACITELLA & ROTH, P.C.
STEWART L. COHEN
MICHAEL COREN
STUART J. GUBER
Two Commerce Square, Suite 2900
2001 Market Street
Philadelphia, PA  19103
Telephone:  215/567-3500
215/567-6019 (fax)
scohen@cprlaw.com

EVANGELISTA & ASSOCIATES, LLC
JAMES M. EVANGELISTA
400 Colony Square
1201 Peachtree Street, NE
Atlanta, GA  30361
Telephone:  404/961-7650
404/961-7651 (fax)
jme@eafirm.com

***Co-Lead Counsel for Plaintiffs***

MARINO & CONROY LLC
STEVEN F. MARINO
301 Wharton Street
Philadelphia, PA  19147
Telephone:  215/462-3200
215/462-4763 (fax)

***Additional Counsel for Plaintiff***

PYLE, ROME, LICHTEN, EHRENBERG
   & LISS-RIORDAN, P.C.
BETSY EHRENBERG, BBO #554628
18 Tremont Street, Suite 500
Boston, MA  92108
Telephone:  617/367-7200
617/367-4820 (fax)
behrenberg@pylerome.com

***Liaison Counsel***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 22, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

s/JACK REISE

_____
